**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>RADIOSHACK CORPORATION, )<br>a Delaware corporation, )<br>Defendant. )<br>_____)<br>MARIO ALIANO and VICTORIA )<br>RADAVICIUTE, individually and on behalf of )<br>all others similarly situated, )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>RADIOSHACK COROPRATION, )<br>a Delaware corporation, )<br>Defendant. ) | No. 11 C 6741<br>(consolidated with 11 C 7819)<br><br>Magistrate Valdez<br>(consent filed) |

**PLAINTIFFS' MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiffs Scott D.H. Redman ("Redman"), Mario Aliano ("Aliano") and Victoria Radaviciute ("Radaviciute") (collectively, "Plaintiffs"), on behalf of themselves and a class of similarly-situated persons, by their undersigned counsel, submit this memorandum of law in support of *Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement* ("Motion") [DE 94] (*see* Settlement Agreement included as Exhibit 1 to the Motion).

**Introduction**

On September 26, 2011, Redman sued Defendant Radioshack Corporation ("Defendant") for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and more specifically § 1681c(g), which was added as part of the Fair and Accurate Credit Transactions

1

Act ("FACTA"). On November 3, 2011, Aliano and Radaviciute sued Defendant for alleged violations of FACTA. Plaintiffs alleged that Defendant willfully violated FACTA by providing consumers with credit or debit card receipts that improperly displayed the expiration date of consumers' credit and debit cards (Defendant has properly truncated credit and debit card numbers). In its answers, Defendant denied any liability to Plaintiffs or the putative class. Subsequently, the parties have engaged in an exchange of discovery requests and responses and extensive, arm's-length negotiations, including with the assistance of this Court, in an effort to resolve this matter without further litigation. Following those efforts, the parties reached what they consider a fair, reasonable and adequate settlement that provides class members with appropriate relief under the circumstances.

## **Terms of Settlement**

Plaintiffs and Defendant have reached a settlement that provides relief to a class of persons defined as follows:

> All persons who, between August 24, 2010 and November 21, 2011, paid by credit or debit card for products or services and received an electronically-printed receipt from any Store that contained the expiration date of the person's credit or debit card.
>
> Excluded from the Settlement Class are Defendant, its officers, employees, and attorneys; transactions conducted with business credit or debit cards; and transactions made with RadioShack-branded debit or credit cards, as those cards do not contain expiration dates.

The proposed Class may be as large at 16,000,000 members.

Upon this Court's approval, the Settlement Agreement will resolve all claims asserted by Plaintiffs and the Class against Defendant that appear in Plaintiffs' Complaints. The Settlement Agreement, if approved by this Court, provides that Defendant will fund up to $5,350,000 ("Settlement Amount"), of which $3,250,000 will be escrowed ("Escrow Amount"), which will

be disbursed at follows:

    A.    <u>Class Members</u>.  Each class member who submits a valid claim will receive a $10 Settlement Voucher, which can be redeemed at Defendant's stores or online at [www.radioshack.com](www.radioshack.com).  Settlement Vouchers will be distributed as bar codes to Participating Claimants and will work like gift cards.  Settlement Vouchers will be good for six (6) months and will be fully transferrable.  Up to three (3) Settlement Vouchers can aggregated for use in a single transaction.  The Settlement Fund will be charged $10 for each Settlement Voucher up to the Escrow Amount, after which Defendant will provide additional Settlement Vouchers up to the Settlement Amount, less disbursements identified below.  If, after disbursements set forth in paragraphs B-D below are made, claims exceed the amount remaining in the Settlement Amount, the face value of the Settlement Vouchers will be reduced *pro rata*.

    B.    <u>Plaintiffs' Claims</u>.  Plaintiffs will each receive $5,000 to resolve their individual claims and as incentive awards for their services as Class Representatives;

    C.    <u>Class Notice and Administration</u>.  Costs of class notice and administration will be paid from the Escrow Amount.  The parties estimate this cost to be approximately $1.7-$1.8 million; and

    D.    <u>Attorneys' Fees and Costs</u>.  Class Counsel will receive $1 million for attorneys' fees and costs, which is approximately 18.69% of the Settlement Amount.

    E.    *Cy Pres*.  If, after disbursements set forth in paragraphs A-D above are made, any money remains of the Escrow Amount, the difference between $3.25 million and the remaining amount will be given in the form of Settlement Vouchers to the Boys & Girls Club of America, an independent, non-profit 501(c)(3) organization.

Upon preliminary approval by this Court, notice will be provided by direct mail to approximately 3,500,000 class members, by email to approximately 1,000,000 class members, by publication in several national magazines (People, Parade, USA Weekend and Time) and by internet publication (settlement website and on [www.radioshack.com](www.radioshack.com)).  All forms of notice, except that on Defendant's website, will explain the general nature of the case and the available benefits, and they will advise class members that the court's decision will be binding on them, that they can object to the settlement and that they can exclude themselves from the class.  The

abbreviated notices will direct class members to the settlement website, which will explain details of the settlement more fully.

For all of the reasons stated in this memorandum, Plaintiffs respectfully request that this Court approve the settlement as fair, reasonable and adequate.

### Legal Discussion

**I.    THE REQUIREMENTS FOR CERTIFICATION OF SETTLEMENT CLASS ARE MET**

The class action vehicle was created to promote a fair and expeditious resolution for claims of a large number of people who were injured by the same occurrence, practice or procedure. The alternative to class certification – the prosecution of several thousand individual claims – would result in extreme logistical difficulties, a waste of judicial resources, and the elimination of an orderly and reasonable process to resolve the factual and legal issues underlying this case.

"Class certification is appropriate where the proposed class representatives can satisfy all four prerequisites of Rule 23(a) and one of the requirements of Rule 23(b)."[1] A party seeking class certification must prove that " '(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.' "[2] If a party meets the requirements of Rule 23(a), he must then satisfy one of the provisions of Rule 23(b).[3] Here, Plaintiffs seek certification under Rule 23(b)(3), which requires a showing " 'that

---

1    *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 293 (N.D. Ill. 2008) (*citing Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002)).
2    *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 213 (N.D. Ill. 2008) (*quoting Retired Chic. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993)).
3    *Id*.

questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.' "[4] Rule 23 is to be liberally construed and read to favor the maintenance of class actions.[5] As demonstrated below, all requirements necessary to certify settlement class have been satisfied.

If this Court does not approve the settlement, each party reserves all rights to present any claims and defenses, including as they relate to class certification. This settlement does not constitute an admission by Defendant that class certification is otherwise appropriate.

### A. Rule 23(a)(1) – Numerosity

"Rule 23(a)(1) requires that a proposed class be so numerous that joinder is impractical."[6] Impracticability exists when individual adjudication would take an extended period of time and joinder of all the parties would be expensive, time consuming and "a strain on already overtaxed judicial resources."[7] Though there is no bright line test for numerosity, a class as few as 40 members may meet the numerosity requirement, and courts rely on common sense to determine whether an estimate of class size is reasonable and meets the numerosity requirement.[8]

Here, the parties agree that the proposed settlement class consists of up to approximately 16,000,000 members. Accordingly, joining even a fraction of the aforementioned class members would be impractical. Therefore, the numerosity requirement is satisfied.

---

4     *Id*. (*quoting* Fed. R. Civ. P. 23(b)(3)).
5     *See Cannon v. Nationwide Acceptance Corp.*, No. 96-C1136, 1997 WL 139472, *1 (N.D. Ill. Mar. 25, 1997).
6     *Matthews*, 248 F.R.D. at 214.
7     *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992).
8     *Redmon*, 249 F.R.D. at 294 (*citing Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969) and *Ringswald v. County of DuPage*, 196 F.R.D. 509, 511-512 (N.D. Ill. 2000)).

### B. Rule 23(a)(2) – Commonality

"Rule 23(a)(2) next requires that there be 'questions of law or fact common to the class.' "[9] "The commonality requirement is satisfied by showing 'a common nucleus of operative fact.' "[10] "Cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis."[11]

Here, the common nucleus of operative fact is whether Defendant provided to consumers receipts that displayed the expiration dates of consumers' credit or debit cards. Courts have repeatedly found such a common nucleus to be grounds for certifying FACTA classes.[12] Therefore, the commonality requirement has been met.

### C. Rule 23(a)(3) -- Typicality

"The third Rule 23(a) requirement is that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.' "[13] " 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.' "[14]

Here, Plaintiffs' claims are typical of the absent settlement class members' claims,

---

9     *Matthews*, 248 F.R.D. at 215 (*quoting* Fed. R. Civ. P. 23(a)(2)).
10    *Id*. (*quoting Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).
11    *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 836 (N.D. Ill. 2008).
12    *See e.g.*, *Armes v. Shanta Enterprise, Inc.*, No. 07 C 5766, 2009 WL 2020871, *2 (N.D. Ill. July 8, 2009) (finding that "the printing of credit card receipts containing complete card information is the same general practice that affected all members of the class"); *Cicilline*, 542 F. Supp. 2d at 836 (finding in a FACTA case that the core conduct applicable to all class members is the defendant's standardized conduct in its failure to redact expiration dates from receipts); *see also Redmon*, 249 F.R.D. at 294; *Matthews*, 248 F.R.D. at 215; *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284, 286 (N.D. Ill. 2008); *Harris v. Circuit City Stores, Inc.*, No. 07 C 2512, 2008 WL 400862, *5-6 (N.D. Ill. Feb. 7, 2008); *Troy v. Red Lantern Inn, Inc.*, No. 07 C 2418, 2007 WL 4293014, *2 (N.D. Ill. Dec. 4, 2007); *Halperin v. Interpark, Inc.*, No. 07 C 2161, 2007 WL 4219419, *2 (N.D. Ill. Nov. 29, 2007).
13    *Redmon*, 249 F.R.D. at 294.
14    *Matthews*, 248 F.R.D. at 215 (*quoting Keele*, 149 F.3d at 595)).

because all arose from the same alleged conduct, i.e., they all received receipts that displayed the expiration dates of their credit or debit cards, and all of the claims are premised on the same legal theory, i.e., that Defendant willfully violated FACTA. Each court in the Seventh Circuit to confront this issue has found typicality, because the defendants' standard conduct is the focal point of the claim and is universal to each class member, and this Court should do the same.[15] Therefore, the typicality requirement has been met.

### D. Rule 23(a)(4) -- Adequacy Of Representation

Rule 23(a)(4) requires a party to show that " 'the representative parties will fairly and adequately protect the interest of the class.' "[16] To satisfy Rule 23(a)(4), a party must demonstrate " '(1) the representative does not have conflicting or antagonistic interests compared with the class as a whole; (2) the representative is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously.' "[17]

Plaintiffs' interests in this case are identical to the class as a whole. Plaintiffs' claims are premised on the alleged standard conduct of Defendant, i.e., providing to consumers credit and debit card receipts displaying the expiration dates of credit and debit cards. Furthermore, Plaintiffs seek the same statutory damages for themselves and the class as a whole. Plaintiffs have demonstrated their interest in this case by bringing it in the first place, participating in fact-gathering, participating in written discovery, participating in multiple settlement conferences and

---

15  *See e.g.*, *Armes*, 2009 WL 2020781, at *3; *Cicilline*, 542 F. Supp. 2d at 837 (finding typicality because each class member's claim arose from the same course of conduct, i.e., the defendant's printing of noncompliant receipts); *see also Redmon*, 249 F.R.D. at 294-95; *Matthews*, 248 F.R.D. at 215; *Meehan*, 249 F.R.D. at 287; *Harris*, 2008 WL 400862, at *6-7; *Troy*, 2007 WL 4293014 at *2; *Halperin*, 2007 WL 4219419, at *2.

16  *Redmon*, 249 F.R.D. at 295 (*quoting* Fed. R. Civ. P. 23(a)(4)).

17  *Matthews*, 248 F.R.D. at 215 (*quoting Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387, 395 (N.D. Ill. 2006)).

separate negotiations and consulting often with counsel. Plaintiffs' attorneys are active practitioners in consumer class actions with experience, diligence and commitment to this litigation and will protect the interests of the class. Plaintiffs' attorneys have prosecuted several FACTA cases and have been appointed class counsel in FACTA cases both on the merits and for settlement purposes. Therefore, the adequacy requirement has been met.

E.      **Rule 23(b)(3) -- Predominance/Superiority**

A party seeking certification must also satisfy one of the subparts of Rule 23(b).[18] In this case, for purposes of settlement, Plaintiffs seek certification pursuant to Rule 23(b)(3), so they must show "(1) 'that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members,' and (2) 'that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.' "[19]

"To satisfy the predominance requirement, 'the plaintiff must show that common issues not only exist, but outweigh the individual questions.' "[20] "The common questions must be central to all claims."[21] When "factual allegations are common to all potential plaintiffs and the causes of action resulting from these facts are all the same," the predominance requirement is met.[22] Here, the factual allegation is identical for every class member, namely that each class member received an electronically-printed receipt from Defendant that displayed the expiration date of his or her credit or debit card. Additionally, the cause of action is exactly the same for every class member, namely Defendant willfully violated FACTA through standardized conduct.

---

18    *Id.*
19    *Id.* at 215-216 (*quoting* Fed. R. Civ. P. 23(b)(3)).
20    *Redmon*, 249 F.R.D. at 295, 2008 WL 656075, at *4 (*quoting Troy*, 2007 WL 4293014, at *3)).
21    *Troy*, 2007 WL 4293014, at *3 (*quoting Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529-30 (N.D. Ill. 1998)).
22    *Redmon*, 249 F.R.D. at 296.

There exist no individual differences, thus compelling a finding that common issues predominate. Accordingly, the predominance requirement has been met.

"Rule 23(b)(3) is designed for situations where 'potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.' "[23] " 'Class treatment is especially appropriate for consumer claims' because such actions often involve common factual and legal questions.' "[24] "FACTA claims are especially well-suited to resolution in a class action."[25] The Seventh Circuit found Fair Credit Reporting Act ("FCRA") suits particularly well suited for class treatment, because the damages available individually – $100 to $1000 – are too slight an incentive for individual claims but may vindicate substantial damage in the aggregate.[26]

## II. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THIS COURT

### A. The Standards For Judicial Approval Of Class Action Settlements

A proposed settlement of a class action should be approved where, as here, the compromise is fair, reasonable and adequate.[27] In making its determination whether a settlement is fair, reasonable, and adequate, the court should consider the following factors in making its evaluation: (1) the likelihood of a plaintiff's success on the merits; (2) the extent of support from the parties; (3) the judgment of counsel; (4) the presence of good faith bargaining; and (5) the complexity and nature of the issues of law and fact.[28]

---

23 *Id.* at 296 (*quoting Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)).
24 *Troy*, 2007 WL 4293014, at *4 (*quoting Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 395-96 (N.D. Ill. 2005)).
25 *Matthews*, 248 F.R.D. at 216 (*quoting GMAC*, 434 F.3d at 953)).
26 *GMAC*, 434 F.3d at 953.
27 *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (district court's inquiry limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate).
28 *Mangone v. First USA Bank*, 206 F.R.D. 222, 225-26 (S.D. Ill. 2001).

In applying these factors, the court should neither substitute its judgment for that of the parties who negotiated the settlement nor conduct a mini-trial of the merits of the action. Where, as here, the settlement was negotiated at arm's-length, the settlement enjoys a presumption that it is fair, reasonable and in the best interest of the class.[29]

The court should reach an objective opinion as to the probabilities of ultimate success compared to the benefits obtained through compromise. As one court noted,

> [T]he determination of what amount of money constitutes a fair settlement is not a matter of mathematical science. On the one hand perhaps plaintiff's counsel have obtained more for the class than a jury would award; on the other hand, it may be less. The court is in no position to substitute its judgment for that of honest and competent attorneys, who, after exhaustive discovery, have made a determination that the settlement represents a fair and realistic appraisal of their clients' chances of ultimate success.[30]

Finally, as a matter of public policy, "federal courts naturally favor the settlement of class action litigation."[31] As discussed below, application of the foregoing principles and factors demonstrates that the proposed settlement is fair, reasonable, and adequate and merits this Court's approval.

### B. Evaluation Of The Proposed Settlement

#### 1. The likelihood of success in establishing liability and damages

##### a. Merits

In assessing the fairness of the proposed settlement, a primary consideration for the Court is to balance the risk of establishing liability against the benefits afforded by the settlement.[32] When deciding to settle this case, Plaintiffs recognized that the merits of this case turn almost

---

29 *See e.g.*, *Hispanics United v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997); *State v. Nintendo of America, Inc.*, 775 F. Supp. 676, 680-81 (S.D.N.Y. 1991).
30 *Siegel v. Realty Equities Corp.*, No. 70 Civ. 4338, 1973 WL 414, at *3 (S.D.N.Y. July 30, 1973).
31 *Isby*, 75 F.3d at 1196.
32 *See Mangone*, 206 F.R.D. at 225; s*ee also In re Drexel Burnham Lambert Group, Inc.,* 130 B.R. 910, 922 (S.D.N.Y. 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992).

exclusively on whether Plaintiffs can prove that Defendant acted willfully to violate FACTA. If Plaintiffs were to succeed, statutory damages have a floor and a ceiling, but if they were to fail, Plaintiffs and the class would get nothing. Notably, to the best of the undersigneds' knowledge, no FACTA case has yet gone to trial, so there is no guiding authority on the likelihood of success for Plaintiffs' claims. Plaintiffs also considered the significant period of time and resources that still would be required to engage in pre-trial discovery, summary judgment briefing, and trial proceedings essential to continue this litigation for the millions of recipients of credit/debit card receipts from Defendant; the risks of adverse rulings on class certification, summary judgment and a jury trial; and the likelihood of an appeal.

### b. Defendant's financial standing

Leaving aside that Plaintiffs believe they have a strong case on the merits, Plaintiffs are concerned about Defendant's viability. Plaintiffs question whether Defendant will have the capacity to satisfy a judgment, if any, that is years away. When the parties reached a settlement in principal, Defendant's shares traded at $1.91 per share, down from $12.60 per share just over a year earlier on September 26, 2011 when this lawsuit was filed.[33] While Defendant's share price has recovered somewhat since then,[34] its cash position has decreased.[35]

Thus, by agreeing to settle the class claims, Plaintiffs have achieved a benefit for class members without incurring additional litigation expenses for any of the parties and conserving the judicial resources necessary to conduct a trial. Approval of the Settlement Agreement avoids the uncertainty inherent in litigating several sharply contested issues concerning the

---

33     *See* http://www.bloomberg.com/quote/RSH:US/chart.
34     *Id*.
35     *See* Defendant's Quarterly Report for the third quarter of 2012, p. 4, available at http://www.sec.gov/Archives/edgar/data/96289/000009628913000014/form10q033113.htm (Defendant has $434.9 in cash and cash equivalents as of March 31, 2013, down from $535.7 million as of December 31, 2012).

11

interpretation of FACTA and assessing damages, as well as the risk that a similar, smaller or no recovery would be achieved after a trial and appeal.

## 2. The extent of support of the settlement by the parties

The parties have agreed to cooperate in seeking approval of the Settlement Agreement and defending any collateral attack on the settlement. The parties have also agreed to cooperate in the notice and administration process, having jointly drafted the class notice and claim form.

## 3. The judgment of counsel

The judgment of counsel also weighs in favor of approval of a settlement.[36] Here, in light of the relief to class members, Defendant's current compliance with FACTA, the fact that Defendant is funding the costs of class notice and administration, and given Defendant's financial standing, class counsel has concluded that the settlement is fair, reasonable and adequate and should be approved. This conclusion is based upon, *inter alia*, class counsel's experience in litigating consumer class actions, assessing the likelihood of success on the merits, assessing the available statutory damages that could be recovered by the class if Plaintiffs prevailed on their claims and consideration of likely funding sources to pay any future judgment. The benefit value to each class member is $10 given anticipated claim rates. The Settlement Vouchers are also transferrable. A review of many FACTA settlements reveals that this settlement is within the range of appropriate class-wide settlements.

## 4. The presumption of bargaining in good faith

In addition to the presumption that settlement negotiations between experienced counsel have been conducted in good faith, this settlement was, in fact, the result of an arm's-length negotiation process. There was substantial give and take by the parties prior to agreement on the

---

36  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is entitled to rely upon the judgment of experienced counsel for the parties).

terms of the Settlement Agreement. The parties enlisted the help of this Court to facilitate a settlement, and this Court witnessed extensive, often contentious, negotiations. Those intense negotiations continued subsequent to this Court's involvement and even after the parties reached an agreement in principal.

### 5. The nature of the issues of law and fact

The issues of law and fact in this litigation also support approval of the proposed settlement because, as noted above, the amount of time and expense needed to litigate the class claims to conclusion would be complex, lengthy and expensive. The legal and factual issues alleged in the Complaint are complex, especially where the burden of proof is high and there is no guiding trial precedent for Plaintiffs' claims.[37]

Defendant has evidenced a willingness to defend this case vigorously. In light of the fact that a significant amount of time and money that will be spent on substantial pre-trial proceedings, including whether this case will be transferred to Texas, additional fact discovery, expert discovery and dispositive motion practice, the parties' resources could better be used to fund a settlement beneficial to the settlement class.[38] With the approval of this settlement, the class members are receiving a transferrable, usable Settlement Voucher for which no additional purchase is necessary. This is a fair result, especially when Plaintiffs would have to prove that Defendant's alleged conduct was willful, and in light of Plaintiffs' concerns about defendant's wherewithal.

---

37     To prove their claims, Plaintiffs must prove willfulness, which requires a showing of knowledge or reckless disregard of FACTA's requirements. *Safeco v. Burr*, 127 S. Ct. 2201, 2203 (2007). Even if Plaintiffs were to meet that burden, any judgment would be subject to attack as constitutionally excessive. *See e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

38     *See e.g.*, *Lowenschuss v. Bluhdorn*, 613 F.2d 18, 19 (2d Cir. 1980) (settlement approved where further litigation would have been expensive and protracted with no guarantee of any relief to the class).

C. **Notice Is The Best Practicable**

Rule 23(e)(1) requires that, in class settlements, notice be given "in a reasonable manner to all class members who would be bound by the proposal." Because this is a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In this case, individual notice will be given to approximately 4,500,000 class members for whom Defendant has last known mail or email addresses.

Obtaining contact information for the remaining class members is impracticable, because it would require (1) obtaining a master list of PAN numbers, which are the first six (6) digits of credit and debit card numbers and identify by number financial institutions that issued credit and debit cards used in class member transactions; (2) compiling from Defendant's records, if available, a list of PAN numbers from credit/debit transactions by class members; (3) matching the PAN numbers from transactions to financial institutions identified from the PAN list; (4) sending subpoenas to each financial institution (in this case in every federal jurisdiction in the country) requesting contact information for cardholders; (5) filing motions to compel and obtain compulsion orders in each federal jurisdiction in the country, because financial institutions will not voluntarily provide the requested information; (6) compiling a class list from the information received after obtaining compulsion orders and compliance from the financial institutions; (7) providing individual notice to each class member.[39] Taking those steps would cost hundreds of thousands of dollars.[40] Moreover, the cost of direct notice to those class members once addresses are obtained would cost millions of dollars. Requiring such steps to be taken would be

---

39  *See e.g.*, *Rogers v. Khatra Petro, Inc.*, no. 2:08-cv-294, 2011 WL 611873, *1 (N.D. Ind. Feb. 14, 2011); *see also Armes v. Sogro, Inc.*, no. 08 C 244, 2012 WL 639480, at *4-5 (E.D. Wisc. Feb. 27, 2012).
40  *Id.*

unreasonable under the circumstances.[41] Additionally, taking such steps would slow this process to a point that may undue this settlement. *See* Section II.B.1.b., *supra*.

Individual notice will be supplemented by providing notice in several national magazines, a settlement website and on Defendant's website. Such notice is appropriate as to class members whose addresses are unknown.[42]

## Conclusion

Because the Settlement Agreement reached is the product of good-faith bargaining between experienced counsel and provides a substantial benefit to the settlement class members, this Court should certify the class for settlement purposes, preliminarily approve the Settlement Agreement and direct that notice be sent in accordance with the Settlement Agreement's terms.

| | |
|---|---|
| SCOTT D.H. REDMAN,<br>Plaintiff, | MARIO ALIANO and<br>VICTORIA RADAVICIUTE,<br>Plaintiffs, |
| By: /s Paul F. Markoff | By: s/ Thomas A. Zimmerman, Jr. |
| Paul F. Markoff<br>Karl G. Leinberger<br>Markoff Leinberger LLC<br>134 N LaSalle St Ste 1050<br>Chicago IL 60602<br>Tel: 312.726.4162<br>Fax: 312.674.7272<br>paul@markleinlaw.com | Thomas A. Zimmerman, Jr.<br>Adam M. Tamburelli<br>Zimmerman Law Offices, P.C.<br>77 W Washington St Ste 1220<br>Chicago IL 60602<br>Tel: 312.440.0020<br>Fax: 312.440.4180<br>tom@attorneyzim.com |

---

41  *See Rogers*, 2011 WL 611873, at *1; *see also Armes v. Sogro*, 2012 WL 639480, at *5.
42  *See Rogers*, 2011 WL 611873, at *2; *Armes v. Sogro*, 2012 WL 639480, at *4.

**CERTIFICATE OF SERVICE**

   I certify that I served a copy of this *Plaintiffs' Memorandum in Support of Their Motion for Preliminary Approval of Class Action Settlement Agreement* on the following electronically by using the CM/ECF system on this 21st day of May, 2013:


James R. Daly (jrdaly@jonesday.com)
Irene S. Fiorentinos (ifiorentinos@jonesday.com)
Elizabeth H. Jenkins (ehjenkins@jonesday.com)
Jones Day
77 W Wacker Dr Ste 3500
Chicago IL 60601

Thomas A. Zimmerman, Jr. (tom@attorneyzim.com)
Adam M. Tamburelli (adam@attorneyzim.com)
Zimmerman Law Offices, P.C.
77 W Washington St Ste 1220
Chicago IL 60602

                s/ Paul F. Markoff
                Paul F. Markoff