**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTREN DIVISION**

| | |
|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, ) | |
| ) | 11 C 6741 |
| Plaintiff, ) | (consolidated with 11 C 7819) |
| ) | |
| v. ) | |
| ) | Magistrate Judge Valdez |
| RADIOSHACK CORPORATION, A Delaware corporation, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |
| MARIO ALIANO and VICTORIA RADAVICIUTE, individually and on behalf of all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| RADIOSHACK CORPORATION, a Delaware corporation, ) | |
| ) | |
| Defendant. ) | |

**VANITA GUPTA'S, GREGORY RUNYARD'S AND CHARLES H. WARNER, JR.'S**
**OBJECTIONS**
**TO THE PARTIES' SETTLEMENT AGREEMENT**

Curtis C. Warner
Warner Law Firm, LLC
1400 E. Touhy Ave., Ste. 260
Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com

**OBJECTORS ARE CLASS MEMBERS**

Vanita Gupta's ("Gupta"), Gregory Runyard's ("Runyard") and Charles H. Warner, Jr.'s ("Warner") (collectively "Objectors"), declarations set forth the facts demonstrating class membership. (Appx. 1, 2 & 3). While the Objectors cannot state with any certainty that the electronically printed receipts they received at RadioShack contained an expiration date, RadioShack admitted that all of its point of sale ("POS") terminals during the class time period were printing cards expiration dates on the receipts. (Doc. 68, July 18, 2012 Court Hearing, Tr. 5, ln. 9-19; Tr. 14-15, ln. 23-25, 1).

**ARGUMENT**

**I.      The Settlement is Unfair, Unreasonable, and Inadequate**

The Seventh Circuit, "insist[s] that district courts 'exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions.' In the past, we have gone so far as to characterize the court's role as akin 'to the high duty of care that the law requires of fiduciaries.'" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652-53 (7th Cir. 2006) (*quoting Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002)). In this consumer class action, "[t]he court [is to] take[] the place as monitor of counsel[.]" *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2010).

In making the determination of whether a class action settlement meets Rule 23's requirements of being "fair, reasonable, and adequate," this Court must consider five factors: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs.,* 463 F.3d at 653 (*quoting Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

**A.      The Strength of Plaintiffs' Case Balanced Against the Settlement Amount to
Each Class Member weights Heavily Against Approval of the Settlement**

1

In *Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.,* No. 07 CV 2898, No. 09 C 2026, 2012 U.S. Dist. LEXIS 25265 * 18-19 (N.D. Ill. Feb. 28, 2012), the court articulated the strength of case balancing test analysis that should be applied as follows:

> First, to determine the case's strength, the court is instructed to calculate the 'net expected value of continued litigation to the class.' *Reynolds*, 288 F.3d at 284-85. Once the net expected value of litigation is determined, the court proceeds to 'estimate the range of possible outcomes and ascribe a probability to each point on the range.' *Synfuel,* 463 F.3d at 653 (citation and quotation marks omitted). Although this might sound like an exact science, the Seventh Circuit recognizes that 'a high degree of precision cannot be expected' in these calculations, which are by definition speculative. Instead, courts are to provide a 'ballpark valuation' of the class's claims. *Synfuel*, 463 F.3d at 653 (quoting *Reynolds*, 288 F.3d at 285).

*Id*., 2012 U.S. Dist. LEXIS 25265 * 18-19.

### 1. Plaintiffs Would Win on the Merits

The "'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs*., 463 F.3d at 653 (*quoting In re General Motors Corp. Engine Interchange Litig*., 594 F.2d 1106, 1132 (7th Cir. 1979)). Plaintiffs' case on the merits is very strong, entitling each class member to no less than $100, no more than $1,000, per receipt. However under the terms of the Agreement each claiming class member will receive a $10 (ten dollar) "voucher" that expires in 6 months, can only be used at RadioShack. (Doc. 94-1, Settlement Agreement and Release, p. 7).

Plaintiffs offer no analysis of the weakness of their case. Just because no defendant has gone to trial in a FACTA case does not mean that a plaintiff cannot prevail at trial. Perhaps no defendant is foolish enough to bet the financial health of the company or has wanted to open up its books (especially if it is a privately held company) to argue for a reduction in damages.

The sole issue is whether RadioShack willfully violated 15 U.S.C. § 1681c(g)(1), which is a question of law. *Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 490-91 (7th Cir. 2012) *cert. denied* 133 S. Ct. 983 (Jan. 22, 2013); *Long v. Tommy Hilfiger U.S.A., Inc*., 671 F.3d 371, 377 (3rd Cir.

2012). The law is clear that including credit and debit cards expiration dates on electronically printed receipts violates the truncation requirement of 15 U.S.C. § 1681c(g)(1). *Shell Oil*, 678 F.3d at 489 (*citing Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371 (3d Cir. 2012)). When the law is clear, a defendant can be found to have willfully violated it. *Shell Oil*, 678 F.3d at 489 (*citing Safeco Insurance Co. v. Burr*, 551 U.S. 47, 69, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)); *Todd v. Target Corp.*, 10 C 5598, 2012 U.S. Dist. LEXIS 44362 (N.D. Ill. March 30, 2012) (denying the defendant's motion for summary judgment where the court found that the document on which the cardholder's expiration date was printed was a "receipt".).

Furthermore, prior court decisions of statutory interpretation provide defendants with reasonable warning that the conduct at issue would violate that statutory act. *United States v. Lanier*, 520 U.S. 259, 268 (1997). In *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d 960, 963-4 (N.D. Ill. 2007), the court reasoned that, "FACTA is not vague or ambiguous such that defendant's conduct would not be willful." *Id.*, at 963 (*citing Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 2007 U.S. Dist. LEXIS 61630 (N.D. Ill. 2007). The *Hospitality Plus* court cited several other cases where the language of 15 U.S.C. § 1681c(g)(1) in regard to failing to truncate the expiration dates of credit and debit cards on electronically printed receipts was challenged. *Id.*, at 963 (*citing Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965 (C.D. Cal. 2007) (FACTA is not vague or ambiguous such that defendant's conduct would not be willful); *Aeschbacher v. California Pizza Kitchen, Inc.*, No. CV 07-215, 2007 U.S. Dist. LEXIS 34852 (C.D. Cal. Apr. 3, 2007)(same); *Blanco*, 2007 U.S. Dist LEXIS 31231 at *5-6 (same); *Pirian v. In-N-Out Burgers*, No. SA CV 06-1251, 2007 U.S. Dist. LEXIS 25384 (C.D. Cal. Apr. 5, 2007)(same); *Lopez v. The Gymboree Corp.*, No. C 07-0087, 2007 U.S. Dist. LEXIS 44461 (C.D. Cal. June 8, 2007)(same); *Korman v. The Walking Co.*, No. 07-1557, 2007 U.S. Dist. LEXIS 63732 (E.D. Pa. Aug. 28, 2007)(same)).

Plaintiffs' counsel represented to this Court that, "Defendant has acknowledged to this Court (though not in any pleadings or discovery responses) that it knew about FACTA's truncation requirement." (Doc. 92, Redman's Brief Supporting his Second Motion to Compel, p. 2) (seeking to compel records related to key RadioShack POS employees' purchases with their debt and credit cards at Defendant's stores). Indeed, RadioShack's counsel admitted RadioShack had knowledge. (Doc. 68, In Court Hearing, RadioShack's Counsel, Tr. 5-6, ln. 25, 1-5) ("[W]e're not denying that Radio[S]hack knew of FACTA. Obviously they had a system. The old system was FACTA compliant. * * * Radio[S]hack is not denying knowledge of FACTA." ).

Finally, Plaintiffs' counsel informed the District Judge that, "Radio[S]hack has been sued on this before, in fact, prior to 2008[.]" (Doc. 68, Tr. 10-11, ln. 25, 1-2). Indeed the court in *Ferron v. RadioShack Corp*, 175 Ohio App. 3d 257 (Ohio App. 2008), made the specific finding that, "the facts are largely undisputed . . . [f]or each transaction, RadioShack issued plaintiff an electronically printed receipt that displayed the expiration date of plaintiff's debit card." *Id*, at 259. As such, Plaintiffs had a very strong case against RadioShack on liability and for damages entitling each class member of no less than $100 per receipt.

### 2. The Minimum Relief to Each Class Member is $100

Under the FCRA, Plaintiffs and each class member individually are entitled to no less than $100 and no more than $1,000, per violation, plus punitive damages. 15 U.S.C. §1681n(a)(1)(A), (a)(2). Defendant's liability to the class may be reduced only if a defendant the can demonstrate that the damages awarded exceed Constitutional limitations. *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948 (7th Cir. 2006). Plaintiffs' counsel acknowledged that, "Defendant has $517,700,000 in cash and cash equivalents and $704,600,000 is shareholder equity as of June 30, 2012." (Doc. 60, Plts. Resp. to Def. Mtn. to Transfer, p. 10, Ex. 6) (*citing* Defendant's 10-Q quarterly report); (Doc. 99, p. 11 n. 35) (As of

March 31, 2013, RadioShack had $434,900,000 in cash and cash equivalents.).[1] As such, a sizeable judgment can be entered against RadioShack which it has the ability to pay. *See*, Barry Schlachter, RadioShack Shares Rebound After Concerns About Finances, Star-Telegram (July 12, 2013) *http://www.star-telegram.com/2013/07/12/4998259/radioshack-shares-rebound-after.html* (*quoting* RadioShack's prepared statement, "'We continue to have a strong balance sheet with total liquidity of $820 million at the end of the first quarter.").

Given that RadioShack admittedly knew of FACTA's requirements prior to this lawsuit and indeed had been previously sued on March 7, 2006, for printing the plaintiff's debit cards expiration date on its receipts, *Ferron*, 185 Ohio App. at 258, damages above $100 per class member, per receipt, and punitive damages are warranted. In seeking preliminary approval it was represented to this Court that more than likely the class is comprised of "16 million class members[,] (Doc. 99, Plt. Memo. For Preliminary Approval, p2), which equates to a minimum judgment for the class of $1,600,000,000 (1.6 billion dollars). This or any higher amount, would be subject to a *post-judgment* reduction under the Seventh Circuit's holding in *GMAC Mortg. Corp.*, if so requested by RadioShack, which would then have the burden to establish what the constitutional limit for a damage award should be. *GMAC Mortg. Corp.*, 434 F.3d at 954 (*citing State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). Notably, no evidence has been presented or analysis of what the constitutional dollar limit on damages against Defendant is in this case. However given RadioShack's vast cash resources, the amount of the "voucher"[2] fund established cannot be said to have even approached the constitutional limit. *See* RadioShack Corp, 10-Q/A (Amendment No. 1) filed 7/23/2013, p. 10 (estimating an expected loss

---

[1] Furthermore, RadioShack's stock price has nothing to do with its cash reserves. RadioShack has $1.85 billion dollars in assets. RadioShack Corp, 10-Q/A (Amendment No. 1) filed 7/23/2013, p. 4.

[2] The void after six months "voucher" fund amount in the Agreement does not represent the actual dollar amount that the settlement is going to cost RadioShack. *Synfuel Techs.*, 463 F.3d at 654 (*quoting In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001)).

contingencies in the aggregate up to $16.6 million due to "recent developments in case law that pertain to certain claims currently pending against the Company * * * [and] believe[s] that the ultimate resolution of our loss contingencies for which we have not accrued losses will not materially adversely affect our financial condition.").

Under the terms of the Agreement, each claiming class member will receive a $10 "voucher" only redeemable for 6 months at RadioShack and is subject to a *pro rata* reduction if claims are made above the value of the settlement fund. (Doc. 94-1, Settlement Agreement and Release, p. 7). Objectors do not view the $10 "voucher" that must be used exclusively at RadioShack as having value, but view it as business promotion forcing class members to do future business with RadioShack. (Appx. 1, Gupta Decl. ¶¶ 10-13; Appx. 2, Warner Aff. ¶¶ 20-24, Runyard Decl. ¶¶ 8-9). Nor do objectors Penna and Bently. (Doc. 103) ("[T]he suit only delivers a pittance of $10[.]"); (Doc. 106) ("I object to the proposed $10.00 RadioShack Voucher. I do not feel this is a sufficient amount to penalize for the infraction made by placing my expiration date on the receipt. * * * In addition, the amount can only be used at RadioShack. This gives directly back to the store that made the violation with the potential for additional purchases costing above and beyond the $10.00 voucher."); *see also* (Doc. 105, Goodwin Exclusion) (I "have no desire or need to sue anyone for ten dollars[.]") The record is void on what $10 can buy you at RadioShack. Indeed, Objector Warner notes that his prior purchases at RadioShack have been above $10 citing the combined amounts of his 2/12/10 two purchases equaling $51.09 and his June 20, 2009, purchase for $198.98. (Appx. 2, Warner Aff. ¶ 28). Mr. Warner further states that he does not know whether he will do business with RadioShack in the future. The Objectors are infrequent shoppers at RadioShack. (Id. ¶¶ 24, 27; Appx. 1, Gupta Decl. ¶ 14; Appx. 3, Runyard Decl. ¶ 10).

### 3. The Form of the Settlement's Purported Value Should be Considered

The Seventh Circuit has warned that, "the structure of class actions under Rule 23 * * * gives class action lawyers an incentive to negotiate settlements that enrich themselves but give scant reward to class

members, while at the same time the burden of responding to class plaintiffs' discovery demands gives

defendants an incentive to agree to early settlement that may treat the class action lawyers better than the

class." *Thorogood v. Sears, Roebuck & Co.,* 627 F.3d 289, 293 (7th Cir. 2010) (emphasis omitted).  The

structure of the Agreement squarely fits within the Seventh Circuit's concern with class actions.

### a. The "$10 Voucher" is a "Coupon" Under CAFA and Therefore is Subject to "Increased Judicial Scrutiny"

Although the Class Action Fairness Act ("CAFA") defines various other terms, it does not define

what constitutes a "coupon."  *See* 28 U.S.C. § 1711.  CAFA does not apply, "where class members can

opt between cash and credits[.]"  *In re: Easysaver Rewards Litigation* 09cv2094 AJB (WGV)

Consolidated Action, 2013 U.S. Dist. LEXIS 15738 * 18 (Feb. 4, 2013 S.D. Cal.) (*citing Shames v.*

*Hertz Corp.*, 2012 U.S. Dist. LEXIS 158577, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (*citing CLRB*

*Hanson Indus., LLC v. Weiss & Assocs., PC,* 465 Fed. Appx. 617, 619 (9th Cir. 2012)).  Here there is no

option for cash and therefore the "voucher" is a "coupon" under CAFA as it expires like a store coupon,

can be given to another person to use, and like other coupons can be "stacked"[3] with other store

coupons. *In re: Easysaver Rewards Litigation, supra; see also Synfuel Techs., Inc..*, 463 F.3d at 654

("pre-paid envelopes are not identical to coupons, since they represent an entire product, not just a

discount on a proposed purchase. Nonetheless, they are a form of in-kind compensation that shares some

characteristics of coupons, including forced future business with the defendant").

CAFA allows a court to approve coupon settlements, "only after a hearing to determine whether, and

making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28

U.S.C. § 1712(e).  Section 12 of CAFA, "invites increased judicial scrutiny of coupon settlements

---

[3]  *See also e.g.* http://www.tlc.com/tv-shows/extreme-couponing (various episode clips); *see also* http://www.target.com/HelpContent?help=/sites/html/TargetOnline/help/promotions_sweepstakes_and_discounts/target_coupon_policy/target_coupon_policy.html ("Target accepts one Manufacturer Coupon and one Target Coupon for the same item (unless prohibited by either coupon).").

generally." *Feder v. Frank* (*In re HP Inkjet Printer Litig.*), 716 F.3d 1173, 1178 (9th Cor. 2013) (*citing* 28 U.S.C. § 1712(e))[4]; *Synfuel Techs., Inc.*, 463 F.3d at 653-54; *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010); S. Rep. No. 109-14, at 27 (stating that CAFA "requires greater scrutiny of coupon settlements"). The "problems with coupon settlements [are that]: (1) it is doubtful that they 'provide meaningful compensation to most class members'; (2) they often 'fail to disgorge ill-gotten gains from the defendant'; and (3) they may force class members 'to do future business with the defendant[.]'" *Synfuel Techs.*, 463 F.3d at 653 (*quoting* Geoffrey P. Miller & Lori S. Singer, "Nonpecuniary Class Action Settlements," 60 LAW & CONTEMP. PROBS. 97, 108 (1997)).

### b. Examples of Post-2008 Clarification Act FACTA Settlements

Objector Warner was a class member in another FACTA, failure to truncate credit and debit card expiration dates case, *Seppanen v. Krist Oil, Co.*, 2:09-cv-00195-GJQ (W.D. Mich.), in which he received $3,800, $100 for each of his purchases that he was able to demonstrate through his credit card's statements. *See Id.*, Doc. 114-1, Settlement Agreement; (Appx 2., Warner Aff. ¶ 18). Indeed, one class member in *Krist Oil* received $29,500, $100 for each of the class member's 295 unique transactions within the class time period. *Krist Oil*, Doc. 118, Final Approval Memo., p. 18.

In *Todd v. HB Windows and Doors, Inc.*, 10 C 4986 (N.D. Ill.), another FACTA class action settlement, each claiming class member who made a timely claim received $1,000 from a common settlement cash fund. *Id.*, Doc. 69, Final Approval Order, p. 4. In *Tang v. Pita Inn, Inc.,* 11 C 3833 (N.D. Ill.), another FACTA class action settlement, each claiming class member received $40 from a common settlement cash fund. *Id.*, Doc. 57, Settlement Agreement, p. 3.

In *Masters v. Lowe's Home Centers, Inc.,* 09-cv-255-JPG-PMF (S.D. Ill.), Lowe's agreed to make available Lowe's gift cards up to a total of $7,000,000 with a minimum of $3,500,000 to be

---

[4] The docket does not indicate whether notice of this settlement was properly provided under 28 U.S.C. § 1715(b). Without such notice, this Court cannot grant final approval of the settlement until 90 days after notice under 28 U.S.C. § 1715(b) has been provided to the appropriate federal and state officials. 28 U.S.C. § 1715(d).

distributed on a sliding scale, $25 if the Claimant made one payment at Lowe's on their GE Money Bank's Lowe's branded credit card, $33 for two payments and $40 for three or more payments. *Id.*, Doc. 46, pp. 8-9. Additionally, the gift card had "no expiration date" and "Class counsel's fees and expenses . . . will be paid by Lowe's separately." *Id.*, p. 8. On the merits, *Lowe's* which was factually different than this case involved the printing of the first few ISO digits assigned to all Lowe's branded cards on payment confirmation documents, went to the Seventh Circuit on appeal over whether Lowe's could compel arbitration, Docket No. 09-2754 opened, July 10, 2009, which was before the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion* 131 S. Ct. 1740 (2011), and before the Seventh Circuit's decision in *Shell Oil Prods. Co. LLC*, 678 F.3d 486 (7th Cir. 2012). As such, the plaintiff's arguably weaker case in *Lowe's* justified the amount of the class members' benefit.

In *O'Hara v. Medieval Times USA, Inc.*, 3:10-cv-751 (D. N.J.), another FACTA class action, the court approved a combined $525,000 cash fund, making available $100 for each claimant who made a purchase within a very short time period during which all of the defendant's gift shop POS terminals were out of compliance and for each claimant who could produce a non-FACTA complaint receipt. For all other persons during the class period who it was not certain that their receipt was not complaint with FACTA a $1.5 million ticket fund was established from which they could make a claim from. *Id.*, at Doc. 40, 40-1. These examples demonstrate meaningful value to those class members in *post*-2008 Clarification Act FACTA settlements.

### 4. The Appearance of Collusion

[The Seventh Circuit] and other courts have often remarked the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers—the deal that promotes the self-interest of both class counsel and the defendant and is therefore optimal from the standpoint of their private interests.

*Creative Montessori Learning Ctrs.*, 662 F.3d at 918 (citations omitted).

9

RadioShack "got a ***good deal*** on th[e] settlement." (Doc. 102, May 8, 2013 Court Hearing, Tr. 3, ln. 12-13) (Plaintiffs' counsel's statement to the District Judge) (emphasis added). Plaintiffs' counsel further stated that, "we need to get this [settlement] done with bankruptcy protections", (Id., Tr. 9, ln. 8-10), so that any amount of the settlement (especially attorney's fees) is not subject to the bankruptcy trustees' ability to void any transfer of the debtor's property made "on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A). The District Judge noted that, "You tell me that your putative class representative is tiered of waiting[,]" "[o]h, he is a lawyer[.]" (Doc. 102, Tr. 11, ln. 22-23; Tr. 12, ln. 6). These statements infer that both class counsel and a lawyer putative class representative were only looking after their own interests in agreeing to the terms of the Agreement.

This Court should heavily scrutinize the terms of the Agreement in light of the amounts the class members are to receive compared to Plaintiffs' counsel and against the backdrop of RadioShack's Motion to Transfer and Plaintiffs' counsel's comments to the District Judge. This Court should also compare the settlement reached in another credit card related case arising under state law against the same Defendant in *Sosinov v. RadioShack Corp.,* Case No. BC449675, Superior Court for the State of California for the County of Los Angeles. *http://sosinovcaliforniasettlement.com/Home.aspx* ($11 settlement certificate that expires in six months sent automatically without a claim form via email or U.S. mail to class members; $2,000 to each class representative; and $375,00 in attorney's fees and costs paid "separate and apart from any benefit to the class"). Final approval in *Sosinov* was granted on March 27, 2013. (Id.). Based on these factors, it appears that the Seventh Circuit's concern as noted above, became reality in the parties' Agreement.

**B. The Complexity, Length, and Expense of the Litigation**

This case is not complex given the narrow issue of law and that no experts are required. Factually it is not disputed that RadioShack was printing expiration dates on electronically printed receipts, that it had knowledge of FACTA, and that it was sued in 2006 in Ohio in *Ferron*. It appears

that no depositions have moved forward, but such can be done with relative expediency. Likewise, the use of a RadioShack Rule 30(b)(6) witness on multiple topics would eliminate the need to take the depositions of all of the persons RadioShack has disclosed as potential witnesses. The costs moving forward in this case does not appear to be much and according to Defendant those costs would not significantly increase if this matter were transferred to the Northern District of Texas. (Doc 65, Def. Reply in Support to Transfer, p. 6). Plaintiffs should prevail on summary judgment. A trial on damages would not be needed in this case given the class size compared to RadioShack's financed and therefore RadioShack would only need to argue what the reduction in damages under *GMAC Mort. Corp.*, should be. An appeal, if improvidently taken, would more than likely would be expeditiously resolved.

### C. The Opinion of Counsel Should be Heavily Scrutinized

Plaintiffs' counsel has one million reasons to state that this settlement comports with Rule 23. While Plaintiffs state that a, "review of many FACTA settlements reveals that this settlement is within the range of appropriate class-wide settlements[,]" (Doc. 99, p. 12), Plaintiffs notably fail to cite any settlements. Likewise, Plaintiffs fail to state whether their review included those settlements that occurred prior to the passage of the Credit and Debit Card Receipt Clarification Act of 2008, codified at 15 U.S.C. § 1681n(d), which eliminated from liability "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008[.]" Lawyers settle cases on advantageous terms if a client's claim is in jeopardy. Indeed, those defendants who didn't realize that 15 U.S.C. § 1681n(d) was going to be enacted later complained about having to abide by their settlements. *See e.g. Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010). As one court noted in overruling the State of Texas' objection, that after 15 U.S.C. § 1681n(d) became effective anything class members would receive is a "tangible benefit . . . [as] [s]uch a benefit would be illusive under federal FACTA law as it exists today." *Todd v. Retail Concepts Inc.*, 3:07-0788 Class Action, 2008 U.S. Dist. LEXIS 117126 * 11-12 (M.D. Tenn. Aug. 22, 2008). Finally,

there is no mention whether the defendants in those other FACTA settlements had the vast cash wealth that RadioShack has here. As such, Plaintiffs' counsel's cursory and unsupported analysis should be heavily scrutinized and does not favor approval of the Agreement.

### D. The Stage of the Proceedings at the Time of Settlement

The last factor that the Seventh Circuit deems relevant to the Rule 23 analysis concerns the stage of the proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653. There is a strong inference that Plaintiffs entered into the Settlement Agreement to avoid having the District Judge transfer this lawsuit to the Northern District of Texas. "[S]uspicious factors" a court is to take into consideration is whether the "attorneys involved have sacrificed their clients' interests to assure themselves of receiving sizable attorneys' fees." *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 890-91 (7th Cir. 1985) (*citing Oswald v. General Motors Corp*. (*In re General Motors Corp. Engine Interchange Litigation*), 594 F.2d at 1130; *Patterson v. Stovall*, 528 F.2d 108, at 113 (7th Cir. 1985); *accord Ficalora v. Lockheed California Co*., 751 F.2d 995, 996-97 (9th Cir. 1985)). Here, a fair, adequate and reasonable settlement was sacrificed due to the apparent fear that Plaintiffs would abandon their claim if this matter was transferred to the Northern District of Texas.

Indeed, Plaintiffs' Motion for Preliminary Approval points out that they settled this case because of the probability that, "this case will be transferred to Texas[.]" (Doc. 99, p. 13); *See also* (Doc. 60, Plts. Resp., in Opposition to Def. MTN to Transfer, p. 9) (emphasis in the original) ("If this Court were to transfer this case to Texas, Plaintiffs may not be able to participate fully in the proceedings due to the distance and time and cost restraints."); (Redmond Decl. ¶ 4) ("It would be extremely inconvenient to prosecute this case in Texas."); (Aliano Decl. ¶ 5) (Travel to Texas is "burdensome" and "may jeopardize my job."; (Radaviciute Dec. ¶ 5) (exactly the same).

Radio Shack's motion to transfer this matter to the Northern District of Texas appeared to be the death knell of this lawsuit from continuing with these Plaintiffs and their counsel. RadioShack's counsel

in open court stated that, "we do believe our motion to transfer is legitimately strong[.]" (Doc. 58-1, Transcript of June 20, 2012 Court Hearing, Tr. 5, ln. 4-7). The District Judge after being informed that most of the witnesses are in Fort Worth, Texas commented, "Forth Worth and very few of them, if any, in Illinois, it's likely that I'll transfer . . . I haven't read your briefs and I don't know what your positions are going to be" so "my mind is totally open." (Doc. 68, Tr. 11-12, ln. 19-25, 1-2).

On March 15, 2013, RadioShack filed their Renewed Motion to Transfer the lawsuit to the Northern District of Texas. (Doc. 82). On the March 20, 2013 motion hearing date the docket reflects the parties are now "making progress on settlement" and a future status date was provided. (Doc. 84). On April 10, 2013, the District Judge notified the parties that because a settlement appears not to be feasible at this time, "[t]he court will rule on the defendant's renewed motion to transfer the case [82] in due course." (Doc. 85). On May 8, 2013, the Court held a status hearing and entered and continued the hearing until May 15, 2013. On May 15, 2013, the parties informed the District Judge that, "they have reached a settlement "and anticipate consenting to Magistrate Judge Valdez." (Doc. 96).

It appears in this case that Plaintiffs in addition to a potential bankruptcy filing their counsel concluded that transferring this case to the Northern District of Texas would be the end of their participation in this matter. Because of the stage the litigation was in, pre-ruling on the transfer motion, and the subsequent Agreement promptly entered into to avoid a ruling by the District Judge when it appeared imminent that the Court would rule, to get the case moving again, this suspicious timing factor weights heavily against approving the Agreement, under *Synfuel Techs.'*, fifth factor and under Rule 23(a)(4)'s[5] adequacy of plaintiff and counsel requirement.

---

[5] Furthermore as to the adequacy requirement of Rule 23(a)(4), the proposed Release given by the class members is overbroad, apparently giving up claims beyond those specifically related to RadioShack's conduct at issue and is not informative as the class members do not know what type of other claims Plaintiffs could have raised against Defendant, e.g. a personal injury claim for a slip and fall, which are also released. Any subsequent settlement should not contain such a gratuitous release to RadioShack, especially for no value. *See Hardwick v. Fisher & Shapiro, LLC*, 2012 U.S. Dist. LEXIS 148685 (N.D. Ill. Oct. 16, 2012).

## II.      The Under Penalty of Perjury Requirement to Make a Claim or Object was Improper

RadioShack has the names and addresses and/or email addresses of about one-fourth of class members.  *See* (Doc. 99, Preliminary Appv. Memo, p. 3).  As such, it was not reasonable for these identifiable class members to under the penalty of perjury recall the location of the RadioShack store and to state the approximate date of a purchase made years ago. *See* (<u>Appx. 1</u>, Gupta Decl. ¶ 9; <u>Appx. 2</u>, Warner Aff.  ¶¶ 13-16); *See also* (Doc. 105, Goodwin Exclusion).

The District Court Judge also took exception to the penalty of perjury requirement, (Doc. 102, Tr. 10, ln. 2-9; Tr. 17, ln. 5-10) ("I think [it] is unreasonable"), and an empty threat.  (Id., Tr. 10, ln. 5-9) ("Who is going to prosecute that for perjury[?] * * * "Nobody, that's the answer to that.").  The District Judge concluded by stating that "a requirement that any claimant produce satisfactory evidence of entitlement to participation" was sufficient. (Id., Tr. 18, ln. 5-8).  However, Plaintiffs agreed to the penalty of perjury requirement and its chilling effect. Notably, the Parties consented to this Court, thereby bypassing the District Judge's concerns with the penalty of perjury language.

Likewise it was not reasonable for any of the class member to state under the penalty of perjury that the receipt that they were provided contained an expiration date, as RadioShack admitted that all of its POS were printing them on customers' receipts, *supra*.  Such language in a notice is highly objectionable and must be removed in any subsequent notices to the class members.  *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 568 (7th Cir. 2011).

Finally, the number of claims and objections may have been substantially chilled by the unnecessary penalty of perjury requirement.  Who wants to go to jail for a $10 coupon or to file an objection?  As such, this Court cannot effectively evaluate the true magnitude of the opposition to the Agreement.

## III.  If the Agreement is Approved, An Award of $1,000,000 in Attorney's Fees Would Violate the Class Action Fairness Act

14

The award of $1,000,000 in attorney's fees violates CAFA, specifically 28 U.S.C. § 1712(a)—(c), which govern the calculation of attorney's fees in class action cases containing a coupon component. "When a settlement provides for coupon relief, either in whole or in part, any attorney's fee 'that is attributable to the award of coupons' must be calculated using the redemption value of the coupons. *Feder v. Frank* (*In re HP Inkjet Printer Litig.*)*,* 716 F.3d 1173, 1175-1176 (9th Cir. 2013) (*quoting* 28 U.S.C. § 1712(a)). The Agreement calls for the establishment of a settlement fund up to $5,350,000 with a payment of $15,000 to Plaintiffs and an estimated $1.7 to $1.8 million in costs for notice and administration of the class. (Doc. 99, pp. 2-3). Therefore, the class members' maximum recovery of a $10 coupon that expires in 6 months is approximately $3,535,000 to $3,635,000 of the value of the established settlement fund.[6] As discussed, *supra*, the $10 labeled "voucher" here is as a matter of law a "coupon." Therefore the "redemption value" of those $10 coupons, which under the Agreement must be applied to the award of fees (at 18.69% of the redemption value of the coupons) to be determined at a date six months after the *cy pres* coupons expiration date. *See Frank* (*In re HP Inkjet Printer Litig.*), 716 F.3d at 1175-1176 (*quoting* 28 U.S.C. § 1712(a)).

## CONCLUSION

WHEREFORE, Objectors request this Honorable Court not to approve the Agreement. If the Court approves of the Agreement, Objectors request the Court to calculate the amount of attorney's fees awarded based upon the coupon return rate as required under CAFA.

Respectfully submitted,

By:     /s/ Curtis C. Warner
        Curtis C. Warner
        *On behalf of the Objectors*

Curtis C. Warner
Warner Law Firm, LLC
1400 E. Touhy Ave., Ste. 260

---

[6] The *cy pres* award "will take the same form and will carry the same rights and limitations on their use as the Settlement Vouchers issued to Participating Claimants." (Doc. 94-1, p. 8).

Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com

## CERTIFICATE OF SERVICE

I, Curtis C. Warner, hereby certify that on **August 9, 2013**, I filed electronically **the Objectors'**

**Objections** using the Court's CM/ECF system, which automatically will send notice to those parties

who have appeared and are so registered.  A copy was also served upon:

| | |
|---|---|
| Paul F. Markoff | James R. Daly |
| Markhoff Leinberger LLC | Jones Day |
| 134 N LaSalle St, Ste 1050 | 77 W Wacker Dr |
| Chicago, IL 60602 | Chicago, IL 60601 |
| *Counsel for Plaintiffs* | *Counsel for RadioShack* |

Respectfully submitted,

By:     /s/ Curtis C. Warner
Curtis C. Warner
*On behalf of the Objectors*

Curtis C. Warner
Warner Law Firm, LLC
1400 E. Touhy Ave., Ste. 260
Des Plaines, IL 60018
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com