# APPENDIX 1

# SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (the "Agreement") is entered into by plaintiff Zoya Sosinov ("Plaintiff"), individually and in her representative capacity, and defendant RadioShack Corporation ("Defendant" and/or "RadioShack" collectively with Plaintiff, "Parties," or singularly, "Party").

## RECITALS

A.  On November 19, 2010, Plaintiff filed a complaint in the Superior Court of California for the County of Los Angeles ("Court"), entitled *Zoya Sosinov, on behalf of herself, and a class of all others similarly situated, v. RadioShack Corporation, and Does 1 through 100, inclusive,* Los Angeles County Superior Court Case No. BC449675 (the "Action"). Plaintiff alleged that Defendant violated the Song-Beverly Credit Card Act ("Song Beverly"), codified at Civil Code section 1747.08, *et seq.*, by requesting and/or requiring customers using a credit card to provide certain personal identification information.

B.  On January 21, 2010, Defendant filed an answer to the complaint, generally and specifically denying all allegations and causes of action in the complaint and asserting affirmative defenses.

C.  On June 28, 2011, the parties participated in an all-day mediation session with the Hon. Gary Taylor (Ret.), a retired U.S. District Court Judge for the Central District of California, of JAMS Arbitration. With the assistance of Judge Taylor, a potential settlement of the Action was explored in detail. Following the session and a series of arms-length negotiations which spanned many months facilitated by Judge Taylor, the parties eventually reached a class resolution of all substantive issues, with the matter of class counsels' fees and expenses subsequently resolved separately by way of a proposal by Judge Taylor which was accepted by both parties.

D.  Plaintiff and Defendant have engaged in extensive formal and informal discovery, voluntarily exchanged information and documents, conducted an investigation of the facts and have analyzed the relevant legal issues regarding the claims and defenses asserted in the Action. The Parties considered: (1) the uncertainties of a potential motion for summary adjudication and trial; (2) the benefits of settlement; (3) the associated costs, risks, and delays with litigating this complex and time-consuming Action; and (4) the likely appeals from any dispositive rulings or denial of class certification. Based on these considerations, the Parties agreed to completely settle this Action to avoid the costs of continued litigation and trial.

E.  **WHEREAS** the Parties engaged in arms-length negotiations, the result of which was reaching the material terms of this Agreement;

F.  **WHEREAS** the Parties recognize and agree that it is in their mutual best interests to resolve their differences as set forth herein. The Parties also recognize and agree that none admits to any wrongdoing and that the agreements and releases set forth below represent the Parties' compromise of disputed matters in order to avoid the further disruption and expense of the Action;

G.  Accordingly, it is now the intention of the Parties and the objective of this Agreement to avoid the costs of trial, provide immediate, certain and substantial benefits to the class and public,

and settle and dispose of, fully and completely and forever, any and all claims and causes of action in the Action.

**AGREEMENT**

 **1.**   **DEFINITIONS.** The following section defines terms that are not defined above. Some definitions use terms that are defined later in this section:

 **1.1.**   The term **"*Class*"** or **"*Class Member*"** means "All persons in California from whom Defendant requested and recorded personal identification information, including, but not limited to, any postal address, zip code, email address and/or telephone number (landline or mobile), in conjunction with an in-store credit card purchase transaction at any time from November 19, 2009 and thirty (30) days after the entry of the Preliminary Approval Order other than those in which Defendant was entitled to request personal identification information pursuant to the Song-Beverly Act (herein referred to as the 'Class')."

 **1.2.**   The term **"*Plaintiff's Counsel*"** means Law Offices of Zev B. Zysman and Weiss & Lurie.

 **1.3.**   The term "*Credit Certificate*" or "*Certificate*" means a certificate that shall be automatically provided to each Class Member for whom Defendant possesses a mailing address or e-mail address. The Certificates shall have a face value of $11 which can be used to redeem any merchandise at any RadioShack retail store in California. The Certificates will not be subject to any minimum purchase requirement for their use. Each Class Member is automatically entitled to receive and use only one (1) Certificate regardless of the number of alleged violations. The Certificates could be used in combination with any other rebates or discounts that may otherwise be offered on the product to be redeemed but multiple Certificates cannot be used together. The Certificates can be redeemed any time for a period of up to six (6) months following Final Approval. The Certificates will not be redeemable for cash.

 **1.4.**   The term **"*Defendant's Counsel*"** means Morgan, Lewis & Bockius LLP.

 **1.5.**   The term "*E-Mail Notice*" means the notice summarizing the proposed settlement terms set forth in this Agreement, as approved by Plaintiff's Counsel, Defendant's Counsel, and the Court, to be provided to Class Members pursuant to paragraph 3.3 of this Agreement. The E-Mail Notice shall be substantially in the form attached as **Exhibit A.**

 **1.6.**   The term **"*Fairness Hearing*"** means the hearing at which the Court decides whether to approve this Agreement as fair, reasonable, and adequate.

 **1.7.**   The term **"*Final Approval Order and Judgment*"** means an order finally approving the Settlement and entering a judgment. The Final Approval Order and Judgment shall be substantially in the form attached as **Exhibit B.**

 **1.8.**   The term **"*Final Settlement Date*"** means the date three court days after the date that the Final Approval Order and Judgment becomes "final." As used in this paragraph and Agreement, "final" means the later of: (1) the expiration of the time for the filing or noticing of any appeal or motion for reconsideration; (2) the date of final affirmance of any appeal, including re-argument of any such appeal; or (3) the expiration of the time for petitions for review or reconsideration, and, if review or reconsideration is granted, the date of final affirmance following review or reconsideration or the final dismissal of any appeals or proceedings on review.

**1.9.** The term **"*Internet Posting*"** means the Settlement Website set up by the Settlement Administrator for the sole purpose of providing the Class with notice of the proposed settlement.

**1.10.** The term "*Personal Identification Information*" means the term "personal identification information" as that term is defined by California Civil Code section 1747.08(b).

**1.11.** The term **"*Named Plaintiff"*** and/or **"*Plaintiff"*** means plaintiff Zoya Sosinov in her individual capacity and in her representative capacity of the Class.

**1.12.** The term **"*Publication Notice"*** means the notice containing the terms of the proposed settlement set forth in this Agreement, as approved by Plaintiff's Counsel, Defendant's Counsel, and the Court, to be published in the print media pursuant to paragraph 3.3 of this Agreement. The Publication Notice shall be substantially in the form attached as **Exhibit C.**

**1.13.** The term **"*Preliminary Approval Order*"** means an order preliminarily approving the proposed settlement of this Action in accordance with the terms of this Agreement, conditionally certifying the Class, and providing for notice of the proposed settlement to Class Members by means of the Publication Notice and setting the date of the Fairness Hearing. The Preliminary Approval Order shall be substantially in the form attached as **Exhibit D.**

**1.14.** The term **"*Settlement*"** means the settlement of this Action and related claims in accordance with the terms of this Agreement.

**1.15.** The term **"*Settlement Administrator"* means Rust Consulting and any successors that Defendant designates to effectuate the Settlement and provide certain forms of notice to the Class as provided for in this Agreement.**

**1.16.** The term "*Settlement Website*" means the Internet website the Settlement Administrator will set up to provide notice of the proposed settlement pursuant to Section 3.3 of this Agreement.

**1.17.** The term "*U.S. Mail Notice"* means the notice summarizing the terms of the proposed settlement set forth in this Agreement, as approved by Plaintiff's Counsel, Defendant's Counsel, and the Court, to be provided to Class Members under Section 3.3 of this Agreement. The U.S. Mail Notice shall be substantially in the form attached as **Exhibit E**.

**2. SETTLEMENT TERMS.**

**2.1. Certification of the Class. The Parties, for the purpose of settling this Action and obtaining the releases provided herein, hereby stipulate to the certification of the Settlement of the Class in accordance with the definition contained in Section 1.1, that Plaintiff Zoya Sosinov shall represent the Class for settlement purposes and shall be the Class Representative, and that Plaintiff's Counsel shall be appointed as counsel for the Class.**

**2.2. Compliance With California Civil Code Section 1747.08.** Defendant agrees, that in response to this lawsuit, Defendant will make reasonable efforts to comply with the provisions of California Civil Code Section 1747.08(a) as of the date of entry of the Preliminary Approval Order, to wit, to refrain from requesting or requiring, as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal identification information upon the credit card

transaction form or otherwise, from requesting or requiring, as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information which RadioShack writes, causes to be written, or otherwise records up on the credit card transaction form or otherwise, and from utilizing, in any credit card transactions, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification information of the cardholder, except as permitted under California Civil Code Section 1747.08(c) – (d). Specifically, Defendant agrees to periodically review its privacy policies and procedures to ensure compliance.

    **2.3.** **Class Payment**. All Class Members shall receive Class Notice pursuant to Section 3.3, and those Class Members who do not opt-out of the Settlement shall automatically receive by First Class U.S. Mail or e-mail a $11 settlement payment. The payment will be in the form of a Certificate that can be used to redeem any merchandise at any RadioShack retail store in California during a single transaction. The Certificates will not be subject to any minimum purchase for their use. The Certificates will be fully transferable but no customer can use more than one certificate per visit to a RadioShack retail store. Each Class Member is automatically entitled to receive one (1) Certificate regardless of the number of alleged violations. The Certificates will not be redeemable for cash but the Certificates will be able to be used in conjunction with any other rebates or discounts available at the time of use. The Certificates can be redeemed any time for a period of up to six (6) months following Final Approval.

    **2.4.** **Cy Pres Agreement**. Defendant agrees to donate all settlement Certificates that cannot be reasonably delivered to Class Members following attempts at the last known address of each Class Member to an independent, non-profit 501(c)(3) organization, the Boys & Girls Club of America ("BGCA"). BGCA has agreed to distribute the unclaimed Certificates to California consumers for use in RadioShack retail stores. The recipients of the Certificates will have all of the rights and limitations on their use of the Certificates as outlined in Section 2.3.

    **2.5.** **Right to Removal of Class Member Information**. Defendant agrees that the Class Notice it provides to Class Members shall include instructions as to how the Class Members can have their address, zip code, telephone, and/or email information removed from RadioShack's customer databases.

    **2.6.** **Attorneys' Fees and Costs.** With the assistance of the mediator, Judge Gary Taylor (Ret.), and after the Parties had agreed to all other material terms, Judge Taylor proposed, and the Parties agreed, subject to the approval of the Court, on a fee and cost award of $375,000 in full satisfaction of Plaintiff's claims for attorneys' fees and costs. The Parties agreed that an award of $375,000 represents a fair and commensurate amount in view of the nature of the Action, the risks incurred, the substantial costs and the excellent results achieved for the benefit of California consumers. Plaintiff's Counsel shall apply for, and Defendant shall not oppose, an award of $375,000. In the event no objections to the Settlement are filed, the award shall be paid by Defendant not more than fifteen (15) days following receipt by Defendant of notice of entry of the Final Approval Order and Judgment. In the event any objection is filed, the award shall be paid by Defendant no more than ten (10) days following the Final Settlement Date. One check for the entire amount awarded by the Court shall be made payable to the Law Offices of Zev B. Zysman, which shall be solely responsible for the allocation and distribution of the award to Weiss & Lurie. All attorneys' fees and costs are to be paid separate and apart from any benefits to be paid to the Class.

    **2.7.** **Incentive Award to Class Representative.** With the assistance of the mediator, Judge Gary Taylor (Ret.), and after the Parties had agreed to all other material terms, Judge Taylor proposed, and the Parties agreed, subject to the approval of the Court, that Plaintiff Zoya Sosinov shall be entitled to an

incentive award of $2,000 in recognition of the risks to Plaintiff as the Class Representative in commencing the Action, both financial and otherwise and the amount of time and effort spent by Plaintiff as the Class Representative. Defendant agrees not to oppose Plaintiff Sosinov's application for an incentive award of $2,000. In the event no objections to the Settlement are filed, the incentive award shall be paid by Defendant not more than fifteen (15) days following receipt by Defendant of notice of entry of the Final Approval Order and Judgment. In the event any objection is filed, the incentive award shall be paid by Defendant no more than ten (10) days following the Final Settlement Date. The incentive award to be paid to Plaintiff is separate and apart from any benefits to be paid to the Class.

**2.8. Settlement Implementation Costs.** Defendant shall bear all costs of providing Class Notice in the manner prescribed in Section 3.3 of this Agreement and all costs associated with independent administration of benefits by the Settlement Administrator.

**3. CLASS SETTLEMENT PROCEDURES.**

**3.1. Cooperation to Obtain Court Approval.** The Parties will jointly work together in good faith to secure the Court's approval of this Agreement and Settlement.

**3.2. Preliminary Approval and Provisional Class Certification.** Within thirty (30) calendar days after this Agreement is signed, Plaintiff must apply for preliminary approval of the class Settlement and provisional class certification. The application must request the Court to:

    **(a)**    preliminarily approve this Agreement as being fair, reasonable, and adequate;

    **(b)**    preliminarily approve the form, manner, and content of the Class Notices described in Section 3.3 and attached as **Exhibits A, C, and E**;

    **(c)**    set the date and time of the Fairness Hearing;

    **(d)**    provisionally certify the Class under California Rules of Court, rule 3.769(d) for settlement purposes;

    **(e)**    appoint Named Plaintiff as Class Representatives; and

    **(f)**    appoint Class Counsel.

**3.3. Class Notice.** Subject to Court approval, the Parties agree that within thirty (30) calendar days after entry of the Preliminary Approval Order, Defendant shall provide the Class with notice of the proposed settlement by the following methods:

(a) Publication Notice once by one-quarter page publication in the weekday California edition of *USA Today* summarizing the full legal notice of the terms of the Settlement.

(b) Direct Email Notice to all class members for whom Defendant has an email in its databases (which will contain a link to the Settlement Website displaying the Publication Notice). The Email Notice will include the Certificate which will only be activated and made negotiable upon entry of Final Judgment and after it becomes Final. The Certificate/Email Notice will state that the Settlement Website will be

updated after Final Approval and that Class Members should check the website for settlement status and effective dates of the Certificates.

(c) Direct US Mail Notice to all class members for whom Defendant does not have an Email address, but has a valid US Mail address in its databases after the running of a National Change of Address inquiry. The US Mail Notice will include the Certificate which will only be activated and made negotiable upon entry of Final Judgment and after it becomes Final. The Certificate/US Mail Notice will state that the Settlement Website will be updated after Final Approval and that Class Members should check the website for settlement status and effective dates of the Certificates.

(d) Internet Posting of the Publication Notice on the Settlement Website. The Settlement Website will remain active until the end of the six (6) month period during which Class Members may use their Certificates.

**3.4. Proof of Notice.** No later than seven (7) calendar days before the filing date for Plaintiff's motion in support of the Final Order and Judgment, Defendant must serve a declaration on Plaintiff's Counsel confirming that Defendant and its Settlement Administrator provided the Class with notice of the proposed Settlement in accordance with Section 3.3.

**3.5. Notice And Distribution of Certificates To The Class.** The Parties further agree that within fourteen (14) days after the Final Settlement Date, the Settlement Administrator shall update the Settlement Website with information indicating that the Court has granted final approval of the Settlement, that the Certificates have been activated and can be used at any RadioShack retail store and providing the effective dates of the Certificates.

**3.6. Objections.** Any Class Member who has not requested exclusion from the Class who wants to object to the Settlement must file a written objection with the Court, and serve copies of the same on Plaintiff's Counsel and Defendant's Counsel, no later than ninety (90) calendar days after entry of the Preliminary Approval Order. The delivery date is deemed to be the date the objection is deposited in the U.S. Mail as evidenced by the postmark. The written objection must include: (a) the name of the Action, "*Sosinov v. RadioShack Corporation*;" (b) the full name, address, and telephone number of the person objecting; (c) a statement that the person is a Class Member; (d) the words "Notice of Objection" or "Formal Objection;" (e) a statement setting forth, in clear and concise terms, the legal and factual arguments supporting the objection and any supporting papers the Class Member desires the Court to consider. The objection will not be valid if it only objects to the appropriateness or merits. Any Class Member who files and serves a written objection, as described in this paragraph, has the option to appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the Agreement or Settlement. However, Class Members, or their attorneys, intending to make an appearance at the Fairness Hearing, must also deliver to Plaintiff's Counsel and Defendant's Counsel, and file with the Court, a Notice of Intention to Appear no later than ninety (90) calendar days after entry of the Preliminary Approval Order. Only Class Members who file and serve timely Notices of Intention to Appear may speak at the Fairness Hearing. Any Class Member who fails to make objections in this manner will be deemed to have waived any objections, will not be entitled to speak at the Fairness Hearing, and will be foreclosed from making any objections (whether by subsequent objection, intervention, appeal or any other process) to the Agreement or Settlement.

**3.7.** **Exclusion From the Settlement.** Any Class Member who wants to exclude himself or herself from the Class and not be bound by this Agreement must submit a letter or postcard postmarked no later than ninety (90) calendar days after entry of the Preliminary Approval Order to the Settlement Administrator. The written request for exclusion must include: (a) the name of the Action, "*Sosinov v. RadioShack Corporation*;" (b) the full name, address, and telephone number of the person requesting exclusion; and (c) a statement that the person is a Class Member and wishes to be excluded from the Class.

      **(a)** **Exclusion List**. Defendant must obtain from the Settlement Administrator and serve on Plaintiff's Counsel a list of Class Members who have timely and validly excluded themselves from the Class no later than seven (7) calendar days before the filing date for Plaintiff's motion in support of the Final Approval Order and Judgment.

      **(b)** **Confirmation of Class Members Requesting Exclusion**. Plaintiff's Counsel must file in support of Plaintiff's motion in support of the Final Approval Order and Judgment, a declaration under oath confirming that no Class Member requested exclusion, or a complete list of all Class Members who have submitted valid and timely requests for exclusion from the Class.

**3.8.** **Final Approval Order.** Before the Fairness Hearing, Plaintiff shall move for Court approval of a proposed Final Approval Order and Judgment

**3.9.** **Action Status if Settlement Not Approved.** This Agreement is being entered into for settlement purposes only. If the Court conditions its approval of either the Preliminary Approval Order or the Final Approval Order and Judgment on any modifications of this Agreement that are not acceptable to all Parties, or if the Court does not approve the Settlement or enter the Final Approval Order and Judgment for any reason, or if the Final Settlement Date does not occur for any reason, then this Agreement will be deemed null and void *ab initio*. In that event, (a) the Preliminary Approval Order and all of its provisions will be vacated by its own terms, including, but not limited to, vacating conditional certification of the Class, conditional appointment of Plaintiff as class representatives and conditional appointment of Plaintiff's counsel; (b) the Action will revert to the status that existed before the Agreement's execution date; (c) no term or draft of this Agreement, or any part of the Parties' settlement discussions, negotiations or documentation will have any effect or be admissible into evidence, for any purpose, in the Action or any other proceeding. If the Court does not approve the Settlement or enter the Final Approval Order and Judgment for any reason, or if the Final Settlement Date does not occur for any reason, Defendant shall retain all its rights to object to the maintenance of the Action as a class action, and nothing in this Agreement or other papers or proceedings related to the settlement shall be used as evidence or argument by any Party concerning whether the Action may properly be maintained as a class action.

**4.** **JUDGMENT AND RELEASES.**

**4.1.** **Judgment and Enforcement.** Pursuant to California Rules of Court, rule 3.769(h), the Parties agree that should the Court grant final approval of the proposed settlement and enter judgment, the judgment shall include a provision for the retention of the Court's jurisdiction over the Parties to enforce the terms of the judgment.

**4.2. Plaintiff's and Class Members' Specific Release.** Upon entry of the Final Approval Order and Judgment, Plaintiff and all Class Members who do not validly and timely request to be excluded from the proposed settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives release and forever discharge Defendant and each of its direct or indirect parents, wholly or majority owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with them, or any of them, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which they have or may have arising out of or relating to any and all violations of California Civil Code section 1747.08(a) that were alleged or that could have been asserted in the complaint in the Action.

In addition, Plaintiff and the Class Members, and each of their respective successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, as to the claims released in the preceding paragraph, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Plaintiff and the Class Members fully understand that the facts on which this Agreement is executed may be different from the facts now believed by Plaintiff and the Class Members and their Counsel to be true and expressly accept and assume the risk of this possible difference in facts and agree that this Agreement remains effective despite any difference in facts. Further, Plaintiff and the Class Members agree that this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been accepted.

**4.3. Named Plaintiff's General Release.** Upon entry of the Final Approval Order and Judgment, the Named Plaintiff, and each of her successors, assigns, legatees, heirs, and personal representatives, release and forever discharge Defendant, and each of its direct or indirect parents, wholly or majority owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under or in concert with them, or any of them, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent.

In addition, Named Plaintiff, and each of Named Plaintiff's successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Named Plaintiff fully understands that the facts on which this Agreement is executed may be different from the facts now believed by Named Plaintiff and her Counsel to be true and expressly accepts and assumes the risk of such possible difference in facts and agrees that this Agreement remains effective despite any difference in facts. Further, Named Plaintiff agrees that this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been accepted.

5. ADDITIONAL PROVISIONS.

    **5.1. No Admission of Liability.** This Agreement reflects the compromise and settlement of disputed claims among the Parties. Its constituent provisions, and any and all drafts, communications and discussions relating to it, shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law (including, but not limited to, any allegations of wrongdoing or any matters regarding class certification) by any person, including Defendant, and shall not be offered or received in evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission or concession.

    **5.2. Change of Time Periods.** The time periods and dates described in this Agreement are subject to the Court's approval. If there are changes made to these periods by the Parties, with approval of the Court, no additional notice to the Class of those changes will be provided.

    **5.3. Real Parties in Interest.** In executing this Agreement, Plaintiff warrants and represents that she has not assigned, granted, or transferred in any way to any other person, firm, or entity any interest in the claims asserted in the Action.

    **5.4. Voluntary Agreement.** The Parties executed this Agreement voluntarily and without duress or undue influence.

    **5.5. Binding on Successors.** This Agreement binds and benefits the Parties' respective successors, assigns, legatees, heirs, executors, administrators, and personal representatives.

    **5.6. Parties Represented by Counsel.** The Parties acknowledge that: (a) they have been represented by independent counsel of their own choosing during the negotiation of this Settlement and the preparation of this Agreement, (b) they have read this Agreement and are fully aware of its contents, and (c) their respective counsel fully explained to them the Agreement and its legal effect.

    **5.7. Authorization.** Each Party warrants and represents that there are no liens or claims of lien or assignments, in law or equity, against any of the claims or causes of action released by this Agreement and, further, that each party is fully entitled and duly authorized to give this complete and final release and discharge.

    **5.8. Entire Agreement.** This Agreement and attached exhibits contain the entire agreement between the Parties and constitute the complete, final and exclusive embodiment of their agreement with

respect to the Action and supersede all prior proposals, negotiations, agreements and understandings concerning the subject matter of this Agreement. This Agreement is executed without reliance on any promise, representation or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement.

**5.9. Construction and Interpretation.** Neither Party nor any of the Parties' respective attorneys will be deemed the drafter of this Agreement for purposes of interpreting any provision in this Agreement in any judicial or other proceeding that may arise between them. This Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or affect.

**5.10. Headings.** The various headings used in this Agreement are solely for the Parties' convenience and may not be used to interpret this Agreement. The headings do not define, limit, extend or describe the Parties' intent or the scope of this Agreement.

**5.11. Modifications and Amendments.** No amendment, change or modification to this Agreement will be valid unless in writing signed by the Parties or their counsel.

**5.12. Governing Law.** This Settlement Agreement shall be governed by, interpreted under and enforced in accordance with the internal, substantive laws of the State of California, without giving effect to that State's choice of law principles.

**5.13. Further Assurances.** The Plaintiff and Plaintiff's Counsel must execute and deliver any additional papers, documents and other assurances, and must do any other acts reasonably necessary to perform their obligations under this Agreement and to carry out this Agreement's expressed intent.

**5.14. Agreement Constitutes a Complete Defense.** To the extent permitted by law, this Agreement may be pled as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceedings that may be instituted, prosecuted or attempted in breach of or contrary to this Agreement.

**5.15. Execution Date.** This Agreement is deemed executed on the latest date the Agreement is signed by all of the undersigned.

**5.16. Counterparts.** This Agreement may be executed in counterparts, each of which constitutes an original, but all of which together constitutes one and the same instrument. Several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies and/or PDFs of executed copies of this Agreement may be treated as originals.

**5.17. Recitals.** The Recitals are incorporated by this reference and are part of the Agreement.

**5.18. Severability.** Should any paragraph, sentence, clause or provision of this Agreement be held invalid or unenforceable, the remaining Agreement will remain valid and enforceable.

**5.19. Grammar**. The neuter form of a pronoun shall be considered to include within its meaning the masculine and feminine forms of the pronoun, and vice versa.

**5.20. Inadmissibility.** This Agreement (whether approved or not approved, revoked, or made ineffective for any reason) and any proceedings or discussions related to this Agreement are inadmissible as evidence of any liability or wrongdoing whatsoever in any Court or tribunal in any state, territory, or jurisdiction. Further, neither this Agreement, the Settlement contemplated by it, nor any proceedings taken under it, will be construed or offered or received into evidence as an admission, concession or presumption that class certification is appropriate, except to the extent necessary to consummate this Agreement and the binding effect of the Final Approval Order and Judgment.

**5.21. No Conflict Intended.** Any inconsistency between this Agreement and the attached exhibits will be resolved in favor of this Agreement.

The Parties to this Action, acting by and through their respective counsel of record, have so AGREED.

Dated: _____  **ZOYA SOSINOV**

_____

Zoya Sosinov

Individually and in her Representative Capacity

Dated: _____  **RADIOSHACK CORPORATION**

By: _____

Its _____

# APPENDIX 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTREN DIVISION

| | |
|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RADIOSHACK CORPORATION, A Delaware corporation,<br><br>Defendant. | 11 C 6741<br>(consolidated with 11 C 7819)<br><br>Magistrate Valdez |
| MARIO ALIANO and VICTORIA RADAVICIUTE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RADIOSHACK CORPORATION, a Delaware corporation,<br><br>Defendant. | |

## DECLARATION OF EDUARDO BENJAMIN VASQUEZ

1. My full name is Eduardo Benjamin Vasquez I am over the age of 18, competent to make this declaration, and could testify to the facts contained herein.

2. My home address is 5460 N. Sayre, Chicago, Illinois 60656.

3. Based on my Chase bank statement I made a Visa debit card purchase at the RadioShack in Norridge, Illinois on July 5, 2011. A redacted copy of the relevant part of my statement is attached hereto as Exhibit A.

Declaration of Eduardo Benjamin Vasquez

4. Based on my recollection I would have made a purchase at RadioShack on or around July 5, 2011, in which I used the Visa debit card issued in my name at RadioShack.

5. I would have received a receipt for my purchase at RadioShack.

6. I cannot state with any certainty that the receipt that I received described above at RadioShack contained an expiration date.

7. I would have thrown the receipt in the trash shortly after my purchase.

8. A $10 voucher usable at RadioShack has no value to me.

9. I feel that the a $10 voucher only good at RadioShack is nothing more than a coupon to try to get me to spend more money at RadioShack.

10. I rarely shop at RadioShack, and cannot remember specifically when I would have shopped there except for around Fourth of July holiday in 2011.

11. I have submitted a claim only to preserve my right to object to the settlement, a copy of my claim confirmation is attached hereto as <u>Exhibit B</u>.

I Eduardo Benjamin Vasquez declare under the penalty of perjury under that the foregoing is true and correct.

24 Aug 13
Date

Eduardo Benjamin Vasquez

2

# EXHIBIT A



JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

June 14, 2011 through July 14, 2011

Primary Account: ▇▇▇▇▇▇▇▇▇

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---:|
| Web site: | **Chase.com** |
| Service Center: | **1-800-935-9935** |
| Hearing Impaired: | 1-800-242-7383 |
| Para Espanol: | 1-877-312-4273 |
| International Calls: | 1-713-262-1679 |

00009995 DRE 111 212 19611 - NNNNNNNNNNN 1 000000000 09 0000
EDUARDO VASQUEZ
OR ERJONA VASQUEZ
5460 N SAYRE
CHICAGO IL 60656-2002



### We are making changes to the "Longer Delays May Apply" section of our Funds Availability Policy for personal accounts (excluding Chase Access Checking).

Effective July 17, 2011, at least the first $200 of your deposits will be available on the first business day after the day of your deposit. All other terms of your account remain the same. If you have any questions, please call us at 1-800-935-9935.

## CONSOLIDATED BALANCE SUMMARY

**ASSETS**

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Premier Checking | ▇▇▇▇▇▇▇ | ▇▇▇▇ | ▇▇▇▇ |
| Total | | ▇▇▇▇ | ▇▇▇▇ |

| Investments | ACCOUNT | MARKET VALUE PRIOR PERIOD | MARKET VALUE THIS PERIOD |
|---|---|---|---|
| Chase Investment Services Corp. as of 06/30/11 | ***************▇ | ▇▇▇▇ | ▇▇▇▇ |
| Total | | ▇▇▇▇ | ▇▇▇▇ |

Please review the important disclosures following the Consolidated Balance Summary.

**Investment accounts and insurance products are: Not a Deposit - Not FDIC Insured - Not Insured by any Federal Government Agency - Not Guaranteed by the Bank - May Go Down In Value.**

**TOTAL ASSETS** ▇▇▇▇ ▇▇▇▇

**All Summary Balances** shown are as of July 14, 2011 unless otherwise stated. For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements. Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

Securities (including mutual funds) and certain investment advisory services are provided by J.P. Morgan Securities LLC (member FINRA/NYSE/SIPC) or Chase Investment Services Corp. (member FINRA/SIPC). J.P. Morgan Securities LLC and Chase Investment Services Corp. are affiliates of JPMorgan Chase Bank, N.A.

Page 1 of 8



June 14, 2011 through July 14, 2011

Primary Account: ▮▮▮▮▮▮▮▮▮▮

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/20 | Card Purchase | |
| 06/20 | Card Purchase | |
| 06/20 | Card Purchase | |
| 06/20 | Card Purchase | |
| 06/20 | Card Purchase | |
| ▮/20 | Card Purchase | |
| 06/20 | Recurring Card Purchase | |
| 06/21 | Card Purchase | |
| 06/21 | Card Purchase | |
| 06/21 | Card Purchase | |
| 06/21 | Card Purchase | |
| 06/22 | Card Purchase | |
| 06/22 | Card Purchase | |
| 06/23 | ATM Withdrawal | |
| 06/24 | Card Purchase | |
| 06/24 | Card Purchase | |
| 06/24 | Card Purchase | |
| 06/27 | Card Purchase | |
| 06/27 | Card Purchase | |
| 06/27 | Card Purchase | |
| 06/27 | Card Purchase With Pin | |
| 06/29 | ATM Withdrawal | |
| 06/30 | Card Purchase | |
| 06/30 | Card Purchase | |
| 07/01 | Card Purchase | |
| 07/01 | Card Purchase | |
| 07/01 | ATM Withdrawal | |
| 07/01 | ATM Withdrawal | |
| 07/01 | ATM Withdrawal | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase 07/01 U R* Radioshack Cor0016 Norridge IL Card 8453 | 32.91 |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase With Pin | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |
| 07/05 | Card Purchase | |

# EXHIBIT B

## *Redman, et al. v. RadioShack Corporation*

Thank you. Your claim has been successfully submitted. Please retain this confirmation for your records.

Claim #: 20604
Control #: 4643824627

Dated: 2013-08-25 17:56:16

[ Print ]

PRIVACY NOTICE | ©2013 GCG | ALL RIGHTS RESERVED
CMH-IIS6