# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>RADIOSHACK CORPORATION, a Delaware corporation,<br><br>    Defendant. | Case No. 11 C 6741<br>(consolidated with 11 C 7819)<br><br><u>CLASS ACTION</u><br><br>**OBJECTION TO PROPOSED SETTLEMENT**<br><br>Hon. John F. Grady |
| MARIO ALIANO and VICTORIA RADA VICIUTE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>RADIOSHACK CORPORATION, a Delaware corporation,<br><br>    Defendant. | |
| MICHAEL ROSMAN and JESSICA KASTEN,<br><br>    Objectors. | |

Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
melissaholyoak@gmail.com

*Attorney for Objectors Michael Rosman and Jessica Kasten*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ I

TABLE OF AUTHORITIES ..................................................................................... II

INTRODUCTION ...................................................................................................... 1

I.    Objectors Rosman and Kasten Are Members of the Class and Intend to Appear Through Counsel at the Fairness Hearing. ........................................................................... 2

II.    A Court Owes a Fiduciary Duty to Unnamed Class Members. ................................... 2

III.    The Class Action Fairness Act Requires Heightened Scrutiny of this Coupon Settlement and Rejection of Class Counsel's Attorney Fee Request. .................................................... 3

      A.    Class Counsel's Fee Request Must be Rejected Because It Is Not Based on the Number of Settlement Coupons Redeemed. ....................................................... 4

      B.    The Fee Award Should Be Deferred Until the Actual Number of Redeemed Coupons Is Known. ........................................................................................... 8

      C.    Class Counsel's Failure to Provide Their Fee Motion Prior to the Objection Deadline Is a Violation of Rule 23(h). ...................................................................... 8

IV.    The Settlement's *Cy Pres* Component is Unfair. ..................................................... 10

      A.    The Settlement Improperly Prefers a Non-Class Third-Party Charity Over Class Members. ........................................................................................................ 10

      B.    "Next best" Requires a Nexus Between the Class's Identity, Interests, the Lawsuit's Objectives, and the *Cy Pres* Beneficiary. ...................................................... 102

V.    The Incentive Awards Are Excessive. ..................................................................... 12

VI.    The Court Should Not Infer Settlement Approval from a Low Number of Objectors, Especially Because the Parties Have Artificially Reduced the Number of Objections. .......... 13

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Crawford v. Equifax Payment Servs.*,
    201 F.3d 877 (7th Cir. 2000) ....................................................................................................... 13

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ....................................................................................................... 12

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    989 F. Supp. 375 (D. Mass. 1997) ............................................................................................... 8

*Fleury v. Richemont N. Am., Inc.*,
    No. C-05-4525 EMC,
    2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) .............................................................................. 6

*Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK,
    2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ................................................ 14, 15

*In re Airline Ticket Comm'n Antitrust Litig.*,
    268 F.3d 619 (8th Cir. 2001) ....................................................................................................... 12

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ................................................................................ 1, 3, 7, 8, 11, 12

*In re Bank of Am. Corp. Secs. Litig.*,
    2013 U.S. Dist. LEXIS 88133 (E.D. Mo. June 24, 2013),
    *appeal pending* No.13-2620 (8th Cir.) ....................................................................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................................... 3, 8, 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    292 F. Supp. 2d 184 (D. Me. 2003) ............................................................................................. 8

*In re GMC Engine Interchange Litig.*,
    594 F.2d 1106 (7th Cir. 1979) .................................................................................................. 3, 13

*In re Heartland Payment Systems, Inc.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ....................................................................................... 7

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ............................................................................................. 4, 5, 7

*In re Mercury Interactive Corp. Secs. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ...................................................................................1, 9

*In re Motor Fuel Temperature Sales Practices Litig.*,
  No 07-md-01840-KHV-JPO
  Order (Dkt. No. 3019) (D. Kan. Nov. 10, 2011)...........................................................14

*In re Motor Fuel Temperature Sales Practices Litig.*,
  No 07-md-01840-KHV-JPO
  2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012) ....................................14

*In re Pampers Dry Max Litig.*,
  2013 WL 3957060 (6th Cir. Aug. 2, 2013) ..................................................................13

*Klier v. Elf Atochem N. Am., Inc.*,
  658 F.3d 468 (5th Cir. 2011) ............................................................................... 11, 12

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*,
  834 F.2d 677 (7th Cir. 1987).....................................................................................3, 13

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ............................................................................... 10, 12

*Mayer v. Spanel Int'l Ltd.*,
  51 F.3d 670 (7th Cir. 1995) .........................................................................................9

*McClintic v. Lithia Motors*,
  No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012) ...........14

*Mirfasihi v. Fleet Mortg. Corp.*,
  356 F.3d 781 (7th Cir. 2004) .....................................................................................3, 10

*Mirfasihi v. Fleet Mortg. Corp.*,
  450 F.3d 745 (7th Cir. 2006) .....................................................................................2, 11

*Mifasihi v. Fleet Mortg. Corp.*,
  551 F.3d 682 (7th Cir. 2008) .......................................................................................10

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003), *overruled on other grounds by*
  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) .................................10-11

*Moody v. Sears Roebuck & Co.*,

664 S.E.2d 569 (N.C. App. 2008)............................................................................6

*Murray v. GMAC Mortg. Corp.,*
434 F.3d 948 (7th Cir. 2006) ...............................................................................13

*Pecover v. Electronic Arts, Inc.,*
No. 8-2820 (N.D. Cal.) ..........................................................................................5

*Reynolds v. Beneficial Nat'l Bank,*
288 F.3d 277 (7th Cir. 2002) ..............................................................................2, 9

*Smith v. Levine Leichtman Capital,*
No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) .................14

*Sobel v. Hertz Corp.,*
No. 3:06-cv-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ....................................................................................................6, 7

*Synfuel Technologies v. DHL Express (USA),*
463 F.3d 646 (7th Cir. 2006) .........................................................................2, 3, 4, 7

*True v. Am. Honda Motor Co.,*
749 F. Supp. 2d (C.D. Cal. 2010) .........................................................................6

*Union Fidelity Life Ins. Co. v. McCurdy,*
781 So.2d 186 (Ala. 2000) ....................................................................................6

*Vought v. Bank of Am.,*
901 F. Supp. 2d 1071 (C.D. Ill. 2012)...............................................................3, 8, 13

## Rules and Statutes

15 U.S.C. § 1681.....................................................................................................11

15 U.S.C. § 1681n(a)(1)(A) .....................................................................................11

28 U.S.C. § 1711 note § 2(a)(3)(A) ..........................................................................3

28 U.S.C. § 1712(a) .................................................................................1, 3, 4, 5, 8

28 U.S.C. § 1712(e) .................................................................................................7

Fed. R. Civ. Proc. 23 ..............................................................................................15

Fed. R. Civ. Proc. 23(a)(4) ................................................................................................ 12-13

Fed. R. Civ. Proc. 23(e) ...................................................................................................... 9

Fed. R. Civ. Proc. 23(h) ............................................................................................1, 8, 9, 10, 15


**Other Authorities**

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.07 ...................... 11

Klonoff, Robert H.,
  *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev. 727
  (2008) ...................................................................................................................................14

Leslie, Christopher R.,
  *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L.
  Rev. 71 (2007) ......................................................................................................................13

Miller, Geoffrey P. & Lori S. Singer, Nonpecuniary Class Action Settlements,
  60 L. CON-TEMP. PROBS. 97 (1997) ...................................................................... 5-6

Nagareda, Richard A., *Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, 75
  U. CHI. L. REV. 603, 644 (2008) ...................................................................................... 8

Notes of Advisory Committee to 2003 Amendments to Rule 23 .........................................8, 9

Raghubir, Priya, *Coupons in context: discounting prices or decreasing profits?*,
  JOURNAL OF RETAILING 80 (2004) ................................................................................ 6

Tharin, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*,
  18 GEO. J. LEGAL ETHICS 1443 (2005) ............................................................................ 6

Weitz, Barton & Robin Wensley,
  Handbook of Marketing, at 327 (2002) ............................................................................ 6

## INTRODUCTION

This is a quintessential coupon settlement: class members that file a claim receive a $10 RadioShack coupon. Yet the settling parties make no mention of the Class Action Fairness Act (CAFA) and the limitations CAFA places on coupon settlements. Because this is a coupon settlement, the court must apply heightened judicial scrutiny of fairness and any attorney fee award must be "based on the value to class members of the coupons that are **redeemed**." 28 U.S.C. § 1712(a) (emphasis added).

The settlement indicates that $1 million fee request is 18% of the $5.35 million "Settlement Amount." The estimate falsely presumes both a maximum claims rate and 100% redemption rate. Even if the court were to assume an improbable maximum claims rate ($3.35 million) and a generous 10% redemption rate of the claimed settlement coupons, class counsel would still receive **three times** more than the class ($335,000). Failure to apply CAFA's limitations on attorneys' fees would result in an impermissibly disproportionate class counsel fee award. *See, e.g., In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170 (3d Cir. 2013) ("[C]ourts need to consider the level of direct benefit provided to the class in calculating attorneys' fees.").

Class members cannot fully understand the impropriety of the fee request, however, as counsel's fee application has not yet been filed. This is a plain violation of Rule 23(h) because "[t]he plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). While the settlement allows class counsel to seek an attorney award of $1 million, without the fee application, class members have no information as to the actual amount of the fee request, class counsel's lodestar and the basis for such request. The settlement should be rejected for this reason alone.

Further, the settlement must be rejected because it provides *cy pres* distributions although the class members will not be fully compensated under the settlement and it is administratively feasible to increase the coupon value to claimants. Indeed, the settlement's choice of *cy pres* recipient (Boys &

Girls Club) is improper because it is unrelated to the class members or their claims. For these and other reasons outlined below, the settlement should be rejected.

## I.  Objectors Rosman and Kasten Are Members of the Class and Intend to Appear Through Counsel at the Fairness Hearing.

As documented in the accompanying Declarations of Michael Rosman and Jessica Kasten ("Rosman Decl."; "Kasten Decl."), Objectors Rosman and Kasten are members of the class. Mr. Rosman and Ms. Kasten are married, their address is 5305 Danbury Road, Bethesda, MD and their phone number is (301) 530-7637. *See* Rosman Decl. ¶¶ 2-3; Kasten Decl. ¶¶ 2-3.

On July 10, 2011, Mr. Rosman or Ms. Kasten made a credit card purchase at Radio Shack at 8125 Wisconsin Avenue in Bethesda, MD. *See* Rosman Decl. ¶¶ 2-3; Kasten Decl. ¶¶ 2-3. The receipt contained their credit card's expiration date. *See* Rosman Decl. ¶ 4; Kasten Decl. ¶ 4; Exhibit 1 to Rosman Decl.; Kasten Decl. Ms. Kasten received a notice from the claims administrator regarding this settlement. *See* Kasten Decl. ¶ 5; Exhibit 1 to Rosman Decl.; Kasten Decl.

Objectors Rosman and Kasten intend to appear through their counsel at the final approval hearing, in the above-captioned matter, scheduled for September 17, 2013 at 11:00 a.m. Objectors Rosman and Kasten wish to discuss matters raised in this Objection. Objectors Rosman and Kasten reserve the right to make use of all documents entered on to the docket by any settling party or objector. Rosman and Kasten also reserve the right to cross-examine any witnesses who testify at the hearing in support of final approval. They join any objections not inconsistent with the objections they make below.

## II.  A Court Owes a Fiduciary Duty to Unnamed Class Members.

A district court must act as a "fiduciary of the class," for the rights and interests of absent class members. *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) ("*Mirfasihi II*") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)). The Seventh Circuit has instructed district courts as fiduciaries "to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to settlement. *Synfuel Technologies v. DHL Express (USA)*,

463 F.3d 646, 652 (7th Cir. 2006). There should be no presumption in favor of settlement approval: "the proponents of any class settlement always bear the burden of proof on the issue of fairness." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1126 n.30 (7th Cir. 1979). Because the settlement here is pre-certification, an even higher degree of careful scrutiny is required. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

An arm's length negotiation, likewise, is necessary but not itself sufficient for approval. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). As the Seventh Circuit has described it, "[b]ecause class actions are rife with potential conflicts of interest between class counsel and class members … district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) ("*Mirfasihi I*"). This settlement presents one such instantiation of the conflict because the settlement's failure to comply with the Class Action Fairness Act will inevitably result in a class counsel award that will exceed the actual recovery of the class. *Bluetooth*, 654 F.3d at 945; *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) ("There must be some point at which the recovery to the class is so outweighed by attorneys' fees that … the allocation is not fair.").

## III. The Class Action Fairness Act Requires Heightened Scrutiny of this Coupon Settlement and Rejection of Class Counsel's Attorney Fee Request.

Low-value settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" were a central legislative motivation of the Class Action Fairness Act (CAFA). 28 U.S.C. § 1711 note § 2(a)(3)(A). Coupon settlements are disfavored because they often fail to disgorge illegal profits and instead force future business with the defendant. *Synfuel,* 463 F.3d at 654. Because of the inherent dangers of coupon settlements, CAFA requires a district court to apply "heightened judicial scrutiny," *id.* at 654, and to limit the attorneys' fee award based "on the value to class members of the coupons that are redeemed," 28 U.S.C. §1712(a); *cf. In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013) (citing § 1712).

**A.      Class Counsel's Fee Request Must be Rejected Because It Is Not Based on the Number of Settlement Coupons Redeemed.**

Section 1712(a) of CAFA requires that:

> If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are ***redeemed.***

28 U.S.C. § 1712(a) (emphasis added). This coupon settlement provides that upon successful submission of a claim, class members will receive a $10 voucher redeemable at a RadioShack store or on www.radioshack.com for any product or service. *See* Class Action Settlement Agreement and Release ("Settlement") (Dkt. 94-1) at 7. The Settlement provides that class counsel will request $1 million in fees, treating the settlement coupons as cash without regard for the number of coupons that will actually be redeemed. *See id.* at 7. This is a violation of the plain language of the statute and requires rejection.

The Ninth Circuit's recent decision in *In re HP Inkjet Printer Litigation* reversed a class action settlement for this same statutory violation. 716 F.3d 1173, 1175 (9th Cir. 2013). The *HP Inkjet* settlement provided coupon relief in the form of "e-credits" redeemable for printers and printer supplies. *Id.* at 1176. While class counsel had submitted bills for a $7 million lodestar, they requested $2.3 million in fees, and the district court decreased to $1.5 million. *Id.* at 1177. The district court reasoned that the fee award should not outstrip the "ultimate value" of the settlement to the class, which the court had valued at roughly $1.5 million. *Id.* Despite the district court's reduction, the Ninth Circuit nevertheless held that the attorneys' fee award violated CAFA. *Id.* at 1175-76. CAFA applied to the settlement that involved e-credits, which were a "euphemism for coupons." *Id.* at 1176.[1] The Ninth Circuit found that because the fee award was not based on the number of

---

[1] CAFA applies to this coupon settlement despite the fact that the settling parties have termed the coupons "Vouchers" under the settlement. *See* Settlement at 7. In *Synfuel*, the offered relief included pre-paid envelopes from defendant DHL Express. 463 F.3d at 654. The Seventh Circuit "recognize[d] that the pre-paid envelopes are not identical to coupons, since they represent an entire product, not just a discount on a proposed purchase." *Id.* But the court recognized that the envelopes were the type of "in-kind compensation" that "shares characteristics" with coupons and involved inherent dangers from which CAFA was designed to

---

redeemed coupons, that the award did not comply with 1712(a) of CAFA. *Id.* The Ninth Circuit held that Section 1712(a) is mandatory in calculating attorneys' fee awards in coupon settlements: "If the district court awards 'any' attorney's fees, and those attorney's fees are 'attributable to the award of coupons,' then the fees award must be calculated in the manner prescribed by § 1712(a) (i.e., using the redemption value of the coupons)." *Id.* at 1181. The Court made clear that in a coupon settlement (like the settlement here), any fee award *must* be based on the number of coupons redeemed.

The settlement indicates that the $1 million request is 18.69% of the $5.35 million "Settlement Amount." *See* Settlement at 7. Under the Settlement, however, the maximum amount of coupons that will be issued is the Settlement Amount ($5.35 million) less attorneys' fees ($1 million) and administrative costs ($1 million)[2]. *See id.* at 7. Thus, it is likely that the maximum amount of coupons that will be issued is $3.35 million. RadioShack is *only* issuing coupons to those who successfully submit a claim form. Even assuming the maximum $3.35 million in claims, for a class member to redeem the coupon, the claimant must actually *use* the settlement coupon before the expiration date. *See HP Inkjet*, 716 F.3d at 1179 n.6 ("[W]e strongly disagree with the dissent's assessment that … it was fair for the district court to assume that most of the individuals who had applied for the [coupons] would redeem them.")

Class counsel's request for $1 million assumes both a maximum number of claims and a *100% redemption rate* of those coupons. Settling parties use coupons to inflate the apparent value of the proposed settlement by claiming the coupons' nominal value is the actual value to the class

---

protect. *Id.* Indeed, relief takes a variety of nominal forms in coupon settlements. This is because CAFA is not seeking to regulate semantics. Instead, it is protecting class members from worthless settlements that fall under the umbrella of coupon relief.

[2] While it is unknown what the administrative costs total, a conservative estimate is $1 million. The class here is estimated to include 16,000,000 members. *See* Memo in Support of Motion to Certify Class (Dkt. 80) at 4. In a recent case where the claims administrator was similarly to provide email notification to 14.7 million (and direct notice if email was bounced back), plaintiffs' fee request included administration costs of $927,012. *Pecover v. Electronic Arts, Inc.*, 4:08-cv-2820 (N.D.Cal.), (Dkt. 207-1) at 10 and (Dkt. 389) at 23.

members. *See* Geoffrey P. Miller & Lori S. Singer, Nonpecuniary Class Action Settlements, 60 L. & CONTEMP. PROBS. 97, 108 (1997). Class counsel's inflated valuation of the settlement violates CAFA.[3] Failure to consider the redemption value is egregious because coupon redemption rates are famously low, *see* 28 U.S.C. § 1711, note § 2(a)(3)(A).[4] But the parties are asking this Court to adopt the economic fiction that there is no difference between a settlement where class members have to affirmatively make claims *and* then actually use the coupon, and a settlement where the class benefit is direct-deposited into class members' bank accounts.

Indeed, numerous factors will negatively affect the redemption of the RadioShack coupons here. The coupons expire just six months after the Final Approval Order becomes final. *See* Settlement at 4, 5, 7. When claimants actually receive the coupon, they may have only a few months to use them. Such a short period of time will likely decrease redemption because redemption rates of coupons decrease as a function of expiration date.[5] Indeed, the coupon's low $10 face value, will affect redemption as coupons with lower face values are less likely to be redeemed.[6] Indeed, the face

---

[3] In *Fleury v. Richemont N. Am., Inc.*, the court rejected class counsel's argument that a settlement involving $100 credits to consumer class members was valued at $10 million because the valuation "assumes that 100% of the credits will be used" and does not reflect "how many credits are actually redeemed." 2008 U.S. Dist. LEXIS 112459, *12 (N.D. Cal. Aug. 6, 2008). So too here. The court cannot accept class counsel's "Settlement Amount" to support a fee request when it has presented no evidence of *actual redemption* as required under CAFA.

[4] "[R]edemption rates are tiny" "typically mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%." James Tharin & Brian Blockovich, Coupons and the Class Action Fairness Act, 18 Geo. J. Legal Ethics 1443, 1445, 1448 (2005); *see, e.g., True v. American Honda Motor Co.,* 749 F. Supp. 2d. 1052, 1074-75 (C.D. Cal. 2010) (rebuffing witness's suggested redemption rate and citing two cases with redemption rates under 2%); *Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 572, 574 (N.C. App. 2008) (317 valid claims filed out of 1,500,000 member class, for total of $2,402 in total redemption of coupons as compared to more than $1,000,000 in attorneys' fees and costs); *Union Fidelity Life Ins. Co. v. McCurdy*, 781 So.2d 186, 188 (Ala. 2000) (113 redemptions out of 104,000 member class).

[5] *See* Weitz, Barton & Robin Wensley, *Handbook of Marketing*, at 327 (2002).

[6] *See* Priya Raghubir, Coupons in context: discounting prices or decreasing profits?, JOURNAL OF RETAILING 80 (2004); *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH, 2011 U.S. Dist. LEXIS 68984, at *35 (D. Nev. Jun. 27, 2011) (redemption rates "may be particularly low in cases involving low-value coupons.").

---

value may be even lower as the Settlement decreases the face value *pro rata* if the number of claims exceeds the funds from the Settlement Amount available for coupons. *See* Settlement at 7.

"Because redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned assessment of the settlement's actual value to the class." *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *36; *Synfuel*, 463 F.3d at 653-54 (requiring this assessment). For example, assuming a generous 10% redemption rate of the maximum $3.35 million in coupons, the amount actually redeemed would be $335,000, which is only a third of class counsel's $1 million fee request. Not only is awarding fees based on redeemed coupons required by CAFA, it will ensure that a fee award will be appropriately proportionate to the actual class benefit. *HP Inkjet*, 716 F.3d at 1185-86 & n.18.

Further, any *cy pres* distribution of vouchers cannot be considered in calculating attorneys' fees. The settlement provides that if the total amounts for administration costs, incentive fees and coupons is less than $3,250,000, then RadioShack coupons "having a combined total value that is equivalent to the difference between such total and $3,250,000" will be provided to the Boys & Girls Club of America. *See id.* at 8. Section 1712(e) of CAFA provides that if a portion of the value of unclaimed coupons is distributed to *cy pres* recipients, the distribution and redemption of the *cy pres* coupons "shall not be used to calculate attorneys' fees." 28 U.S.C. 1712(e). Accordingly, the value of any coupons distributed to the Boys & Girls Club (or any other *cy pres* recipient) cannot be considered in awarding attorneys' fees.[7]

If CAFA's requirement that the attorney-fee award be based on redeemed coupons is ignored, class counsel would receive "a disproportionate distribution of the settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).[8] In performing the *Bluetooth*

---

[7] "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178; *cf. In re Heartland Payment Systems, Inc.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (calculating class counsel award based on discounted *cy pres* award because "discounting the payment by 50% best values the benefit conferred on the class").

[8] Indeed, the settlement's clear-sailing provision, *see* Settlement at 7, is another *Bluetooth* red flag of unfairness.

disproportionality analysis, courts should compare the fees and the value of the funds actually available, rather than the amount potentially available.[9] "[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees." *Baby Prods.*, 708 F.3d 163, 179. The settlement should be rejected both because it fails to comply with CAFA and because the $1 million class counsel award will greatly exceed the class benefit.

### B. The Fee Award Should Be Deferred Until the Actual Number of Redeemed Coupons Is Known.

The number of issued coupons that will *actually be used* – which is the value CAFA requires for purposes of the attorney fee award – will not be known until after the coupons are issued and the six-month expiration is over. Even before 28 U.S.C. § 1712(a) mandated this method of valuing coupon settlements, deferring and staggering fee awards was an accepted practice.[10] Indeed, staggering the fee properly incentivizes class counsel to bestow maximum value upon class members. Objectors Rosman and Kasten formally request that the Court abstain from awarding fees until the number of redeemed coupons is known.

### C. Class Counsel's Failure to Provide Their Fee Motion Prior to the Objection Deadline Is a Violation of Rule 23(h).

Class members are impeded from understanding the extent of class counsel's improper fee award because the fee application has not yet been filed. Under the plain language of Fed. R. Civ. P.

---

654 F.3d at 948-49. Class counsel has negotiated protection from scrutiny on the fee award from RadioShack.

[9] *See, e.g., Vought*, 901 F. Supp. 2d at 1091-92 (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be paid out, ultimately denying approval of settlement).

[10] *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) (deferring "award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997) (staging the fee award based on actual value created for the class); Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."). Since implementation of CAFA, it has been all the more clear. *See* Richard A. Nagareda, *Class Actions in the Administrative State: Kalven and Rosenfield Revisited*, 75 U. CHI. L. REV. 603, 644 (2008) ("What rightly matters in this corner of the class settlement world is not the overall value of the coupons made available to class members but, rather, the value of those actually redeemed.").

23(h), notice of a motion for class counsel attorneys' fees must be "directed to class members in a reasonable manner." Thus, class counsel is required to submit their basis for attorneys' fees well before objections are due so that the class has a full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). Under the Preliminary Approval Order, objections must be postmarked by August 27, 2013, but the legal basis and evidence in support of the fee request (i.e., the fee application) has not been filed. Preliminary Approval Order (Dkt. 101) at 3.

As a matter of law, this is insufficient notice in violation of Rule 23(h).[11] "The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *Mercury*, 618 F.3d at 993. Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *Id.* at 993-94. *See also* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("For motion by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e).").[12]

This lack of notice was actually prejudicial. "A proper attorneys' fee award is based on success obtained *and* expense (including opportunity cost of time) incurred." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008) ("*Mirfasihi III*"). The failure to file a timely fee motion deprives class members of a chance to analyze any lodestar data that will be presented for

---

[11] It's worth noting that even before the adoption of 23(h) in 2003, the Seventh Circuit recognized that objectors should not be deprived of the fee application. *See Reynolds*, 288 F.3d at 284, 286 ("To conceal the application and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge.").

[12] Although the Seventh Circuit has not weighed in on the question, a circuit split should not be created "without strong cause." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 754 (7th Cir. 1995) (Easterbrook, J.), *cert denied*, 516 U.S. 1008 (1995).

crosscheck purposes. *See, e.g., Bluetooth*, 654 F.3d at 945 (noting that lodestar cross-check can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate."). Moreover, the clear sailing clause that class counsel negotiated for themselves, *see* Settlement at 7, means that no one—neither defendant nor objectors—will be able to scrutinize or challenge class counsel's fee request. The breach of Rule 23(h) unfairly shrouds class counsel's fee request from scrutiny and is independent reason to reject the settlement.

## IV.    The Settlement's *Cy Pres* Component is Unfair.

The settlement provides for a *cy pres* distribution of coupons to the Boys & Girls Club of America if the total amounts for administration costs, incentive fees and coupons is less than $3,250,000. *See* Settlement at 8. The *cy pres* component should be rejected for two independent reasons.

### A.    The Settlement Improperly Prefers a Non-Class Third-Party Charity Over Class Members.

*Cy pres* distributions are unwarranted when class members are less than fully compensated and it is administratively feasible to make further distributions to them. *Mirfasihi I*, 356 F.3d at 784 (rejecting proposed *cy pres* distribution where potential damages were sufficient to make individual payments feasible); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (disparaging cy *pres* distribution where neither side contended that "it would be onerous or impossible to locate class members or [that] each class member's recovery would be so small as to make an individual distribution economically impracticable"); *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (rejecting *cy pres* as an inadequate substitute for individual damages when "there is no evidence that proof of individual claims would be burdensome or that distribution of damages would be costly."); ALI Principles § 3.07(a)-(c). Feasible compensation to class members legally trumps *cy pres* payments that do not directly benefit the class.

Rather than permitting class proceeds to be funneled to inferior "next-best" *cy pres*

beneficiaries, courts recognize the precept that class members are entitled to receive their own property, property that has been procured in their name and by their claims. *See, e.g., Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) ("The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members.") (citing ALI Principles § 3.07 cmt. b). "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178. This settlement fails in this basic function. A *cy pres* distribution is proper only after further distribution to class members is infeasible.

The settling parties have transgressed these bounds by attempting to use *cy pres* prior to the full and administratively feasible compensation. This class action is based on violations of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681. *See* Complaint (Dkt. 1) at 1. Statutory damages for such violations are "not less than $100 and not more than $1,000." *See* 15 U.S.C. § 1681n(a)(1)(A). Here, the settlement provides claimants with $10 Radioshack coupons. *See* Settlement at 7. If class members are legally entitled to compensation of their underlying FACTA claims ($100 minimum), and that compensation can be feasibly distributed to individual class members (e.g., increase in the settlement coupon amount to claimants) without unreasonable administrative burden, class counsel violates its fiduciary duties to put the financial interests of third parties ahead of their clients. And the court's "fiduciary" must prevent it from ratifying such a provision. *See Mirfasihi II*, 450 F.3d at 748. Because the settlement contemplates decreasing the coupon amounts *pro rata*, there is no reason such coupons could not be increased rather than being distributed to *cy pres* recipients. Any *cy pres* distribution in a settlement such as this one is unjustifiable unless and until reasonable measures are taken to ensure that the class members are completely compensated.

### B.    "Next best" Requires a Nexus Between the Class's Identity, Interests, the Lawsuit's Objectives, and the *Cy Pres* Beneficiary.

The legal construct of *cy pres* (from the French "*cy pres comme possible*"—"as near as possible")

has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 625 (8th Cir. 2001). In the class action context, courts require that "unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Id.* at 682; *Dennis v. Kellogg Co.*, 697 F.3d 858, 866 (9th Cir. 2012) (reversing where *cy pres* beneficiary had "little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved"); *Baby Prods.*, 708 F.3d at 169 (under certain circumstances "courts have permitted the parties to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class."); *Klier*, 658 F.3d at 476 ("[T]he court's discretion remains tethered to the interest of the class, the entity that generated the funds."); *Masters*, 473 F.3d at 436 ("[T]he purpose of [c]y [p]res distribution is to put the unclaimed fund to its *next best* compensation use.") (emphasis in original).

Nothing in the record suggests that the Boys & Girls Club is related to the purpose of the lawsuit (litigation of FACTA claims) or the class members in this case. *See, e.g., In re Bank of Am. Corp. Secs. Litig.,* 2013 U.S. Dist. LEXIS 88133 (E.D. Mo. June 24, 2013), *appeal pending* No.13-2620 (8th Cir.) (rejecting Boys & Girls Clubs as *cy pres* recipient because it was unrelated to the "underlying purpose" of securities fraud action). This settlement's *cy pres* component does not provide the "next-best" solution to which the class is entitled.

## V.    The Incentive Awards Are Excessive.

The incentive awards of $5,000 for each of the three class representatives, *see* Settlement at 7, are excessive and shed light on whether 23(a)(4)'s requirement of adequacy of representation is satisfied. In *Murray v. GMAC Mortg. Corp.*, the court found the disproportionate incentive award of $3,000 proof that "the class device had been used to obtain leverage for one person's benefit." 434 F.3d 948, 952 (7th Cir. 2006). The Seventh Circuit contrasted the class relief ($1 per class member) with the $3,000 class representative award. *Id*; *see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877,

882 (7th Cir. 2000); *In re Pampers Dry Max Litig.*, 2013 WL 3957060, at *7 (6th Cir. Aug. 2, 2013). This case is no different. The requested $5,000 incentive award is 500 times more than the $10 RadioShack coupon. Plaintiffs have offered no justification for the disproportionately excessive award. The requested incentive awards should be rejected and indicate an unfair settlement.

**VI.     The Court Should Not Infer Settlement Approval from a Low Number of Objectors, Especially Because the Parties Have Artificially Reduced the Number of Objections.**

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought*, 901 F. Supp. 2d. at 1093 (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Silence is simply *not* consent. *GMC Engine Interchange*, 594 F.2d at 1137 ("Acquiescence to a bad deal is something quite different than affirmative support."). "[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli.*" *Mars Steel Corp.*, 834 F.2d at 680-81. The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *Vought*, 901 F. Supp. 2d at 1093.

Yet more conducive to apathetic inaction the parties have elected a process of objecting and opting out which is "unnecessarily onerous". *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (denying settlement in part based on parties' failure to allow class members to opt out via email alone). The requirement that objectors print and post multiple copies of their objection/exclusion is both expensive and outdated

in 2012.[13] "One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (critiquing equivalent processes and ultimately rejecting settlement).

Preferring a more costly, inefficient alternative over seamless electronic processes can only give rise to the inference that the parties wished to undermine the autonomous decisions of class members.[14] It has been known for at least a half-decade that "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation." Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet,* 69 U. Pitt. L. Rev. 727, 766 n. 251 (2008). Indeed, personal notice was distributed via internet, yet absent class members' responses cannot be made in the same medium. Class counsel is not licensed to consign objectors or opt-outs to second class status.

Together, these hurdles create doubt as to whether the settlement appropriately respects class members' Fed. R. Civ. P. 23 rights to object to the settlement and opt-out from the class certification. Not only do they constitute a reason to reject the settlement in this case, *see e.g., Galloway*, 2012 U.S. Dist. LEXIS 147148, at *16, they provide an added reason to discredit any argument that the lack of objectors signals the class members' approval of the settlement.

---

[13] *See Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8-*9 (N.D. Cal. Nov. 15, 2012) ("[T]he parties have made the procedures for filing objections unduly burdensome. There is no reason to require … the objectors to mail their objections to three different locations.").

[14] Other settlements permit the relatively efficient (indeed, close to costless) method of transmitting objections by a single electronic submission; *see e.g., In re Motor Fuel Temperature Sales Practices Litig.,* No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019), at 2 (D. Kan. Nov. 10, 2011) ("If Costco plans to proceed with email notification, it must allow class members to opt out of the class and object to the settlement electronically"). Where electronic modes of opting-out and objecting are available, the "vast majority" of participating class members will use those avenues. *Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012); *id.* at *74 n.13 (nearly three times more people opted-out electronically than by mail).

## CONCLUSION

The Court should deny approval. Even if the Court were to approve the settlement, it should defer awarding fees until the actual number of redeemed coupons is known, and then scale the Rule 23(h) award to reflect proportionality with the benefit actually realized by the class.

Dated: August 27, 2013.
/s/ Melissa A. Holyoak
Melissa A. Holyoak, (DC Bar No. 487759)
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorney for Objectors Michael Rosman and Jessica Kasten*

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Objection and associated Declarations of Michael Rosman, Jessica Kasten and Melissa Holyoak via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via first class mail a copy of this Objection and associated Declarations of Michael Rosman, Jessica Kasten and Melissa Holyoak upon the following:

| | |
|---|---|
| Paul F. Markoff<br>Markoff Leinberger LLC<br>134 N LaSalle St, Ste 1050<br>Chicago, IL 60602 | James R. Daly<br>Jones Day<br>77 W Wacker Dr<br>Chicago, IL 60601 |
| Hon. John F. Grady<br>United States District Court for the Northern District of Illinois, Eastern Division<br>Everett McKinley Dirksen United States Courthouse<br>Chambers 2286<br>219 South Dearborn Street<br>Chicago, IL 60604 | |

Dated: August 27, 2013.

/s/ Melissa A. Holyoak