EDWARD F. SIEGEL
7911 COUNTRYSIDE DRIVE # 139
NIWOT COLORADO 80544
(216) 870-0295 (voice)
(888) 576-6298 (fax)

FILED
AUG 30 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

August 27, 2013

Clerk, US District Court
219 S. Dearborn St. 20th floor
Chicago Ill 60604

RE: Redman etal v. RadioShack No. 11 C 6741  Mag. Judge Valdez

Gentlemen:

I am a class member and I object to the proposed settlement for several reasons.

First of all, the fact that a class member can get only one coupon, no matter how many receipts he has is patently unfair. If a person has multiple receipts, he should get multiple coupons. After all, the essence of the Settlement is that if a person was damaged by Radio Shack's violation of FACTA, the value of that damage was $10 PER OCCURRENCE. How can the Court countenance the idea that the first violation has a value of $10 but any other violations are not worth anything? This makes no sense. Putting a reasonable cap (5 or 10) on the number of receipts that can be submitted for

coupons makes sense, but to say that only one violation is compensable, no matter how many occurred makes no logical sense.

The coupons themselves are also of questionable value. They are only good for 6 months, have no cash value and are redeemable only at Radio Shack. So if I don't want to buy anything at Radio Shack in the immediate future, these have absolutely no value. And clearly, the coupons aren't worth much, if anything, on the open market. What possible price will someone pay for a $10 coupon that expires almost immediately? I doubt whether there will be any market for these at all.

Another serious problem is that if more than $5.35 million in claims are filed, the class members get penalized by having their claims reduced pro-rata. This is not right. If anyone should be penalized, the lawyers who are requesting almost 20% of the fund should take the "hit." From the $5.35 M, the $15,000 for plaintiffs' compensation, the $1,000,000 attorneys' fees and the costs of notification and settlement are deducted, and then the class is penalized pro-rata. The lawyers who are getting $1 Million should get penalized, not the poor class members who are only get something that is worth $10, but only if used immediately.

As a general matter, coupon settlements are disfavoured by courts and have have been criticized widely. See "Consumer Class Actions and

Coupon Settlements: Are Consumers Being Shortchanged?," <u>Advancing the Consumer Interest</u>, Vol. 12, No. 2, Fall/Winter 2000, wherein Westchester County (New York) Court Judge Thomas A. Dickerson describes the shortcomings of such settlements. For instance, he notes that in <u>Kahn v. Bell Atlantic NYNEX Mobile</u>, New York Law Journal, June 4, 1998, p. 29, Col. 4 (N.Y. Sup.) the court rejected a proposed settlement offering class members "free airtime" because it could not "make an independent assessment of the value of the airtime."

One of the most instructive cases in this area is a pre- CAFA case, <u>In re: Excess Value Insurance Coverage Litig.</u>, No. M-21-84, MDL-1339 (S.D.N.Y. Nov.2, 2005). The Court therein pointed out that under CAFA, 28 U.S.C. § 1712 (a), the attorneys' fee award is to be based upon the value to members of the Class of coupons actually redeemed. It therefore waited until the end of the redemption period to award fees. Counsel had estimated the value of the coupon voucher program at $205 to $265 Million and requested a fee of approximately 10% of this amount. The actual value of vouchers redeemed was only $4.8 million, or only 2.4% of the original estimate. Based upon the actual redemption, the fees requested by class counsel was **280% greater** than the actually value of the redeemed coupons. The court awarded

3

counsel $2.4 Million in fees. The Court should wait until it receives a report on actual coupon redemption before awarding fees. If no changes are made in the voucher redemption period, this will be only 180 days from the date that the settlement becomes final which is certainly a very short, and reasonable, period of time.

There are many other examples of the courts rejecting coupon settlements and/or the attorneys' fees requested in those cases. For example, in In re: General Motors Corp. Pickup Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1996), the court rejected a settlement (seeking $4 million in attorneys fees) which offered $1,000 coupons for the purchase of a new truck. In Maffei v. Alert Cable TV of North Carolina, 342 S.E.2d 867, 872 (N.C. Sup. 1986), class certification was denied where the 29-cent relief was worth less than the cost of postage and stationery for submitting a claim.

Part of the difficulty in identifying the value (and proper attorneys' fees) of a coupon settlement is the uncertain and low redemption rate -- sometimes called the "take rate." Judge Dickerson's article notes that redemption rates for food and beverage coupons consistently average between 2% and 6%. In Bloyed v. General Motors

4

Corp., 881 S.W.2d 422, 431 (Tex.App. -Texarkana 1994), the court rejected a settlement because the anticipated take rate -- between 10% and 46% -- was too low. Judge Dickerson cites several cases which have solved this problem by requiring that coupons continue to be issued until an agreed value has been redeemed: <u>Feldman v. Quick Quality Restaurants, Inc.</u>, New York Law Journal, July 22, 1983, p. 12, col. 4 N.Y.Sup.); <u>In re The Coca-Cola Co. Apple Juice Consumer Litigation</u>, No. E-47054 (Ga.Sup.Ct. Fulton Co. May 4, 1998); <u>Tepper v. Tropicana Products, Inc.</u>, No. 96-000846 (Fla. Cir. Ct. Manatee Co. Nov. 13, 1998), <u>Muller v. Cadbury Schweppes PLC</u>, No. 96-0148788 (Conn. Super. Ct. Waterbury Jud. Distr. June 29, 1999). Judge Dickerson also found cases wherein cash, coupons or goods were given to charity until the agreed settlement amount was met: <u>Ohio Public Interest Campaign v. Fisher Foods</u>, 546 F. Supp. 1 (N.D. Ohio 1982); <u>Gordon v. Boden</u>, No. 89 CH 6531 (Ill. Cir. Ct. Cook Co. July 14, 1995). While this does not directly apply to the instant case, it provides some excellent examples of how creative Courts can be in structuring settlements that truly benefit the Class.

It is axiomatic that the Court stands in a fiduciary relationship with the class when the matter of fees is broached. It is clearly unfair to

the class to approve attorneys' fees of $1 Million Dollars when there is NO guaranteed remuneration. The amount of Class Counsel's fees must bear a reasonable relationship to the actual benefit to the class. (See, In Re: Excess Value, infra.).

One of the leading cases in the area of Class Action attorneys' fees is Goldberger v. Integrated Resources, Inc., 209 F. 3d. 43, (2nd Cir. 2000) in which the court identified six (6) factors to be considered when determining fees. Three of the most important are (1) the requested fee in relation to the settlement, (2) public policy considerations, and (3) the complexity of the case. All three of these militate in favor of denying the fee request until after the receipt of a report on the "take" rate.

The Court should carefully scrutinize the fees being requested by Class Counsel to assure the Court that there is a reasonable relationship between the amount requested and the work performed. Once a settlement in a Class Action has been agreed upon, the Defendants no longer have an incentive to negotiate vigorously concerning the attorneys' fees

In Wise v. Popoff, et al. 835 F. Supp. 977, (E.D. Mich. 1993) the court describes the roles as follows:

> An attorney's role changes once he files a fee petition. No longer a fiduciary for his client he becomes nothing more complex than

**another claimant against the fund created for the client's benefit.** The court must, in turn, become "the fiduciary for the fund's beneficiaries **and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications.**" _Skelton v. General Motors Corp., 860 F 2d 250_, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989). A court should not "rubber stamp" fee applications _In re Cincinnati Gas & Electric Co. Securities Litigation,_ 643 F. Supp. 148, 152 (S.D. Ohio 1986). The fact that the settling defendant may agree with the fee application (or, as in this case, be persuaded to remain silent about it) is **irrelevant** to the Court's analysis because the defendant having already paid the settlement amount, has little interest in the portion of the fund that the class attorney is allowed to retain". (emphasis added.)

This Honorable Court, therefore, must act as a fiduciary for the Class and conduct an in depth investigation of the basis for the requested fee. The Court should at least determine what the Lodestar amount is (hours expended time hourly billing rate) and whether that bears a rational relationship to the fee requested. The Court should investigate not only the amount of time expended, but by whom it was expended. Was it by a partner, an associate, a paralegal or a contract attorney, and were the rates charged reasonable? Did one person take or defend a deposition, or were many associates in attendance? All of these matters should be investigated to make sure that the Class is not being overcharged.

I hereby respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections.

Respectfully submitted,

Edward R. Siegel

Cc: Cc: Paul F. Markoff
　　Markoff Leinberger LLC
　　134 N. LaSalle St. Ste 1050
　　Chicago IL 60602

　　　James R. Daly
　　　Jones Day
　　　77 W. Wacker Dr.
　　　Chicago Ill 60601