**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 11 C 6741 (consolidated with 11 C 7819) |
| v. | ) ) | |
| RADIOSHACK CORPORATION, a Delaware corporation, | ) ) ) | Magistrate Valdez (consent filed) |
| Defendant. | ) ) | |
| ————————————————— | ) ) | |
| MARIO ALIANO and VICTORIA RADAVICIUTE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| RADIOSHACK CORPORATION, a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF REQUEST FOR
ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**

# Table of Contents

Introduction ..................................................................................................................1

Legal Discussion .........................................................................................................1

    I.      THIS COURT SHOULD AWARD CLASS COUNSEL THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND COSTS. ..................1

    II.     IF FURTHER ANALYSIS IS NECESSARY, THIS COURT SHOULD AWARD CLASS COUNSEL ATTORNEYS' FEES ON A LODESTAR BASIS. ..............................................................................................................3

          A.     Numerous Judges in this District Have Awarded Fees Based on the Agreement of the Parties and the Lodestar Method ....................................4

          B.     CAFA Specifically Allows Lodestar Awards. ...........................................4

               1.   This Is Not a Coupon Settlement. ......................................................4

               2.   CAFA Allows the Use of the Lodestar Methodology Even In Coupon Settlements. ........................................................................7

    III.    THE NEGOTIATED FEE AWARD IS REASONABLE UNDER THE LODESTAR METHODOLOGY ...............................................................10

          A.     Class Counsel's Time and Hourly Rates Are Reasonable. .......................10

          B.     A Fee Award Should Account for Additional Time Required by Class Counsel. ........................................................................................12

               1.   Risk Multiplier. ...............................................................................12

               2.   Anticipated Work. ............................................................................13

               3.   Deferral. ..........................................................................................14

    IV.    ALTERNATIVELY, THE NEGOTIATED FEE AMOUNT IS JUSTIFIED BY THE EQUITABLE RELIEF OBTAINED BY PLAINTIFFS. ....................................................................................14

    V.     ALTERNATIVELY, THE NEGOTIATED FEE AMOUNT IS JUSTIFIED BY THE SETTLEMENT AMOUNT. ...............................15

    VI.    PLAINTIFFS' COSTS ARE REASONABLE AND SHOULD BE AWARDED. ..................................................................................16

    VII.   PLAINTIFFS SHOULD BE AWARDED THE NEGOTIATED INCENTIVE AWARDS. ................................................................16

Conclusion .................................................................................................................18

i

## TABLE OF AUTHORITIES

**Cases**

*Armes v. Knights Inn Racine*
no. 08-CV-243 (E.D. Wisc.) ............................................................................ 2

*Barlo v. Witham Sav-A-Stop*
no. 2:08-CV-97 (N.D. Ind.) ............................................................................ 2

*Benson v. American Mattress, Inc.*
no. 08 C 7194 (N.D. Ill.) ............................................................................ 2

*Blessing v. Sirius XM Radio Inc.*
507 Fed.Appx. 1 (2nd Cir. 2012) ............................................................................ 9

*Chakejian v. Equifax Information Services, LLC*
275 F.R.D. 201 (E.D. Pa. 2011) ............................................................................ 9, 15

*City of Greenville v. Syngenta Crop Protection, Inc.*
904 F.Supp.2d 902 (S.D. Ill. 2012) ............................................................................ 12

*Cook v. Niedert*
142 F.3d 1004 (7th Cir. 1998) ............................................................................ 12, 17

*DeHoyos v. Allstate Corp.*
240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................ 3

*Diehl v. Legoland Discovery Centre US, LLC*
no. 12 C 6932 (N.D. Ill.) ............................................................................ 2

*Dudzienski v. GMRI, Inc.*
no. 07 C 3991 (N.D. Ill.) ............................................................................ 2

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*
137 F.R.D. 240 (S.D. Ohio 1991) ............................................................................ 17

*Fleury v. Richemont N. Am., Inc.*
no. C-05-4525, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) ............................................................................ 5, 6

*Florin v. Nationsbank of Ga., N.A.*
34 F.3d 560 (7th Cir. 1994) ............................................................................ 12

*Harman v. Lyphomed, Inc.*
945 F.2d 969 (7th Cir. 1991) ............................................................................ 12

*Huguley v. General Motors Corp.*
128 F.R.D. 81 (E.D. Mich. 1989) ............................................................................ 17

*In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litig.*
2011 WL 1790603 (W.D. Mo. May 10, 2011) ............................................................................ 5, 8, 9

*In re HP Inkjet Printer Litigation*
716 F.3d 1173 (9th Cir. 2013) ............................................................................ 6

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*
  280 F.R.D. 364 (N.D. Ill. 2011) ................................................................. 13, 16

*In re Navistar Diesel Engine Products Liability Litig.*
  no. 11 C 2496, 2013 WL 4556362 (N.D. Ill. Aug. 11, 2013) ........................... 12, 13

*In re Southwest Airlines Voucher Litig.*
  no. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ........................... 9, 18

*In re Synthroid Mktg. Litig.*
  264 F.3d 712 (7th Cir. 2001) ..................................................................... 16

*In re Trans Union Corp. Privacy Litig.*
  no. 00 C 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) .............................. 9

*Ingram v. Coca-Cola Corp.*
  200 F.R.D 685 (N.D. Ga. 2001) .................................................................. 17

*Masters v. Wilhelmina Model Agency, Inc.*
  473 F.3d 423 (2nd Cir. 2007) ..................................................................... 15

*McKinnie v. JP Morgan Chase Bank, N.A.*
  678 F.Supp.2d 806 (E.D. Wisc. 2009) ......................................................... 3, 15

*Perdue v. Kenny A.*
  559 U.S. 542 (2010) .................................................................................. 3

*Pezl v. Amore Mio, Inc.*
  259 F.R.D. 344 (N.D. Ill. 2009) ................................................................. 13

*Pickett v. Sheridan Health Care Center*
  664 F.3d 632 (7th Cir. 2011) ..................................................................... 3, 10

*Redman v. Michael Robert Enterprises, Inc.*
  no. 10 C 2465 (N.D. Ill.) ........................................................................... 2, 8

*Redman v. Take Care Health Systems, LLC*
  no. 11 C 9044 (N.D. Ill.) ............................................................................ 8

*Ryan v. City of Chicago*
  274 Ill.App.3d 913 (1st Dist. 1995) ............................................................ 16

*Schulte v. Fifth Third Bank*
  805 F.Supp.2d 560 (N.D. Ill. 2011) ............................................................ 2, 15

*Shames v. Hertz Corp.*
  no. 07-CV-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ......................... 5, 9

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*
  463 F.3d 646 (7th Cir. 2006) ..................................................................... 4, 7

*Waters v. Int'l Precious Metals Corp.*
  190 F.3d 1291 (11th Cir. 1999) .................................................................. 15

*Will v. General Dynamics Corp.*
  no. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ........................ 18

*Williams v. MGM-Pathe Communications Co.*
  129 F.3d 1026 (9th Cir. 1997) ................................................................................ 15

*Yeagley v. Wells Fargo & Co.*
  365 Fed. Appx. 886 (9th Cir. 2010) .................................................................. 3, 15

**Statutes**

28 U.S.C. § 1712 ............................................................................................. passim

**Other Authorities**

S. Rep. No. 109-14 (2005), 2005 U.S.C.C.A.N. 3 ......................................................... 8

Plaintiffs Scott D.H. Redman ("Redman"), Mario Aliano ("Aliano") and Victoria Radaviciute ("Radaviciute") (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, submit this brief in support of their request for attorneys' fees, costs and incentive awards.

## Introduction

This Court preliminary approved a class-wide Settlement Agreement allowing Class Members to obtain $10 vouchers usable at Defendant's stores or on its website. The Settlement Agreement provides a Settlement Amount of up to $5,350,000, with minimum voucher and cash distribution (for notice, administration, attorneys' fees, costs and incentive awards) of $3,250,000. The Settlement Agreement provided that Class Counsel would be paid $1,000,000 for attorneys' fees and costs.

The Settlement Agreement does <u>not</u> provide that any portion of a fee award is tied to or attributable to the number or value of Settlement Vouchers issued or redeemed. Accordingly, this Court should determine an appropriate fee award based on a lodestar calculation.

This Court should also award costs related to the prosecution of this action and incentive awards to the three named Plaintiffs. As set forth more fully below, Plaintiffs' efforts in bringing and participating in this case caused any class recovery.

Therefore, Plaintiffs request that this Court award Class Counsel attorneys' fees and costs of $1,000,000, and each named Plaintiff $5,000 as an incentive award.

## Legal Discussion

## I. THIS COURT SHOULD AWARD CLASS COUNSEL THE NEGOTIATED AMOUNT OF ATTORNEYS' FEES AND COSTS.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h);

*see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011).  In this case, Defendant agreed to pay attorneys' fees and costs of $1,000,000 to Class Counsel, which was negotiated after negotiating class benefits and which does not lessen class recovery.  *See* Declaration of Paul F. Markoff ("Markoff Dec."), at ¶¶ 14-16, and Declaration of Thomas A. Zimmerman, Jr. ("Zimmerman Dec."), at ¶ 10.

The undersigned have handled, and settled, numerous FACTA cases in this, and other, jurisdictions.  Many of those class settlements provided class relief in the form vouchers.  *See e.g.*, *Diehl v. Legoland Discovery Centre US, LLC*, no. 12 C 6932 (N.D. Ill.) (Valdez, J.); *Redman v. Michael Robert Enterprises, Inc.*, no. 10 C 2465 (N.D. Ill.) (Keys, J.); *Dudzienski v. GMRI, Inc.,* no. 07 C 3991 (N.D. Ill.) (Cole, J.); *Benson v. American Mattress, Inc.*, no. 08 C 7194 (N.D. Ill.) (Lefkow, J.); *Barlo v. Witham Sav-A-Stop*, no. 2:08-CV-97 (N.D. Ind.) (Cherry, J.); *Armes v. Knights Inn Racine*, no. 08-CV-243 (E.D. Wisc.) (Stadtmueller, J.).  In each of those cases, the parties negotiated an attorneys' fee amount as part of the settlement, and the Courts, including this Court, approved those amounts.

This Court should enforce as written the parties' Settlement Agreement, which is unambiguous.  Additionally, the Settlement Agreement calls for a set fee amount, not merely a cap on fees.  If this Court were to award less than that amount to Class Counsel, it would amount to a windfall to Defendants.[1]  "Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit [the defendant]."

---

[1] Imagine if the converse scenario were presented, *i.e.*, if Class Counsel was petitioning for a higher fee award than was agreed to in a settlement agreement.  Not a single court in this country would entertain the idea, citing the terms of the agreement.  Just as any defendant would be rightfully outraged at the prospect of paying more than the agreed upon amount, it would be inappropriate to provide Defendant a windfall by an *ex post* modification of the agreement.

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007). Here, too, regardless of any fee award, the value of the Settlement Vouchers will be unchanged. [2]

Therefore, this Court should award Class Counsel $1,000,000 in attorneys' fees and costs.

## II.   IF FURTHER ANALYSIS IS NECESSARY, THIS COURT SHOULD AWARD CLASS COUNSEL ATTORNEYS' FEES ON A LODESTAR BASIS.

A court may award attorneys' fees by multiplying the number of hours worked by a reasonable hourly rate, which is called the "lodestar method." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F.Supp.2d 806, 814 (E.D. Wisc. 2009). "Despite recognizing the lodestar method as 'not perfect,' the Supreme Court recently extolled its virtues and reaffirmed its dominant role in federal fee-shifting cases." *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 641 (7th Cir. 2011) (*citing Perdue v. Kenny A.*, 559 U.S. 542, 551-52 (2010)). "Under a fee-shifting statute such as the FCRA, the lodestar method is generally the correct method for calculating attorneys' fees. Although parties can request in their settlement agreement that the district court award attorneys' fees using common-fund principles, the Settlement Agreement here includes no such agreement. Nor does the Settlement Agreement otherwise create a common fund; the settlement did not award any monetary relief to the class." *Yeagley v. Wells Fargo & Co.*, 365 Fed. Appx. 886, 887 (9th Cir. 2010) (internal citation omitted).

Similarly, this is an FCRA case (as FACTA is part of the FCRA), the Settlement Agreement here did not create a common fund because no monetary relief is being paid to Class Members, and the Settlement Agreement did not otherwise provide that attorneys' fees and costs would be determined on a percentage of the fund basis. In this case, as an alternative to

---

[2] Additionally, an award of fees and costs as requested will not diminish the class recovery. *See* Markoff Dec. at ¶ 17.

3

requesting the negotiated fee/cost award because it arose from an agreement of the parties, Class

Counsel proposes a lodestar-based fee award.

> **A.  Numerous Judges in this District Have Awarded Fees Based on the Agreement of the Parties and the Lodestar Method.**

As set forth in Section I, *supra*, numerous courts have awarded class counsel negotiated

fee amounts in class actions.  In addition, counsel submitted evidence of hours worked on the

case and rates charged, and the courts approved the awards.  The lodestar method has been the

predominant method of determining attorneys' fee awards in these FACTA cases.

> **B.  CAFA Specifically Allows Lodestar Awards.**

Notwithstanding the contentions of some objectors, this Court is not compelled to award

fees based on the redemption rate of the Settlement Vouchers.  First, this is not a coupon

settlement, thus undermining the entire crux of the objections.  Second, even if it were a coupon

settlement, determining the reasonableness of the requested attorneys' fees and costs using the

lodestar methodology is appropriate.

> **1.  This Is Not a Coupon Settlement.**

This settlement provides in-kind benefits to class members, but not all in-kind benefits

are "coupons."  *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654

(7th Cir. 2006) ("Pre-paid envelopes, like coupons, are a form of in-kind compensation….  We

recognize that the pre-paid envelopes are not identical to coupons, since they represent an entire

product, not just a discount on a proposed purchase.").  In *Synfuel*, the proposed settlement,

ultimately rejected for want of adequate evaluation of fairness, would have provided pre-paid

DHL shipping envelopes to class members.  *Id.* at 649.  That is, class members were not merely

getting a discount off of a required purchase of a higher amount; they did not have to buy

4

anything to use the envelopes. *See also Fleury v. Richemont N. Am., Inc.*, no. C-05-4525, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) ("While CAFA does not expressly define what a coupon is, the legislative history suggests that a coupon is a *discount* on another product or service offered by the defendant in the lawsuit.") (emphasis in original).

Courts in this and other jurisdictions in the Seventh Circuit have approved no-purchase-necessary voucher settlements in other FACTA cases without ruling that they were coupons. *See* Section I, *supra*.

Courts have expressly found no-purchase necessary voucher not to be coupons. *See e.g.*, *In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litig.*, 2011 WL 1790603, at **3-4, 10 (W.D. Mo. May 10, 2011) (approving lodestar-based fee award, finding that the vouchers provided to class members were not the same as coupons because class members could redeem them for a wide variety of products without spending additional money, and holding that the fee award was proper even if the vouchers were coupons, because §1712(b)(1) expressly allows a lodestar determination); *see also Shames v. Hertz Corp.*, no. 07-CV-2174, 2012 WL 5392159, at *16 (S.D. Cal. Nov. 5, 2012) (approving lodestar-based fee award in no-purchase-necessary voucher settlement, referencing persuasive authority that vouchers for free products is *not* a CAFA coupon settlement, as opposed to *discounts* on products where class members are required to purchase the products and pay the difference between the full and coupon-discounted price).

Here, Class Members will receive an entire product. The Settlement Vouchers will operate like gift cards, not coupons. Class Members need *not* buy a higher priced item from which they will merely deduct some percentage discount. RadioShack has <u>more than 6,000</u> products priced under $10, excluding tax. *See* Markoff Dec., at ¶ 25. Of course, if Class

Members want to buy a higher priced items and deduct $10 from the price, that is their prerogative.[3]

Therefore, the premise of certain objections that this is coupon settlement is false, and the Court may appropriately evaluate the reasonableness of the requested attorneys' fees and costs using the lodestar methodology.

Certain objectors rely on *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013), to support their argument that this Court is compelled to award fees based on the Settlement Voucher redemption rate. But *HP Inkjet* is inapposite, because it related to actual coupons, albeit in the form of "e-credits." Specifically, class members were to receive e-credits of $2, $5 or $6 toward the purchase of HP printers and printer supplies at www.shopping.hp.com. *Id*. at 1176, n. 2; *see also Stipulation of Settlement* in *In re HP Inkjet Printer Litigation*, no. C05-3580 JF (N.D. Cal.), at DE 253-2, p. 16. The characterization of the *HP Inkjet* settlement as a "coupon settlement" is easy because HP's website offers exactly zero printers or printer supplies for under $2, and it offers one product for under $6, namely a V7 Cat. 6 Patch Cable for $4.99.[4] However, it is unclear that even this single product falls under the rubric of "printers and printer supplies." In effect, class members with e-credits necessarily had to buy an item higher priced than the face value of the e-credits, from which they would receive a *discount* by using an e-credit. *See also Fleury*, 2008 WL 3287154 at *2 (finding that "the reality is that most Cartier products cost significantly more than $100 (or even $200 as the $100

---

[3] Additionally, the Settlement Vouchers are fully transferrable and class members can aggregate up to three (3) vouchers in single use, i.e., $30.

[4] http://www.shopping.hp.com/en_US/home-office/-/products/Accessories/Accessories?SearchParameter=%26%40QueryTerm%3D*%26CategoryUUIDLevelX%3DzUEQxXjbvR8AAAE0r09cZzPL%26TieredPricing5%3D%255B0.0%2BTO%2B24.99%255D%26%40Sort.TieredPricing%3D0&PageSize=15.

credits may be aggregated up to a maximum of two credits). In all likelihood, the $100 credit will often be employed as a discount to purchase items exceeding the value of the credit, rather than be used to purchase a $100 or $200 item.").

In short, the Ninth Circuit's analysis is irrelevant to the instant case, in which Class Members have more than 6,000 products available to them under $10, and for which they need not spend a single additional penny to obtain.

### 2. CAFA Allows the Use of the Lodestar Methodology Even In Coupon Settlements.

Albeit ultimately rejecting them as coupons, the Seventh Circuit noted that even no-purchase-necessary in-kind benefits "share some characteristics of coupons." *Synfuel*, 463 F.3d at 654. Assuming *arguendo* the Settlement Vouchers could be considered coupons, an award of attorneys' fees and costs using the lodestar methodology award is still permitted.

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712 (b)(1) provides as follows:

> If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

Indeed, CAFA further provides that "[n]othing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees. 28 U.S.C. § 1712(b)(2). Furthermore, the legislative history of CAFA reinforces the ability to use Lodestar.

> In some cases, the proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action.

S. Rep. No. 109-14, at 30 (2005), 2005 U.S.C.C.A.N. 3.

Here, Plaintiffs, the proponents of this class settlement do not propose to base attorneys' fees based on the value of the Settlement Vouchers. Instead, Plaintiffs propose that their attorneys' fee be based upon a lodestar calculation, as allowed by § 1712 (b) of CAFA. Aside from making this approach clear here, it is evident from the text of the Settlement Agreement, which does not peg attorneys' fees to a percentage of the Settlement Voucher value.[5] It is a stated amount, $1,000,000. To be based on the value of the Settlement Vouchers, the Settlement Agreement would have said something akin to "Class Counsel will seek an award of attorneys' fees of 33% of the value of the Settlement Vouchers redeemed." *See e.g.*, *Redman v. Take Care Health Systems, LLC*, no. 11 C 9044 (N.D. Ill.), at DE 27-1, p. 6 ("Class Counsel shall be paid 30% of the Settlement Fund as compensation for their reasonable attorneys' fees and costs."); *cf. Redman v. Michael Robert Enterprises, Inc.*, no. 10 C 2465 (N.D. Ill.), at DE 79-1, p. 6 ("Defendant shall pay Class Counsel (collectively and not each) a total of one hundred twenty-two thousand five hundred dollars ($122,500)…in full satisfaction of all reasonable attorneys' fees and costs."); *see also id.* at DE 88, p. 2 (referencing materials supporting Lodestar approximating the agreed-upon fee award). Similarly, in *In re Bisphenol-A*, 2011 WL 1790603, at *10, the Court acknowledged CAFA's provisions allowing percentage-based fee awards if fees are tied to redemption rates and lodestar-based fee awards if they are not, and reached the conclusion that § 1712(b)(1) supports a lodestar-based award, because "the award is based

---

[5] The Settlement Agreement parenthetically notes that the negotiated $1,000,000 fee/cost amount is 18.69% of the Settlement Amount, which cannot be a link to the value of the Settlement Vouchers, because (a) it is merely for edification, whereas the face amount is stated in absolute terms; and (b) the Settlement Amount expressly includes notice and administration costs, incentive awards and attorneys' fees, in addition to the Settlement Vouchers. The fee/cost amount is not in any way tied to the value of the Settlement Vouchers.

primarily on the time expended and the attorneys' reasonable hourly fees, not on a percentage of the recovery. The award is proper even if the settlement is deemed to be a coupon settlement."

Few courts have interpreted § 1712 of CAFA,[6] but they follow the text of § 1712(b)(1), supported by the legislative history, allowing for lodestar-based attorneys' fee awards. *See e.g.*, *Blessing v. Sirius XM Radio Inc.*, 507 Fed.Appx. 1, at *4-5 (2nd Cir. 2012) (affirming lodestar-based fee award, finding that court need not determine if class benefit was a "coupon" because §1712(b)(1) of CAFA allows a lodestar-based award in any case); *see also In re Bisphenol-A*, 2011 WL 1790603, at **3-4, 10 (approving lodestar-based fee award, finding that the vouchers provided to class members were not the same as coupons because class members could redeem them for a wide variety of products without spending additional money, and holding that the fee award was proper even if the vouchers were coupons, because § 1712(b)(1) expressly allows a lodestar determination); *Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201, 206, 216 (E.D. Pa. 2011) (approving lodestar-based fee award in Fair Credit Reporting Act ("FCRA") class settlement that provided in-kind compensation to class, noting that lodestar is appropriate in cases without a common fund and in cases brought pursuant to fee-shifting statutes like the FCRA.); *Shames*, 2012 WL 5392159, at *16 (approving lodestar-based fee award in no-purchase-necessary voucher settlement, referencing persuasive authority that vouchers for free products is *not* a CAFA coupon settlement, as opposed to *discounts* on products where class

---

[6] Only two District Courts in the Seventh Circuit have addressed § 1712 in any manner. In *In re Southwest Airlines Voucher Litig.*, no. 11 C 8176, 2013 WL 4510197, at *8 (N.D. Ill. Aug. 26, 2013), Judge Kennelly cited 28 U.S.C. § 1712(e) for the proposition that coupon-based settlements are expressly authorized and will continue. He also approved a class settlement providing class members with drink vouchers for Southwest Airlines flights. In *In re Trans Union Corp. Privacy Litigation*, no. 00 C 4729, 2009 WL 4799954, at *14 (N.D. Ill. Dec. 9, 2009), Judge Gettleman (by way of adopting the Report and Recommendation of a Special Master), stated that "[v]aluing a coupon recovery based on redeemed value is now required for percentage fee awards under the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1712(a)." However, *Trans Union* was not decided under CAFA and is otherwise irrelevant here because Plaintiffs do not seek a percentage fee award.

members are required to purchase the products and pay the difference between the full and coupon-discounted price).

These holdings provide the only reasonable reading of § 1712, because the entirety of § 1712 relates to "coupon settlements." If only percentage of redemption awards were allowed, nothing beyond § 1712(a) would be necessary. Naturally, since § 1712(b) (and other parts) exist, they must have some meaning, and the above holdings make clear that fee awards may be based on either redemption rate or lodestar, depending on how a settlement is structured (i.e., whether a settlement agreement ties fees to redemption rate).

Therefore, attorneys' fees awards based on a lodestar methodology is allowable (and appropriate under fee-shifting statutes) regardless of whether the Settlement Vouchers are coupons or not.

## III. THE NEGOTIATED FEE AWARD IS REASONABLE UNDER THE LODESTAR METHODOLOGY.

### A. Class Counsel's Time and Hourly Rates Are Reasonable.

"In reviewing a fee petition, a district court is tasked only with examining whether the rate and hours requested are reasonable; the total amount that the attorney stands to recover must not influence this determination." *Pickett*, 664 F.3d at 640. "[A] previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not," though a prior award is not the *sine qua non* of the determination. *Id*. at 647. A court may also consider affidavit of other attorneys and third party sources such as The Laffey Matrix. *Id*. at 649-51.

As this Court is keenly aware, this is a heavily-disputed case. At every turn, Defendant put up roadblocks. At every turn, Class Counsel attempted to push this case forward.

Nonetheless, Class Counsel worked diligently to obtain information from Defendant, third parties and public sources both to prosecute this case and in negotiating a settlement, including with the assistance of this Court.

Given space considerations in this brief, Plaintiffs will not detail all of the work undertaken in this matter, but detailed records are available with Class Counsel declarations.  *See* Markoff Dec., at *passim*; *see also,* Zimmerman Dec., at ¶¶ 9-13, 17.  Notably, however, Class Counsel undertook extraordinary efforts to "secure" the settlement as much as possible.  In particular, due to the likelihood of Defendant's bankruptcy, Class Counsel sought ways of preserving a settlement even in the case of a bankruptcy.  Given the timing of the settlement, and a possible bankruptcy filing by Defendant around August 1, 2013,[7] Class Counsel researched the best options for maintaining a settlement, rather than having it unwound as a bankruptcy preference payment.  To that end, Class Counsel devised a combination of an Escrow Account (which would divest Defendant of the escrowed amount, thereby taking it outside of any bankruptcy estate) and atypical delays in the effective date of releases and payment to Class Counsel (which would maintain the Settlement Agreement as an executory contract unlikely to be rejected in a bankruptcy, rather than being unwound as a completed preference payment).  *See* Markoff Dec., at ¶ 30.

A review of Class Counsel's declarations and records reveals that the time spent dedicated to this matter was reasonable.  The rates charged by Class Counsel are also appropriate for this type of case in this District.  They are reasonable as evidenced by prior fee awards, rates

---

[7] Defendant had a debt payment of approximately $213.5 million due August 1, 2013.  *See* http://ir.radioshackcorporation.com/phoenix.zhtml?c=84525&p=irol-SECText&TEXT=aHR0cDovL2FwaS5zdW5ZW5rd2l6YXJkLmNvbS9maWxpbmcuYXNweD9pP2lwYWdlPTkwNzMkyOTUmRFNFUT0wJlNFUT0wJlNRREVTVCQz1TRUNUUNUSU9OX0VOVOElSRSZzdWJzaWWQ9NTc%3d, at p. 8.

other attorneys in this area charge, the Adjusted Laffey Matrix and the National Law Journal survey of attorneys' rates. *See* Markoff Dec., at ¶¶ 39-51; Zimmerman Dec., at ¶¶ 19-28.

> **B.     A Fee Award Should Account for Additional Time Required by Class Counsel.**

To the extent Class Counsel's lodestar is less than $1,000,000 and this Court believes the agreement of the parties does not justify the full negotiated amount, Plaintiffs request (a) a multiplier of 1.25 to reach $1,000,000; (b) a fee award for anticipated work completing the settlement, including dissemination of Class benefits and addressing Class Member issues; or (c) deferral of a request for additional fees six (6) months after the Effective Date.

> **1.     Risk Multiplier.**

"In cases like this one, where counsel 'had no sure source of compensation for their services,' the Court must apply a risk multiplier to compensate the attorneys for the risk of nonpayment in the event the litigation was unsuccessful." *City of Greenville v. Syngenta Crop Protection, Inc.*, 904 F.Supp.2d 902, 909 (S.D. Ill. 2012) (*quoting Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994)); *see also In re Navistar Diesel Engine Products Liability Litig.*, no. 11 C 2496, 2013 WL 4556362, at *1 (N.D. Ill. Aug. 11, 2013) ("A multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit."). "To determine the appropriate multiplier, a district court must attempt 'a retroactive calculation of the probability of success as measured at the beginning of litigation.'" *City of Greenville*, 904 F.Supp.2d at 909 (*quoting Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998)). "Multipliers anywhere between one and four, have been approved." *Id.* (*quoting Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991)); *see also In re Kentucky Grilled Chicken Coupon Mktg. &*

*Sales Practices Litig.*, 280 F.R.D. 364, 381 (N.D. Ill. 2011) ("Typical multipliers awarded in comparable class action litigation average around 4, but are often much higher.").

In *Navistar*, the court approved a modest multiplier of 1.25 because

> Plaintiffs' counsel faced a significant risk of no recovery at the outset of the case, and they also faced a very significant risk that class certification would not be granted, which would have brought the case to an end for all but the named plaintiffs. The Court finds that the relatively modest risk multiplier that plaintiffs have proposed is sufficiently justified given the risk that counsel undertook in pursuing this highly complex case.

2013 WL 4556362, at *1.

Similarly, Class Counsel took on this case with no certain means of payment, and given the nature of Defendant's customer mix—Defendant caters to individuals and businesses—class certification was far from certain. *See e.g.*, *Pezl v. Amore Mio, Inc.,* 259 F.R.D. 344, 347-349 (N.D. Ill. 2009) (rejecting class certification because FACTA does not allow recoveries by businesses). Moreover, in light of Defendant's grave financial condition, the prospects of payment diminished daily at the case moved forward.

## 2.    Anticipated Work.

Since notice was disseminated, Class Counsel has handled thousands of phone calls from Class Members with questions about the settlement. *See* Markoff Dec., at ¶ 37; Zimmerman Dec., at ¶ 17. Even since the deadline to submit claims, opt-out or object, Class Counsel has handled more than a hundred such calls. Markoff Dec., at ¶ 37. Interaction between Class Counsel and Class Members will continue. Indeed, Class Counsel are legally bound to address Class Member issues going forward. As much effort as the parties have undertaken to make the process smooth, with more than 82,000 claimants, issues will undoubtedly arise with the execution of this Settlement, such as Class Members having difficulty using Settlement

Vouchers. Class Counsel's experience suggests it is a virtual certainty and it will be time-consuming. *Id.* Class Counsel estimates that work on this case going forward will require an additional 175 hours, which translates to approximately $88,877.25 in additional attorneys' fees. *See* Markoff Dec., ¶ 38.

### 3. Deferral.

Alternatively, Plaintiffs request that this Court defer its ruling on Class Counsel's award of additional attorneys' fees and costs above their lodestar amount until six (6) months after the Effective Date to determine whether, and to what extent, an additional fee award is appropriate.

In any case, the fee award will not impact the value of Settlement Vouchers. They will not be reduced from their $10 value. *See* Markoff Dec., at ¶ 17.

## IV. ALTERNATIVELY, THE NEGOTIATED FEE AMOUNT IS JUSTIFIED BY THE EQUITABLE RELIEF OBTAINED BY PLAINTIFFS.

By filing this case, Plaintiffs succeeded in ceasing Defendant's practice of printing card expiration dates on consumers' receipts. By November 22, 2011, Defendant stopped the practice. Albeit somewhat difficult to value, Plaintiffs' filing of this case achieved what a multi-million dollar POS System "upgrade" by Defendant did not.

Additionally, by way of this settlement, Plaintiffs succeeded in compelling notice to nearly 5,000,000 Class Members directly and approximately 11,000,000 others by publication in several sources, advising these people that their card data may be publicly available. *See* Declaration of Jennifer M. Keough ("Keough Dec."), at ¶¶ 10, 12, 14, 16. All the work Class Counsel did up to the point of notice lead to that notice. Additionally, the cost of such notice was approximately $1,677,920.75, *Id.* at ¶ 23, which is a reasonable value for that relief.

## V. ALTERNATIVELY, THE NEGOTIATED FEE AMOUNT IS JUSTIFIED BY THE SETTLEMENT AMOUNT.

This is not a common fund case, so it does not lend itself to a percentage of the fund fee award. *See e.g.*, *Yeagley v. Wells Fargo & Co.*, 365 Fed. Appx. 886, 887 (9th Cir. 2010); *Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201, 216 (E.D. Pa. 2011). But if this Court feels compelled to make such a determination as the basis for a fee award or as a cross-check, the negotiated fee amount is in or below the typical range for similar settlements.

The minimum value of this settlement is $3,250,000, because that is the floor set by the Settlement Agreement. *See* Settlement Agreement, ¶ 2.3(E) [DE 94-1, at p. 8]. The maximum value is $5,350,000. *Id.* at ¶ 2.2. The estimated actual value is approximately $4,096,281.74.[8] *See* Keough Dec., at ¶ 20, 23, 24; *see also* Settlement Agreement [DE 94-1], at ¶ 2.3. The negotiated fee/cost amount is 18.69% of the maximum value, and below the typical range for settlements of this size. *See e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (33.3%); *McKinnie*, 678 F.Supp.2d at 814 (30%). It is appropriate to measure by the available amount, rather than the utilized amount. "The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2nd Cir. 2007) (*citing Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) and *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)). The total amount available includes costs of notice and administration and attorneys'

---

[8] $4,096,281.74 in total Settlement payments = $824,980 in claims payments + $2,121,860.54 in GCG fees and expenses incurred + $134,441.20 in GCG remaining estimated fees and expenses + $1,000,000 in attorneys' fees and costs + $15,000 Class representative incentive awards.

fees. *See In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364, 386 (N.D. Ill. 2011) (rejecting objection arguing that notice costs should be deducted from settlement fund before determining percentage-based award, specifically holding that "[d]eduction of notice costs from the fund is improper, however, as the costs of notice and claims administration are properly considered part of the fund, as are attorney fees."). The negotiated fee amount is 24.4% of the actual value, which is still below the typical range. It is less than 31% of the minimum value of the Settlement, which is right in the typical range.

Therefore, even a percentage of the fund approach justifies the negotiated amount.

## VI.    PLAINTIFFS' COSTS ARE REASONABLE AND SHOULD BE AWARDED.

Class Counsel expended $6,789.66 in furtherance of this litigation. That amount is comprised of $700 in filing fees, $84.00 in service of process, $5.66 messenger fee, and $6,000 expert witness fee. The foregoing amounts were necessary to prosecute this case and are reasonable. *See* Markoff Dec., ¶ 54; *see also* Zimmerman Dec., ¶ 30.

## VII.   PLAINTIFFS SHOULD BE AWARDED THE NEGOTIATED INCENTIVE AWARDS.

Under the Settlement Agreement, as an incentive award to the Plaintiffs for their participation as the Class Representatives herein, Defendant agreed to pay an incentive award to Plaintiffs in the amount of $5,000 each. *See* Settlement Agreement at ¶ 2.3(C). DE 94-1.

Courts acknowledge that incentive awards to representative parties are not atypical in class actions and, in fact, are "justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *see also Ryan v. City of Chicago*, 274 Ill.App.3d 913, 916 (1st Dist. 1995) (affirming trial court's incentive award of $10,000 each to two plaintiffs). The Seventh Circuit, in affirming a $25,000 incentive

award to a class representative, held: "[A] named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook,* 142 F.3d at 1016.

Substantial reported authority exists for such awards to class representatives who bring actions that vindicate the rights of a class of similarly situated persons. In *Ingram v. Coca-Cola Corp.*, 200 F.R.D 685, 694 (N.D. Ga. 2001), the Court evaluated the incentive awards by looking at the overall benefits of the settlement, and noted that "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250 (S.D. Ohio 1991) (courts consider "whether these actions [by the Class Representatives] resulted in a substantial benefit to Class Members"); *Huguley v. General Motors Corp.,* 128 F.R.D. 81, 85 (E.D. Mich. 1989), *aff'd,* 925 F.2d 1464 (6th Cir. 1991), *cert. den. sub nom., Dodson v. General Motors Corp.,* 502 U.S. 909 (1991) ("Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation that they have borne.").

The Class Representatives actively participated in this litigation, attended a settlement conference with the Court (Plaintiff Redman attended two), and were heavily involved in settlement negotiations. Plaintiff Redman, given his background as an attorney for venture capitalists and banks, also offered substantial insight in structuring a settlement that offered protections to class members if Defendant filed for bankruptcy protection or sold out to venture capitalists. *See* Markoff Dec., at ¶ 30. All of the Plaintiffs did not just sit back and do what Class Counsel advised them to do. Instead, they regularly checked in with Class Counsel about the status of the case. They also regularly requested and reviewed pleadings and orders in the

17

case, and then provided input on them. *See* Markoff Dec., at ¶¶ 31-33; Zimmerman Dec., at ¶ 33.

Were it not for their efforts and contributions to the litigation by assisting Plaintiffs' counsel with their investigation and filing of the underlying suits, the substantial benefit to the Class afforded under this Settlement would not have resulted. Accordingly, an award of $5,000 is reasonable. *See In re Southwest Airlines Voucher Litig.*, 11 C 8176, 2013 WL 4510197, *5, 11 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.) (finding that $15,000 incentive awards to class representatives reasonable in light of amount of participation in the case, when class members received $5 vouchers); *see also Will v. General Dynamics Corp.*, no. 06-698-GPM, 2010 WL 4818174, at *4 (S.D. Ill. Nov. 22, 2010) (approving $25,000 incentive awards because "the named Plaintiffs have been active, hands-on participants in the litigation expending significant amounts of their own time to benefit the class. Class counsel reported that they assisted with discovery, submitted to lengthy depositions, and were involved in the settlement process.").

Accordingly, this Court should approve incentive awards of $5,000 for each class representative.

## Conclusion

For the foregoing reasons, this Court should award Class Counsel attorneys' fees and costs of $1,000,000 and incentive awards of $5,000 to each Class Representative.

SCOTT D.H. REDMAN,                          MARIO ALIANO and
Plaintiff,                                  VICTORIA RADAVICIUTE,
                                            Plaintiffs,

By:    /s Paul F. Markoff                    By:    s/ Thomas A. Zimmerman, Jr.

Paul F. Markoff                             Thomas A. Zimmerman, Jr.
Karl G. Leinberger                          Adam M. Tamburelli

18

Markoff Leinberger LLC
134 N LaSalle St Ste 1050
Chicago IL 60602
Tel: 312.726.4162
Fax: 312.674.7272
paul@markleinlaw.com

Zimmerman Law Offices, P.C.
77 W Washington St Ste 1220
Chicago IL 60602
Tel: 312.440.0020
Fax: 312.440.4180
tom@attorneyzim.com