# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT D.H. REDMAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 11 C 6741 (consolidated with 11 C 7819) |
| v. | ) ) | |
| RADIOSHACK CORPORATION, a Delaware corporation, | ) ) ) | Magistrate Valdez (consent filed) |
| Defendant. | ) ) ) | |
| _____ | ) ) | |
| MARIO ALIANO and VICTORIA RADAVICIUTE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| RADIOSHACK CORPORATION, a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

# **TABLE OF CONTENTS**

I.      INTRODUCTION. ...................................................................................................1

II.     BACKGROUND OF THE LITIGATION.............................................................2

III.    THE TERMS OF THE SETTLEMENT.................................................................3

IV.     IMPLEMENTATION OF THE CLASS NOTICE PLAN. ...................................5

V.      THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR
        JUDICIAL APPROVAL. .......................................................................................7

      A.      Courts Strongly Favor Settlement in Class Actions. ................................7

      B.      The Standard for Final Approval. ..........................................................8

      C.      *Armstrong* Considerations. .................................................................10

           1.      Defendant's Ability to Pay................................................... 10

           2.      Strength of the Case for Plaintiffs on the Merits. ..................... 13

                a.      The Class Representatives Faced Considerable Risk In
                        Establishing Liability. ..................................................13

                b.      The Class Representatives Face Considerable Risk in
                        Establishing A Sustainable Statutory Damage Award..................15

           3.      The Reaction of the Class to the Settlement Has Been Favorable............ 15

           4.      The Settlement was Negotiated at Arm's-Length, and is Not
                Collusive. .................................................................... 17

           5.      The Settlement is Fair in the Opinion of Competent Counsel. ................. 18

           6.      Continued Litigation Would Be Long, Complex and Expensive. ............ 19

      D.      The Attorneys' Fees Award and the Incentive Payments to Plaintiffs as the
        Class Representatives are Reasonable. ..................................................22

# TABLE OF AUTHORITIES

**Cases**

*Aliano v. Joe Caputo & Sons-Algonquin, Inc.*
  09 C 910, 2011 WL 1706061 (N.D. Ill. May 5, 2011) ........................................... 14

*Armes v. Sogro, Inc.*
  08-C-0244, 2013 WL 1129616 (E.D. Wis. Mar. 18, 2013) .................................... 14

*Armstrong v. Bd. of Sch. Dirs.*
  616 F.2d 305 (7th Cir. 1980) ........................................................... ii, 7, 9, 10

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3rd Cir. 1993) ...................................................................... 13

*Carson v. Am. Brands*
  450 U.S. 79 (1981) ................................................................................... 8

*Cotton v. Hinton*
  559 F.2d 1326 (5th Cir. 1977) ................................................................... 7

*Depoister v. Mary M. Holloway Found.*
  36 F.3d 582 (7th Cir. 1994) ....................................................................... 9

*Detroit v. Grinnell Corp.*
  495 F.2d 448 (2nd Cir. 1974) .................................................................... 8

*E.E.O.C. v. Hiram Walker & Sons, Inc.*
  768 F.2d 884 (7th Cir. 1985) ..................................................................... 8

*Ellis v. Naval Air Rework Facility*
  87 F.R.D. 15 (N.D. Cal. 1980) .................................................................. 19

*Felzen v. Andreas*
  134 F.3d 873 (7th Cir. 1998) ..................................................................... 7

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*
  630 F. Supp. 482 (E.D. Pa. 1985) ............................................................. 19

*Frank v. Eastman Kodak Co.*
  228 F.R.D. 174 (W.D.N.Y. 2005) .............................................................. 9

*Garner v. State Farm Mut. Auto. Ins. Co.*
  no. CV-08-1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......... 16

*Hanrahan v. Britt*
  174 F.R.D. 356 (E.D. Pa. 1997) ............................................................... 17

*Hispanics United of DuPage County v. Vill. of Addison*
  988 F.Supp.1130 (N.D. Ill. 1997) ............................................................. 16

*Huff v. Shandy's Cafe, LLC*
  CIV.A. H-11-3549, 2013 WL 510160 (S.D. Tex. Feb. 12, 2013) ........................................... 14

*In re AT&T Mobility Wireless Data Services Sales Litig.*
  270 F.R.D. 330 (N.D. Ill. 2010)............................................................................... 4, 9

*In re Chambers Development Securities Litigation*
  912 F.Supp.822 (W.D. Pa. 1995)............................................................................... 21

*In re Corrugated Container Antitrust Litig. (II)*
  659 F.2d 1322 (5th Cir. 1981) ................................................................................. 9

*In re Domestic Air Transp. Antitrust Litig.*
  148 F.R.D. 297 (N.D. Ga. 1993)............................................................................... 4

*In re Drexel Burnham Lambert Group*
  130 B.R 910 (S.D.N.Y 1991).................................................................................. 7

*In re First Commodity Corp. of Boston Customer Accounts Litig.*
  119 F.R.D. 301 (D. Mass. 1987)............................................................................... 21

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*
  no. 09 C 7670, 2011 WL 5599129 (N.D. Ill. Nov. 16, 2011)......................................... 6, 7, 16

*In re Linerboard Antitrust Litig.*
  292 F.Supp.2d 631 (E.D. Pa. 2003) ......................................................................... 17

*In re Mexico Money Transfer Litig.*
  164 F.Supp.2d 1002 (N.D. Ill. 2000) ........................................................................ 16

*In re Mid-Atlantic Toyota Antitrust Litig.*
  564 F.Supp. 1379 (D. Md. 1983)............................................................................... 17

*In re Southwest Airlines Voucher Litig.*
  no. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)........................................... 16

*In re Visa Check/Mastermoney Antitrust Litig.*
  297 F.Supp.2d 503 (E.D.N.Y. 2003) ........................................................................ 16

*Isby v. Bayh*
  75 F.3d 1191 (7th Cir. 1996) ............................................................................. 7, 8, 9

*McKinnie v. JP Morgan Chase Bank, N.A.*
  678 F.Supp.2d 806 (E.D. Wis. 2009)......................................................................... 6

*Shames v. Hertz Corp.*
  no. 07-CV-2174-MMA(WMC), 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)...................... 21

*Shurland v. Bacci Café & Pizzeria on Ogden Inc.*
  259 F.R.D. 151 (N.D. Ill. Aug. 19, 2009).................................................................. 14

*Shy v. Navistar Int'l Corp.*
  C-3-92-333, 1993 WL 1318607 (S.D. Ohio May 27, 1993) ............................................ 9

*State Farm Mutual Insurance Co. v. Campbell*

iii

538 U.S. 408 (2003) .................................................................................................. 15

*State of West Virginia v. Chas. Pfizer & Co.*
  314 F.Supp. 710 (S.D.N.Y. 1970) ...................................................................... 13

*Synfuel Tech., Inc. v. DHL Express (USA), Inc.*
  463 F.3d 646 (7th Cir. 2006) .............................................................................. 10

*TBK Partners, Ltd. v. Western Union Corp.*
  517 F.Supp.380 (S.D.N.Y. 1981) ...................................................................... 21

*UAW v. Gen. Motors Corp.*
  497 F.3d 615 (6th Cir. 2007) ............................................................................. 8, 9

*Van Straaten v. Shell Oil Products Co. LLC*
  678 F.3d 486 (7th Cir. 2012) ............................................................................. 14

*Vidoni v. Acadia Corp.*
  no. 11-cv-00448-NT, 2012 WL 1565128 (D. Me. Apr. 27, 2012) ........................ 14

**Rules**
Fed. R. Civ. P. 23 ....................................................................................... 15, 17, 20

**Treatises**
2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985) ................................. 17

3 NEWBERG ON CLASS ACTIONS § 8.32 at 8-105 (4th ed.) .......................................... 7

5 MOORE'S FED. PRAC. at § 23.164[2] ....................................................................... 9

7B Wright & Miller, FED. PRAC. & PROC. at § 1797.5 ................................................ 8

MANUAL FOR COMPLEX LITIGATION, §§ 30.211-212,41.4 ........................................... 7

Plaintiffs Scott D.H. Redman, Mario Aliano, and Victoria Radaviciute (the "Class Representatives" or "Plaintiffs"), on behalf of themselves and the proposed Class Members,[1] by and through their respective counsel, hereby jointly move this Court for final approval of the Class Action Settlement ("Settlement") entered into by the parties. (*See* Settlement Agreement, attached hereto as Exhibit 1).

## I.  INTRODUCTION.

The Settlement is the product of extensive arms-length negotiations between the parties, which were facilitated by the Court at two (2) settlement conferences and several follow-up status hearings. The parties and their counsel believe it represents a fair, reasonable and adequate settlement of the claims asserted by the Class Representatives, individually and on behalf of the Class Members. Indeed, despite the rapidly deteriorating financial condition and uncertain ongoing viability of Defendant, which made it a very distinct possibility that the Class Members would receive no relief at all even if they ultimately prevailed on their claims, the parties negotiated a settlement that provides a tangible financial benefit to Class Members. Moreover, the value of the Class relief is further enhanced by virtue of the fact that Class Counsel structured the Settlement Agreement in a manner that protects, as well as possible under the circumstances, against losing the Class relief if Defendant files for bankruptcy or sells itself. Under the circumstances, Plaintiffs submit that final approval of the Settlement is warranted.

As discussed in detail below, pursuant to the Court's preliminary approval order, notice was sent by direct mail to 4,397,238 Class Members for whom Defendant had physical addresses, by e-mail to 558,075 Class Members for whom Defendant had e-mail addresses, by

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

publication in four (4) national magazines on five (5) different dates (*People* twice, and *Parade*, *USA Weekend* and *Time* once), and by internet publication on Defendant's website, Class Counsel's website, and a separate settlement website operated by the Class Settlement Administrator ("CSA").

As a result of this notice campaign, the CSA received 18,007 telephone calls to its toll-free number established for the Settlement, the CSA's settlement website received 136,733 visits, and the CSA mailed out 4,055 notice packets to Class Members. *See* Declaration of Jennifer M. Keough ("Keough Dec."), at ¶¶ 16-18.

The last day to file objections to the Settlement was August 27, 2013, which was also the last day to request exclusion from the Class. Out of the roughly 16,000,000 Class Members, only 21 Class Members objected to the settlement, and 1,555 Class Members excluded themselves from the Settlement Class. *Id.* at ¶ 21.

All of the requirements for final approval have been met, as the proposed Settlement satisfies the factors for final approval of class action settlements established by Seventh Circuit authority. On the record before the Court, the Settlement should be finally approved.

## II.    BACKGROUND OF THE LITIGATION.

On September 26, 2011, Plaintiff Scott D.H. Redman filed a Class Action Complaint in this action alleging that Defendant willfully violated FACTA by displaying the expiration date of customer credit and debit cards on receipts issued at one of Defendant's RadioShack stores. Subsequently, on November 3, 2011, Plaintiffs Mario Aliano and Victoria Radaviciute filed a similar lawsuit against Defendant.

From August 24, 2010 through November 21, 2011, Defendant issued FACTA-violating receipts to approximately 16,000,000 individual and business customers. However, Defendant

has denied all substantive allegations, including the allegation that it willfully violated FACTA, and the parties agree that neither the Class Representatives nor any Class Member has suffered any actual monetary injury as a result of the content of Defendant's receipts.

Soon after the filing of the Complaint, the parties began negotiating a settlement that ultimately became embodied in the Settlement following over a year of extensive, often contentious, arm's-length negotiations and multiple settlement conferences with Magistrate Judge Maria Valdez. While the specific terms of the Settlement were heavily negotiated, the general terms and structure of the Settlement are favorable to Class Members and in line with many FACTA class action settlements that have been reached throughout the United States.

## III. THE TERMS OF THE SETTLEMENT.

The parties stipulated to the conditional certification of a Settlement Class, defined as:

> All persons who, between August 24, 2010 and November 21, 2011, paid by credit or debit card for products or services and received an electronically-printed receipt from any Store that contained the expiration date of the person's credit or debit card.

> Excluded from the Settlement Class are Defendant, its officers, employees, and attorneys; transactions conducted with business credit or debit cards; and transactions made with RadioShack-branded debit or credit cards, as those cards do not contain expiration dates.

Like various other FACTA class action settlements of which Class Counsel and counsel for Defendant are aware, the Settlement requires Defendant to provide payment in the form of a Settlement Voucher to all Class members who submitted valid claims. Specifically, the key provisions of the Settlement that was preliminarily approved by this Court are as follows:

- Class Members. Each of the 82,498 Class Members who submitted a valid claim will receive a $10 Settlement Voucher, which can be redeemed at Defendant's stores or online at www.radioshack.com. Settlement Vouchers will be distributed as bar codes and will work like gift cards. Settlement Vouchers will be good for six (6) months and will be fully transferrable. Up to three (3) Settlement Vouchers can aggregated for use in a

3

single transaction. The Settlement Fund will be charged $10 for each Settlement Voucher up to the Escrow Amount, after which Defendant will provide additional Settlement Vouchers up to the Settlement Amount, less disbursements identified below;

- <u>Class Notice and Administration</u>. Costs of class notice and administration were paid from the Escrow Amount. The total cost of class notice and administration is estimated to be $2,121,860;

- <u>Plaintiffs' Claims</u>. Plaintiffs will each receive $5,000 to resolve their individual claims and as incentive awards for their services as Class Representatives;

- <u>Attorneys' Fees and Costs</u>. Upon Court approval, Class Counsel will receive $1,000,000 for attorneys' fees and costs, which is approximately 18.69% of the Settlement Amount; and

- *Cy Pres*. If the above disbursements totaled less than $3.25 million, Settlement Vouchers totaling the difference between $3.25 million and the above disbursements would have been provided to the Boys & Girls Club of American. However, the above disbursements will exceed $3.25 million, so no *cy pres* distribution will occur.

Under the circumstances, the recovery provided by the Settlement is substantial. As a practical matter, no settlement ever provides full recovery. *See In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 305 (N.D. Ga. 1993) (in approving a class settlement, the court commented that "it is unrealistic to expect a recovery that is the equivalent of a victory by plaintiffs at trial"). Therefore, "[b]ecause the essence of settlement is compromise courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (internal quotations omitted).

This Settlement provides significant relief to the Class Members, none of whom has suffered any actual damages. While the value of the Settlement Vouchers are less than the statutory damage amounts provided for under FACTA, the Settlement is substantial in light of the fact that Defendant's financial position was increasingly tenuous during the course of this lawsuit and has only deteriorated further since the preliminary approval order was entered on

4

May 29, 2013.[2]   A consensus of analysts, if they are not unanimous, agree that Defendant's prospects for survival are grim, which would leave Class Members with nothing absent this Settlement.

In addition to the relief for individual Settlement Class members, Defendant agreed to pay the substantial costs of Class Notice, the cost of administering the claims, and the incentive award to the Class Representatives, which exceed $2 million.

As noted above, both Class Counsel and counsel for Defendant have searched for other FACTA class action settlements throughout the United States.  Of the hundreds of FACTA class actions that were filed throughout the United States since FACTA went into effect for most merchants on December 4, 2006, only a relative handful have resulted in class settlements.  Of those class settlements of which counsel for the parties are aware, many have resulted in discount, coupon or voucher-based settlements.  A chart summarizing the terms of some of these settlements is attached to co-Class Counsel's Declaration.  *See* Declaration of Thomas A. Zimmerman, Jr. ("Zimmerman Dec."), ¶ 8.

For the reasons set forth below, the proposed settlement fulfills the requirements for final approval under well-established Seventh Circuit authority.

## IV.     IMPLEMENTATION OF THE CLASS NOTICE PLAN.

Prior to the preliminary approval hearing, the parties submitted proposed class notice forms and a plan for dissemination thereof ("Class Notice") for the Court's approval.  The Court found that the proposed Class Notice satisfies the due process clauses of the U.S. constitution, and Fed. R. Civ. P. 23. Accordingly, the Class Notice was implemented in full compliance with

---

[2] Defendant's financial position is set forth in detail in § V.C.1, *infra*.

the form and method this Court held to be adequate and sufficient, as follows:

- long-form notice was sent by direct mail to 4,397,238 Class Members for whom Defendant had physical addresses;

- long-form notice was sent by e-mail to 558,075 Class Members for whom Defendant had e-mail addresses;

- summary notice was published in national newspapers and a national magazine with a total circulation of **61,339,887** and a total readership of **186,050,460**, including *People Magazine* twice (3,563,065 circulation, and 42,756,780 readership), *Parade Magazine* (32,500,000 circulation, and 76,375,000 readership), *USA Weekend* (22,000,000 circulation, and 49,060,000 readership), and *Time Magazine* (3,276,822 circulation, and 17,858,680 readership);[3]

- the CSA established and operated a separate settlement website: *www.shacksettlement.com*, which had the Class Notice and claim form available for download. This website received 136,733 visits, and the CSA mailed out 4,055 notice packets to Class Members upon request;

- Defendant provided Class Notice on its website: *www.radioshack.com*; and

- Class Counsel published the Class Notice and claim form on their website.

*See* Keough Dec., at ¶¶ 10-12, 14, 16, 17; *see also* Zimmerman Dec., ¶ 17.

The Parties agreed that Garden City Group was to serve as the CSA, and Defendants would pay for the costs of Class Notice and claims administration, which are estimated to be $2,256,301.74. *See* Keough Dec., at ¶¶ 23, 24.

In granting preliminary approval, the Court correctly found that the Class Notice met all of the requirements of due process because it provided the members of the Class with sufficient information to consider the terms of the Settlement Agreement, and decide whether there was a

---

3 Other Courts are in accord with this Court's earlier finding that the notice is adequate, and have approved class action notice plans in which summary notice was published in *Parade Magazine* and/or *USA Weekend*. *See, e.g., In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, no. 09 C 7670, 2011 WL 5599129, at *5 (N.D. Ill. Nov. 16, 2011) (*Parade*); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F.Supp.2d 806, 810 (E.D. Wis. 2009) (*Parade* and *USA Weekend*).

basis for challenging it. *See Manual for Complex Litigation*, §§ 30.211-212, 41.4; *see also In re Drexel Burnham Lambert Group,* 130 B.R 910, 924 (S.D.N.Y 1991) *aff'd,* 960 F.2d 285 (2nd Cir. 1992) ("class notice should apprise prospective class members of the terms of the proposed settlement, the identity of persons entitled to participate in it, and the options that are open to the class members in connection with the proceedings"); 3 NEWBERG ON CLASS ACTIONS § 8.32 at 8-105 (4th ed.) (listing items to be considered for inclusion in the settlement notice).

## V. THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL.

The Settlement is the product of extensive investigation, sophisticated economic analysis, and intensive, arm's-length settlement negotiations. Under the applicable standards, the Court should approve the Settlement and permit the Class members to obtain the benefit of the significant recovery that the Settlement represents.

### A. Courts Strongly Favor Settlement in Class Actions.

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement"), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "In evaluating the fairness of a settlement, the Court views the facts in the light most favorable to the settlement." *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364, 375

7

(N.D. Ill. 2011) (*citing Isby*, 75 F.3d at 1199).

### B.     The Standard for Final Approval.

In determining whether to grant final approval, the Court's inquiry "is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.  The Sixth Circuit explained:

> [The Court's] task is not to decide whether one side is right or even whether one side has the better of these arguments. Otherwise, [the Court] would be compelled to defeat the purpose of a settlement in order to approve a settlement. The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).

Because the very point of compromise is to avoid determining unsettled issues and the waste and expense of litigation, the Court does not "decide the merits of the case or resolve unsettled legal questions."   *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (the district court is to "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights"), *cert. denied*, 478 U.S. 1004 (1986); *Detroit v. Grinnell Corp*., 495 F.2d 448, 456 (2nd Cir. 1974) (the trial court does not "have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute"); 7B Wright & Miller, FED. PRAC. & PROC. at § 1797.5 ("the court may not try disputed issues in the case since the whole purpose behind a compromise is to avoid a trial ... Rather the judge is restricted to determining whether the terms proposed are fair and reasonable.").

There is not just one settlement that alone is reasonable in a case, but rather there is "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in

taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation marks and citation omitted). "A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981). Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable." *Shy v. Navistar Int'l Corp.,* C-3-92-333, 1993 WL 1318607, *2 (S.D. Ohio May 27, 1993) (citation omitted); *see also* 5 MOORE'S FED. PRAC. at § 23.164[2] ("a proposed settlement may be fair and adequate even though it amounts to only a fraction of the potential recovery in a fully litigated case"). Finally, "[b]ecause the essence of settlement is compromise courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (internal quotations omitted).

Evaluation and approval of the Settlement is committed to the sound discretion of the Court. The proper focus "is upon 'the general principles governing approval of class action settlements and not upon the 'substantive law governing the claims asserted in the litigation.' " *Isby*, 75 F.3d at 1197 (*quoting Armstrong*, 616 F.2d at 315). The Court has wide latitude in making this determination. There is "no requirement that an evidentiary hearing be conducted as a precondition to approving a settlement in a class action suit." *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994). Therefore, the Court "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" and should not resort to a "full-blown trial on the merits." *UAW*, 497 F.3d at 635 (internal quotation marks and citation omitted).

C.     *Armstrong* **Considerations.**

The Seventh Circuit has established the appropriate standard and considerations for final approval of a class-action settlement, stating that in evaluating whether the proposed settlement is lawful, fair, reasonable and adequate, the Court should consider: (1) the strength of the case for Plaintiff on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching the settlement; (6) the reaction of class members to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed.  *Armstrong*, 616 F.2d at 314.

Each of these factors in this case supports approval of the Settlement, and in the aggregate, the applicable factors overwhelmingly support approval of the Settlement because they demonstrate that it is lawful, fair, reasonable, and adequate.

### 1.     Defendant's Ability to Pay.

The most important factor relevant to the fairness of a class action settlement is weighing the strength of the case on the merits balanced against the amount offered in the settlement. *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).   In conducting this analysis, the court should begin by quantifying the net expected value of continued litigation to the class.  *Id.*

Unquestionably, the most significant factor in reaching the terms of the Settlement in this case, as well as the timing of the Settlement, is Defendant's woeful financial condition.  Here, Defendant is certainly in financial distress.

As discussed in Plaintiffs' Memorandum in Support of Their Motion for Preliminary Approval of Class Action Settlement Agreement, Defendant's financial condition raises

10

significant concerns about whether Defendant would be able to satisfy *any* judgment if the Plaintiffs were able to prevail on the merits. In fact, Class Counsel determined that Defendant's uncertain financial viability necessitated structuring the Settlement Agreement in such a way as to try to ensure Class Member compensation even if Defendant filed for bankruptcy protection, including requiring an escrow and making the Settlement Agreement executory on both sides until full performance, which removes the Settlement Agreement from the antecedent debt category and provides a significant deterrent to rejecting it in bankruptcy. *See* Declaration of Paul F. Markoff ("Markoff Dec."), at ¶ 30.

Defendant's tenuous financial position is evidenced by, *inter alia*, the following facts: First, the price of Defendant's stock has declined rapidly and significantly, from $12.60 per share on September 26, 2011 (the day this lawsuit was filed), to $2.14 on November 29, 2012 (the day the parties reached agreed to a settlement in principle), having dropped all the way to $1.91 on November 21, 2012. The stock price has swung wildly since that time.[4] The price of Defendant's stock has dropped more than 85% since 2010. This drop in share price was accompanied by an operating loss of $41 million last year, or about a 300% increase from the previous year.[5]

Second, Defendant's cash and cash equivalents are declining rapidly, from $535.7 million on December 31, 2012[6] to $215 million currently.[7] This represents a 60% decrease in cash (over $320 million) in just 6 months.

---

[4] http://www.bloomberg.com/quote/RSH:US/chart
[5] http://beta.fool.com/sammattera/2013/08/14/the-end-could-be-close-for-radioshack/43307/?Source=eogyholnk0000001
[6] *See* Defendant's most recent Quarterly Report, p. 4, available at https://www.sec.gov/Archives/edgar/data/96289/000009628913000025/form10qa063013.htm
[7] http://www.thestreet.com/story/11998346/1/the-deal-radioshack-struggles-to-pay-down-debt-as-losses-rise.html

Third, on Defendant's most recent Form 10Q filed with the Securities and Exchange Commission, Defendant estimated that the aggregated loss from all current litigation against the company could be as high as $16.6 million, representing additional financial pressure on a company already in jeopardy of going out of business.[8] Notably, that estimate takes into account the value of this Settlement as it was filed after the Court preliminarily approved the Settlement, and does not contemplate what that liability would be if Plaintiffs secured a judgment of more than a billion dollars.

Finally, in late July—just a few weeks ago—Standard & Poor's lowered Defendant's corporate credit rating one notch in the *non-investment grade* ranking to CCC, and warned that "a default could occur within 12 months, absent a major business turnaround or increased liquidity."[9]

Therefore, not only is Defendant's financial situation perilous, it continues to decline. Indeed, one analyst predicted that Defendant could be out of business in less than 2 years.[10] Michael Pachter of Wedbush Securities had an even more dire prognosis, saying on July 24, 2013 "I'd say they're out of business, literally, in about a year-and-a-half."[11]

In light of these facts, Plaintiffs had to choose between agreeing to the terms of this Settlement that guarantees that Class Members will receive a significant benefit (even if Defendant goes bankrupt), or trying to obtain a larger judgment in the distant future that would be an unsecured claim in Defendant's bankruptcy, resulting in no relief to the Class at all.

---

[8] *See* Defendant's most recent Quarterly Report, p. 10, available at https://www.sec.gov/Archives/edgar/data/96289/000009628913000025/form10qa063013.htm
[9] http://blogs.marketwatch.com/behindthestorefront/2013/08/02/radioshack-slides-after-sp-cuts-rating-warns-of-default-risk/
[10] See Footnote 5.
[11] http://finance.yahoo.com/blogs/breakout/best-buy-acquire-radioshack-disappears-133549354.html.

Plaintiffs' analysis is supported by Edward O'Brien, who provides further details of Defendant's financial standing. *See* Declaration of Edward O'Brien.

By agreeing to the Settlement, and negotiating a provision whereby a portion of the Class relief would be escrowed, Plaintiffs have achieved a benefit for Class Members that likely cannot be discharged in bankruptcy, and also without incurring additional litigation expenses for any of the parties and conserving the judicial resources necessary to conduct a trial. The Settlement thus avoids the uncertainty inherent in litigating a FACTA case and assessing damages even if Plaintiffs prevail, as well as the risk that no recovery would be achieved after a trial and appeal, and/or Defendant's bankruptcy.

Therefore, this factor strongly favors the proposed settlement.

### 2. Strength of the Case for Plaintiffs on the Merits.

#### a. The Class Representatives Faced Considerable Risk In Establishing Liability.

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court should balance the risks of establishing liability against the benefits afforded by the Settlement, and the immediacy and certainty of an adequate recovery against the risks of continuing litigation.

As one Court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *State of West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2nd Cir. 1971), *cert. denied*, 404 U.S. 871 (1971); *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 (3rd Cir. 1993) ("Even if Plaintiff hoped to secure a large damage award, this would have to be drastically discounted by the improbability of their success on the merits ....").

13

There is no apparent smoking gun evidence of Defendant's *willful* noncompliance with FACTA's truncation requirements, which is a necessary precondition to an award of statutory damages since no Class Member suffered actual damages. The law in this context is evolving, and in a best case scenario, the issue of willfulness would likely be a jury question. Class Counsel has been unable to find any case throughout the nation in which a plaintiff was granted summary judgment on this issue due to the fact-intensive nature of the willfulness issue,[12] though some Courts have granted defense motions for summary judgment.[13]

Defendant acknowledges its knowledge of FACTA prior to violating FACTA. Defendant does not, however, acknowledge that it knew it was violating FACTA. The correct legal standard is unknown, as some courts have held that knowledge of the violation (not just knowledge of the law) is necessary to constitute willfulness. *See e.g.*, *Vidoni v. Acadia Corp.*, no. 11-cv-00448-NT, 2012 WL 1565128, at *3 (D. Me. Apr. 27, 2012) (holding that "[i]n order to allege a willful violation, there must be some allegation that Defendant knew of the standard and voluntarily or intentionally violated it.").

Even if a class were certified, no FACTA case has been tried to verdict. The likelihood of success at trial under any circumstances is uncertain, at best, as is whether a favorable verdict would be upheld on appeal. As a result, Plaintiffs' ability to establish a willful violation of

---

[12] *See, e.g.,* the following recent cases in which summary judgment was denied due to the existence of a question of fact concerning willfulness: *Armes v. Sogro, Inc.*, 08-C-0244, 2013 WL 1129616, at *8-9 (E.D. Wis. Mar. 18, 2013); *Shurland v. Bacci Café & Pizzeria on Ogden Inc.*, 259 F.R.D. 151, 156-57 (N.D. Ill. Aug. 19, 2009); *Aliano v. Joe Caputo & Sons-Algonquin, Inc.*, 09 C 910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011).

[13] *Huff v. Shandy's Cafe, LLC*, CIV.A. H-11-3549, 2013 WL 510160 (S.D. Tex. Feb. 12, 2013) (granting defendant's motion for summary judgment, finding no willfulness); *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 491 (7th Cir. 2012) cert. denied, 133 S. Ct. 983 (2013) (reversing district court, finding no willfulness and entering judgment for defendant).

14

FACTA is uncertain.

In the context of this litigation, the risks that the Class Representatives face in establishing liability are manifest; thus, this factor favors approval of the proposed Settlement.

> **b.** **The Class Representatives Face Considerable Risk in Establishing A Sustainable Statutory Damage Award.**

Even if the Class Representatives succeed in establishing liability, significant risks would still remain with respect to their ability to prove a ***sustainable*** class-based damage award. Specifically, statutory damages in this case range from $100 to $1,000 per transaction. There are approximately 16,000,000 Class Members. If liability were proven in this case, Defendant would face an unquestionably annihilating class-wide statutory damage exposure, as discussed above. It is certain that an award of damages of this magnitude against Defendant, against the backdrop of the statutory violation at issue, would not withstand an inevitable constitutional due process challenge by Defendant. *See, e.g., State Farm Mutual Insurance Co. v. Campbell,* 538 U.S. 408 (2003).

This factor favors approval of the proposed Settlement.

> **3.** **The Reaction of the Class to the Settlement Has Been Favorable.**

After direct mail and email notice to nearly 5,000,000 people and publication notice to approximately 11,000,000 others, 21 Class Members have objected to the Settlement and 1,555 excluded themselves from the Settlement.[14, 15] Accordingly, well over 99.9% of the Class Members view the Settlement favorably. The fact that "99.9% of class members have neither

---

[14] The parties will respond to objections separately.

[15] The likely reason for the number of exclusions appears to be the imposing notice language required by Fed. R. Civ. P. 23(c)(2)(B)(vii) advising Class Members that failure to exclude themselves will cause the Court's judgment to be binding on them. *See* Markoff Dec., at ¶ 37.

opted out nor filed objections to the proposed settlements" is "strong circumstantial evidence in favor of the settlement." *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1020-21 (N.D. Ill. 2000); *Hispanics United of DuPage County v. Vill. of Addison*, 988 F.Supp.1130, 1169 (N.D. Ill. 1997) (finding settlement fair where a small fraction of class members objected); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F.Supp.2d 503, 511 (E.D.N.Y. 2003) ("A certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *see also In re Southwest Airlines Voucher Litig.*, no. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (finding that objections and exclusions totaling less than .01% of class "support[] the reasonableness of the settlement.").

In addition, Defendant provided proper notice of the Settlement Agreement to the appropriate state and federal officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), and no negative comments or opposition from any governmental entity was received. "Although CAFA does not create an affirmative duty for either the state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *In re Kentucky Grilled Chicken*, 280 F.R.D. at 377-78 (*quoting Garner v. State Farm Mut. Auto. Ins. Co.*, no. CV-08-1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010)).

Finally, while certain objectors argue that Settlement Vouchers are not appropriate relief, "the fact is that there is no ban on or presumption against settlements that provide in-kind compensation." *In re Southwest Airlines*, 2013 WL 4510197, at *8. Additionally, as in

16

*Southwest Airlines*, this not a case in which a voucher is a substitute for pecuniary loss, *Id.*, because Class Members here suffered no actual damages.

This fact plainly favors final approval of the Settlement.

**4.      The Settlement was Negotiated at Arm's-Length, and is Not Collusive.**

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1383 (D. Md. 1983) (on preliminary approval).   When negotiated at arm's length, a proposed settlement is presumptively fair and reasonable. *See Goldsmith v. Tech. Solutions Co*., No. 92–4374, 1995 WL 17009594, at n.2 (N.D. Ill. Oct. 10, 1995) ("it may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations"); 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985).

Thus, settlements proposed by experienced counsel as the result of arm's-length negotiations are entitled to deference from Courts.  *See*, *e.g.*, *Goldsmith*, *supra; In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)).  The initial presumption in favor of such settlements reflects Courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e).

Throughout the negotiations in this case, the parties remained adversarial.  Counsel for the parties are highly experienced litigators who had negotiated numerous class action settlements before the present Settlement was achieved.  Defendant's counsel persistently sought to minimize the financial and other burdens and risks to be assumed by their client in the

17

proposed settlement, while Class Counsel equally persistently and forcefully pressed for the greatest achievable advantage for the Class at every turn. Virtually nothing in this case was uncontested, including the provisions of the Settlement Agreement itself, which took six (6) months to finalize. *See* Markoff Dec., ¶¶ 9-13. Additionally, this Court witnessed the adversarial negotiations among the parties through settlement conferences and follow-up hearings.

This factor strongly supports approval of the Settlement.

### 5. The Settlement is Fair in the Opinion of Competent Counsel.

Counsel for the parties have performed extensive research into previously-litigated FACTA cases, and have done thorough evaluations of prior settlements.

Plaintiffs and the Class were represented by Zimmerman Law Offices, P.C. and Markoff Leinberger LLC. These lawyers have been involved in complex litigation for decades. They have significant trial court and appellate court experience, and they have significant class action experience. *See* Zimmerman Dec., ¶¶ 2-7; *see also* Markoff Dec., ¶¶ 4-5. They have been appointed as lead or co-lead counsel in many contested class actions and have recovered substantial monies for their clients and class members. *Id.*

In short, Class Counsel have a tremendous amount of experience with class actions, and their opinion that the Settlement is fair, reasonable, and adequate deserves great weight. *See* Zimmerman Dec., ¶ 14.

At the time of Settlement, counsel were aware of the following pertinent facts:

- There are approximately 16,000,000 Class Members to whom Defendant provided receipts that displayed credit or debit card expiration dates;

- The primary liability defense was going to be a lack of willfulness on the part of Defendant, which is a murky area of the law with no bright-line guidance;

18

- There is significant authority adverse to class certification in the FACTA context;

- Defendant's financial condition, which is steadily deteriorating, imposed a significant possibility that Class Members would ultimately receive nothing at all, especially if the case continued on for any significant period of time;

- Without evidence of malice or other indicia of malfeasance, a jury is unlikely to want to impose potentially crippling damages upon a business that is generally a well-known and well-regarded corporate citizen—particularly where there is no evidence that Plaintiffs or any Class Members have sustained any actual monetary injury; and

- If the full measure of statutory damages were actually imposed upon Defendant by a jury, said damages would run a very real risk of violating Defendant's due process rights.

Accordingly, counsel possessed sufficient information to conclude that, not only is the proposed Settlement fair, reasonable and adequate, it serves the Congressional purposes reflected in FACTA. At the same time, the proposed Settlement represents a responsible resolution of this litigation in that it does not seek to cripple a business or minimize injury to the Class. As Courts have held, the views of the attorneys actively conducting the litigation, while not conclusive, are "entitled to significant weight." *See, e.g.*, *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to "considerable weight."), *aff'd* 661 F.2d 939 (9th Cir. 1981).

### 6. Continued Litigation Would Be Long, Complex and Expensive.

The FACTA class action claims at issue are, by definition, complex, and they implicate unsettled areas of applicable law. While Class Counsel would not have asserted the claims if they were not confident that they could make persuasive arguments in favor of both liability and

class certification, they acknowledge that if the claims were fully litigated, Plaintiffs would have to navigate significant adverse authority.

The most obvious example of this dynamic is in the context of class certification where there has been a body of federal district court decisions refusing to certify FACTA class actions based upon an asserted lack of "superiority" under Fed. R. Civ. P. 23(b). *See* § V.C.2.a, *supra*.

In addition, Plaintiffs must demonstrate Defendant's willful violation of FACTA's truncation requirements as a prerequisite to statutory damages, as discussed above. Willfulness in the context of FACTA is extraordinarily ill-defined, and there is a dearth of case law Plaintiffs' can use as guidance. As such, although substantial discovery has been exchanged, immeasurably more discovery would take place if the case went forward, including the review of hundreds of thousands of documents, taking scores of depositions and extensive third party discovery. Expert discovery would be likely, with the potential for extensive motion practice regarding the validity of expert opinions. Moreover, given the pace of this case, absent this Settlement, litigation would continue for years (years that Defendant may not have). Undoubtedly, if this case were tried, Defendant would contest the merits of the case on both factual and legal bases, and Defendant would contest the fairness of the underlying judgment amount if a judgment were rendered against it. The parties would have to brief and argue myriad issues regarding the underlying judgment and the applicable laws and statutes.

The Settlement permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of encouraging the truncation of personal consumer credit data on receipts provided to consumers at the point of sale. Standing alone, the relatively expeditious resolution of the disputed claims benefit the Class specifically, and consumers generally.

20

Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *In re Chambers Development Securities Litigation*, 912 F.Supp.822, 837 (W.D. Pa. 1995); *see also TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd* 675 F.2d 456 (2nd Cir. 1982).   Given the prospects for significant discovery, abundant motion practice, a jury trial and probable appeal, as well as the substantial risks involved, a settlement at this time is beneficial to the Class. *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 314 (D. Mass. 1987).

This factor plainly weighs in favor of approval of the proposed Settlement.

### 7.      This case progressed sufficiently to reach an informed, reasonable settlement.

As long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table. *Shames v. Hertz Corp.*, no. 07-CV-2174-MMA(WMC), 2012 WL 5392159, at *6 (S.D. Cal. Nov. 5, 2012).   In this case, however, the parties engaged in formal discovery, as well as exchanging information informally, both at settlement conferences and through extensive negotiations. *See* Markoff Dec., ¶¶ 10-11.  Undoubtedly, Plaintiffs sought more information for purposes of litigating the case and would have continued to seek that information if the case were not settled, but the information obtained by Class Counsel was sufficient to engage in meaningful settlement negotiations. *Id*. at ¶¶ 34-35.  Class Counsel has a clear understanding of the factual and legal issues of this case and the strengths and weaknesses of the legal arguments and factual evidence available to each side. *Id*. at ¶ 35.  Therefore, the settlement was reached at an appropriate stage

of the proceedings. *See e.g.*, *Shames*, 2012 WL 5392159, at *6 (finding that "Class counsel were highly knowledgeable about the case and well-prepared for settlement discussions.").

**D.    The Attorneys' Fees Award and the Incentive Payments to Plaintiffs as the Class Representatives are Reasonable.**

As set forth above, upon Court approval, Class Counsel will receive $1,000,000 for attorneys' fees and costs, which is approximately 18.69% of the Settlement Amount, and Plaintiffs will each receive $5,000 to resolve their individual claims and as incentive awards for their services as Class Representatives.   Plaintiffs will address the reasonableness of the attorneys' fees and incentive awards in a separate memorandum filed concurrently with this memorandum.

For the foregoing reasons, the Court should approve the Settlement as fair, reasonable, and adequate and in the best interests of the settling parties and the Class.

**Dated:**  September 10, 2013

Respectfully submitted,

| SCOTT D.H. REDMAN, individually, and on behalf of all others similarly situated, | MARIO ALIANO and VICTORIA RADAVICIUTE, individually, and on behalf of all others similarly situated, |
|---|---|
| By:    s/ Paul Markoff<br>    Paul F. Markoff<br>    Karl G. Leinberger<br>    Markoff Leinberger LLC<br>    134 N LaSalle Street, Suite 1050<br>    Chicago, Illinois 60602<br>    (312) 726-4162 telephone<br>    (312) 674-7272 facsimile<br><br>Co-Class Counsel | By:    s/Thomas A. Zimmerman, Jr.<br>    Thomas A. Zimmerman, Jr. (IL #6231944)<br>    Adam M. Tamburelli (IL #6292017)<br>    Frank J. Stretz (IL #6310264)<br>    ZIMMERMAN LAW OFFICES, P.C.<br>    77 West Washington Street, Suite 1220<br>    Chicago, Illinois 60602<br>    (312) 440-0020 telephone<br>    (312) 440-4180 facsimile<br>    www.attorneyzim.com<br><br>Co-Class Counsel |