```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3      SCOTT D.H. REDMAN, et al.,        )  No. 11 C 6741
                                          )
 4                        Plaintiffs,     )  Chicago, Illinois
                                          )  September 17, 2013
 5                                        )  1:00 o'clock p.m.
        -vs-                              )
 6                                        )
                                          )
 7      RADIOSHACK CORPORATION,           )
                                          )
 8                        Defendant.      )

 9                       TRANSCRIPT OF PROCEEDINGS
10        BEFORE THE HONORABLE MAGISTRATE JUDGE MARIA VALDEZ

11      APPEARANCES:

12      For the Plaintiffs:      MARKOFF LEINBERGER LLC
                                 134 North LaSalle Street
13                               Suite 1050
                                 Chicago Illinois 60602
14                               BY:  MR. PAUL F. MARKOFF
                                           and
15                               ZIMMERMAN LAW OFFICES, P.C.
                                 77 West Washington Street
16                               Suite 1220
                                 Chicago Illinois 60602
17                               BY:  MR. THOMAS A. ZIMMERMAN, JR.

18      For the Defendant:       JONES DAY
19                               77 West Wacker Drive
                                 Suite 3500
20                               Chicago Illinois 60601
                                 BY:  MR. JAMES R. DALY
21                                    MS. IRENE S. FIORENTINOS

22

23      Court Reporter:          ROSEMARY SCARPELLI
                                 219 South Dearborn Street
24                               Room 2304A
                                 Chicago, Illinois  60604
25                               (312) 435-5815
```

1  APPEARANCES:  (Cont.)

2  For Objectors            WARNER LAW FIRM, LLC
   Gupta, Runyard           1400 East Touhy Avenue
3  & Warner:                Suite 260
                            Des Plaines, Illinois 60018
4                           BY:  MR. CURTIS C. WARNER

5

   For Objectors Rosman     CENTER FOR CLASS ACTION FAIRNESS
6  & Kasten:                1718 M Street NW
                            No. 236
7                           Washington DC 20036
                            BY:  MS. MELISSA A. HOLYOAK
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       THE CLERK:  Case 11 C 6741, Redman versus

2   Radioshack Corporation, is now resumed.

3       MR. MARKOFF:  Judge, may I raise a logistical

4   point?

5       THE COURT:  Yes.

6       MR. MARKOFF:  Mr. Redman had a previous engagement

7   and he will be delayed by 1:30, unless your court needs him

8   for something else, but I wanted to raise that in case your

9   Honor wanted to hear from him prior to that time.  I know it

10  might be somewhat out of order, but I just wanted to raise

11  that.

12      THE COURT:  All right.  I would be happy to hear

13  from him so that he doesn't have to stick around.  There is

14  nothing in particular that I am interested in.  If he wants

15  to make any statement, that is fine, but I have no questions

16  for him.

17      MR. MARKOFF:  Okay.  Unless you had something in

18  particular, we don't have any question-and-answer or

19  anything.

20      THE COURT:  Right.

21      MR. MARKOFF:  Thank you, Judge.

22      THE COURT:  All right.  Thank you very much.

23      Where were we?

24      MS. HOLYOAK:  I guess, your Honor, we are not sure

25  who should proceed first.

1        MR. DALY:  I had a couple of things I wanted to

2   say.

3        THE COURT:  Let me just say, you know, the Court

4   has a court reporter who is assisting at this time.  She was

5   not here, obviously, for the first half of the arguments.  So

6   when you -- before you speak just state your name and who you

7   are representing.

8        MR. DALY:  Jim Daly representing Radioshack.

9        MS. HOLYOAK:  Melissa Holyoak representing

10   objectors Rosman and Kasten.

11        THE COURT:  I would prefer to hear from objectors

12   first, and then I would be happy to hear from defendant.

13        MR. DALY:  Thank you, Judge.

14        MS. HOLYOAK:  Thank you, your Honor.  Melissa

15   Holyoak representing objectors Rosman and Kasten.

16        In response to plaintiffs' argument I think the

17   first thing that they have argued is that this is not a

18   coupon settlement because these aren't coupons.  And the

19   basis of their argument is that, well, these $10.00 vouchers,

20   you can buy a variety of entire products.  And this

21   distinction is wrong for several reasons.  The first is that

22   the statutory text of CAFA is they don't make any exceptions

23   for that.  They don't provide any sort of definition that the

24   plaintiffs are relying on.

25        And more importantly the legislative history

1    provides the opposite.  And I will provide you the cite.  It

2    is Senate Report No. 109-14 2005.  In that the legislative

3    history provides examples of coupon settlements, and in that

4    they provide samples where free spring water were given,

5    where golf balls were given.  These were entire products that

6    were given but again examples of coupon settlements.

7           And then third or -- the courts have rejected any

8    such --

9           THE COURT:  In any of the examples that you are

10   alerting the Court to that come from legislative history is

11   there an example such as what we have here where there is

12   some value to a piece of paper, that there is no limitation,

13   that is not saying how to spend $25.00 but just that you can

14   use this piece of paper towards, you know, money in our --

15   products in our store?

16          MS. HOLYOAK:  Not that I am aware of.  But there

17   are court cases that -- and in fact I guess the court case

18   that is most important here is the Synfuel case.  And I would

19   disagree with the plaintiffs that it provides that entire

20   products are not coupons because the Synfuel case provides an

21   expansive view of what should be scrutinized as coupons.  In

22   Synfuel the settlement provided prepaid envelopes.  And the

23   court said, oh, yes, these envelopes are not exactly like

24   coupons, but they should be treated like them because they

25   are the same -- they provide in-kind compensation.  And it

1    requires the plaintiffs to return to the defendant to do

2    business.  Has all of the warnings signs and dangers of

3    coupon settlements.

4              Another case that -- the plaintiff said there is no

5    cases out there that say -- that reject this entire product

6    argument.  And there are.  One case, Dardarian versus Office

7    Max.  And I will give you the cite.  2013 U.S. District

8    Lexus, 98653, from the Northern District of California, July

9    12th, 2013.  And in that case -- it is very similar to this

10   case.  It was an Office Max where there was $5.00 vouchers

11   and $10.00 vouchers that were offered.  And Office Max said,

12   Oh, no, there is a variety of products available from five to

13   $10.00.  Well, the court rejected that and said --

14             THE COURT:  Were there any cases within the 7th

15   Circuit that you can rely upon for me?

16             MS. HOLYOAK:  No, not District Court cases with

17   similar -- with similar facts, other than Synfuel, which is a

18   7th Circuit case, explaining that coupon scrutiny should

19   extend beyond -- to other forms of in-kind compensation.

20             But in that Dardarian case it was the $5 to $10

21   Office Max products, the Court rejected and said, well, you

22   know, look -- first let's look to the dictionary definition

23   which definitely includes entire products because the

24   dictionary provide -- provides a definition that is "a form

25   surrendered in order to obtain an article, service or

1   accommodation."  And the court said coupons are commonly used

2   for which no cash payment is expected in exchange.  In other

3   words, you have a coupon, you provide something, you get a

4   service or an article in return.  And you would have to --

5               THE COURT:  So a gift card could also be a coupon

6   then under that kind of analysis?

7               MS. HOLYOAK:  I don't know, your Honor.  I --

8               THE COURT:  They --

9               MS. HOLYOAK:  I would have to look at the facts of

10  that case.

11              THE COURT:  A gift card to let's say Target.  Every

12  kid gets a little gift card to target every holiday season.

13              MS. HOLYOAK:  Yes.

14              THE COURT:  That is -- under the definition that

15  you are describing, would that be a coupon?

16              MS. HOLYOAK:  Yes.  And gift cards have been viewed

17  as coupons under CAFA.

18              The other problem with this -- the argument that

19  the entire -- this entire product argument is that it ignores

20  what the problem is with coupon settlements, is that it hides

21  what the class counsel fee is relative to what the class is

22  actual receiving.  That was one of the major purposes of

23  CAFA, was to tie the class counsel award to the actual amount

24  received by the class.  That is why CAFA requires that any

25  fee award be tied to the redemption of the coupons.

1       So plaintiffs' fee motion argues that the

2   settlement doesn't require the fee to be tied to redemption.

3   But of course you can draft whatever settlement fee --

4   agreement you want.  If it violates the law, it violates the

5   law.

6       THE COURT:  All of this is presuming that the

7   determination was this is a coupon --

8       MS. HOLYOAK:  Absolutely.

9       THE COURT:  -- right?

10      MS. HOLYOAK:  Absolutely.  And here if this is a

11  coupon settlement, which we believe it is, then HP Inkjet has

12  provided the answer here.  Class counsel argues both in their

13  fee motion and here today that 1712(b) provides lode star.

14  That ignores the complete holding of HP Inkjet.  That would

15  create a circuit split.  And the HP Inkjet went through a

16  very thorough statutory analysis of why 1712(a) requires

17  redemption.  And what the -- what the 9th Circuit held was

18  that if there is an award of attorney's fees that is

19  attributable to coupons, then it must be based on number of

20  coupons redeemed, the ones that are used.  This Section

21  1712(a) is mandatory if there are coupons that are issued.

22      So here what happens is failure to follow this

23  statute results in extremely disproportionate results.  Based

24  on the fee motion it appears that there is going to be about

25  825,000 coupons issued.  But that is just issued, not

1  redeemed.  So even if we assume the very, very generous ten

2  percent redemption rate, that means the class would actually

3  be getting $82,000.00 and class counsel would be getting a

4  million, 12 times what the class is actually getting.  Of

5  course the real winners are the administrators who get  2.2

6  million, which is not a benefit to the class under Aqua Dots,

7  the 7th Circuit case, 654 F.3d 748.

8      But class counsel may dispute my -- my estimation.

9  That is fine.  That is precisely why in our objection we

10 said, well, let's wait and see.  We -- you are going to issue

11 these $825,000 worth of coupons; let's see who actually

12 redeems them and how much.

13     But even setting that aside, setting aside CAFA --

14 and they are basing their award on lode star -- if we look at

15 these numbers, even without looking at redemption rates,

16 825,000 to the class, a million to the class counsel?  I mean

17 that is disproportionate under many court opinions.  It would

18 be disproportionate under -- and these are the

19 disproportionate awards, Warnda (phonetic) and Bluetooth in

20 the 9th Circuit and Pampers in the 6th Circuit and Baby

21 Products in the 3rd Circuit.

22     But leads me to my second point which is the

23 requested fee award is particularly problematic here because

24 the class members did not get sufficient notice.  And the

25 plaintiffs argue, oh, well, they got sufficient notice

1  because the settlement agreement said it was up to a million
2  dollars.  Well, that is not sufficient because the whole
3  basis of their fee motion was all about lode star.  The
4  settlement agreement provides no information about lode star.
5  There is no evidence about lode star.  And in Mercury
6  Securities the 9th Circuit held that the fee motion must be
7  filed prior to the objections deadline.

8          And the plaintiffs in their fee motion argue that
9  the Mercury Securities is -- can be distinguished because
10  that was a common fund case, but that distinction falls apart
11  because of course 23(h), the statutory language which
12  requires this notice, doesn't make any such distinction.

13          And, second, the fee scrutiny is appropriate in
14  constructive common fund cases such as this.

15          And, third, their whole basis for lode star that is
16  in their fee motion -- we would have no idea what their
17  multiplier is.  And all of that information that is required
18  if -- when objectors want to object to the fee motion and
19  understand what evidence is behind the fee motion.  And now
20  we know that the fee motion is based on the lode star where
21  they are asking for a 1.25 multiplier, again which exceeds 1,
22  which is -- and in this case which would -- is contrary to
23  Kenny and -- Perdue versus Kenny A., 130 Supreme Court 1662,
24  2010, which held that a multiplier more than one can --
25  should only be provided in extraordinary circumstances.  And

1   I think even the objector before me would -- would agree that

2   this is not an extraordinary settlement by any means.

3           That is all I have, your Honor.  Did you have any

4   questions?

5           THE COURT:  I did not.

6           All right.  On behalf of RadioShack.

7           MR. DALY:  Good afternoon, your Honor, Jim Daly on

8   behalf of RadioShack.  Judge, I just want to make a few quick

9   points that I think would respond to both of the objectors.

10  With respect to the Gupta objection presented by Mr. Warner,

11  I just want to emphasis I think that willfulness, in our

12  view, is the big issue here.  And if knowledge -- if

13  knowledge of the law does not equal a violation, if that were

14  true, we would be in strict liability land.  And if we were

15  in strict liability land, there would be judgments and

16  filings all over the place.  And instead of that what we have

17  is a world where there has never been a judgment of

18  willfulness, there has never been a jury that has found

19  willfulness, there has never been a summary judgment issued

20  that found willfulness.  The only summary judgment ruling

21  that there have been have found lack of willfulness in favor

22  of a defendant.

23          And so when you boil all that down -- and remember

24  that if you don't prove willfulness, you get zero as a

25  plaintiff.  Zero.  When you boil all that down, it is our

1    view that this is a sensible, rational assessment of risk by

2    the parties resulting with an eye towards the vagaries of

3    litigation and making a reasonable settlement.

4          I think it should be not forgotten here that we had

5    a situation where there isn't even an allegation of a -- of

6    any actual damage to anyone.  There is no damage here.  There

7    is no injury here.  So under all of those circumstances I

8    think a $10.00 gift card makes a lot of sense.

9          Another way to look at it is start out with the

10   fact that we have 16 million potential members of the class,

11   83,000 claims.  The $10.00 gift card would buy 6,000 items at

12   RadioShack, as counsel for the plaintiff has pointed out.  I

13   would like to emphasize that the settlement agreement also

14   allows these things to be stacked, Judge, so a class member

15   can come up with up to three of these and have $30.00.  I

16   shudder to think how many things can be bought at RadioShack

17   for $30.00.

18         So if you put all that together, I think our

19   settlement looks a lot like the very large settlements that

20   you have when you have a very large class.  What you see are

21   relatively smaller settlements.  I point the Court to the

22   Weis Markets case which had 15 million potential class

23   members and you had a $7.50 voucher to be used in the store

24   and to the Olive Garden case which had 36 million people in

25   it and the award was a free appetizer up to a value of $9.00.

1    I think we are very much like those cases.

2              And, you know, when we look at the cases cited by
3    Mr. Warner in his brief, many of them -- well, the Todd case,
4    for example, it has -- it had three -- it has a thousand
5    dollars per claim, but I will tell the Court there were only
6    three claims.  So it is a $3,000.00 case.  Similarly the
7    Behringer versus Standard Parking case that he cites, $65.00
8    per claimant, but there were only 123 claims filed.  Another
9    case, Halperin versus Interpark, $100.00 per claimant.  Okay?
10   Twenty-five claim forms submitted.

11             So you are talking about peanuts in those cases it
12   seems to me, Judge, compared to the exposure and risk that
13   the parties were dealing with in our case.  And I think that,
14   you know, to try to compare a person -- a case with three
15   claims to a case with 83,000 claims is not a very good
16   comparison.  So for all those reasons, Judge, I think that
17   when you put it altogether, that this settlement is fair and
18   reasonable.

19             On the coupon issue, Judge, I think our position is
20   that it is not a coupon because there is no purchase
21   necessary.  It is not a percentage off.  I think what the
22   sign -- the Synfuel case that was mentioned, I think what
23   that goes to is it says if you have any of in-kind
24   distribution, there is some scrutiny that is applied.  We are
25   okay with that.  I mean I think plaintiff -- everybody is

1    okay with the Court applying scrutiny.  But scrutiny doesn't

2    equal coupon.  And I don't think a golf ball is a coupon.  I

3    think that may result in additional scrutiny.

4            But here we have no purchase necessary.  You can

5    stack these things.  You can buy things.  You don't have to

6    buy anything else.  And even all the examples that were

7    handed out during the earlier presentation, as the Court has

8    already pointed out, are all $10.00 off a purchase of $40.00

9    or 20 percent off a purchase but $125.00.  Those are coupons.

10   That is a very different thing than what we have here is

11   where you can just walk in and use these things for any

12   purpose you desire and no purchase being necessary.

13           One other point --

14           THE COURT:  I guess one of the underlying issues,

15   though, with the argument of coupon and what Congress was

16   grappling with is when you have a voucher gift card or even a

17   coupon situation, obviously, you have some benefit that is

18   being given to the defendant in the case.  You have got some

19   continuous business that is being offered.  The hope being

20   that somebody is going to spend more than $10.00 at your

21   store and that because of that it is like a coupon.  It is

22   like the fears that Congress was dealing with when they

23   passed CAFA.

24           MR. DALY:  I will say it is in the same

25   neighborhood, Judge, but that is the point I was trying to

1   make, which is I think that that results in the Court giving

2   it some additional scrutiny than if, say, a $10.00 check had

3   been issued.  But that doesn't make it a coupon that results

4   in these other issues.

5         So I think the Court is very much within its

6   authority to scrutinize this thing, but I don't think that

7   that makes it an actual coupon.  And I think there is a

8   variety of cases that everybody has cited in their briefs

9   where store vouchers and gift certificates just like these

10  have been approved by many, many courts across the country.

11        The only other point on this issue I would make,

12  Judge, is that counsel indicated that because it has an

13  expiration date -- and the reason there is we couldn't have

14  these things floating around forever -- that it therefore

15  cannot be a gift certificate or store voucher.  I would point

16  the Court to 15 U.S.C. 1693l-1(a)(2)(D)(iv), which --

17        THE COURT:  I am so glad we have a court reporter

18  here.

19        MR. DALY:  I am too.  I am too -- which, Judge,

20  excludes from things that cannot -- from gift cards that

21  cannot have an expiration date the following:  General use

22  gift certificates and store gift cards that are under

23  Subsection (iv) that are not marketed to the general public.

24  And that section has been interpreted to deal with cards like

25  this.  So I think the issue -- the notion that because these

1    have expiration dates that can't be store vouchers or gift

2    cards is an incorrect argument.

3              So on that -- on the penalty of perjury, Judge,

4    just a couple statements I -- the -- I was in court that day.

5    The transcript has been attached to I think plaintiffs'

6    brief.  I mean what happened there was we -- we, the

7    plaintiffs, we were -- we, the defendants, we were arguing

8    for -- we wanted more than the penalty of perjury.  We wanted

9    to require the members to attach their receipt if they had

10   it, tell us what store they bought it from if they

11   remembered, tell us the date because this was a rolling

12   rollout of our POS systems, and we wanted to get as much

13   information with that.  Plaintiffs were saying no.

14             We had an argument in front of the Court, and the

15   plaintiff -- the plaintiffs were arguing that, well, they

16   have got this penalty of perjury thing.  And that is the

17   context in which the Judge said, "Well, that is not enough.

18   They are -- I can't imagine the circumstance where

19   RadioShack" --

20             THE COURT:  So you took that comment as Judge Grady

21   saying he was more inclined to go with what you were

22   suggesting as opposed to the plaintiffs?

23             MR. DALY:  Exactly.  He was saying, "That is not

24   enough and I can't imagine why RadioShack isn't entitled to

25   more than that so they can actually tell whether somebody is

1    in the class or not.  How is that not fair?"

2         Now, at the end of the day through negotiations we

3    did -- we gave up on those things with the plaintiffs.  We

4    got something else.  We got the notion that if our claims

5    administrator saw patterns of fraud in the claims, we could

6    investigate it now rather than -- we were not interested in

7    burdening the class with, you know, receipts and go find your

8    receipts, go dig it out of your file and attach it if you

9    have it.  We gave up on that.  And so we took that out, went

10   with only the penalty of perjury argument.  And then if some

11   pattern of fraud like multiple claims by the same person,

12   multiple claims from the same address came in, our

13   administrator was empowered in the settlement agreement to do

14   an investigation of that after the claims came in.  We have

15   -- we are not going to be doing that.  And so that issue, it

16   seems to me, is -- should be a dead letter.

17        And finally, Judge, under the lease language, I

18   think if you read it, I think it is being misinterpreted by

19   Mr. Warner.  I don't think that the plaintiffs are in any

20   position to release any other class member's personal injury

21   claim or product liability claim.  And that is not what the

22   language calls for.  It is limited to the plaintiffs and the

23   claims in this lawsuit.

24        And that is all I have to say, unless you had some

25   questions for me, Judge.

1    THE COURT:  I do not.  Thank you very much.

2    MR. DALY:  Thank you, Judge.

3    THE COURT:  All right.  Have we heard all the

4    issues on the objections, Mr. Warner?

5    MR. WARNER:  There is just one statement that I

6    can't believe that was said considering what has been

7    attached to the objections, and that is the claims process.

8    The claims process does require the claimant, at least

9    online, to indicate the store that they bought it at.  They

10   also have to give an approximate date that they have bought

11   it at.  The Court can go to the website now -- it is still up

12   there -- and look at it.  And those -- that information is

13   within the objectors, Warner's and Gupta's -- I believe it is

14   within their attachments.

15        But that -- that argument, what they just said that

16   happened at Judge Grady, that is not what happened here with

17   the settlement.  There is that additional threshold that they

18   had to go through.  They have to -- in order to make claims,

19   they have to state the store that they bought it at.  In fact

20   to even give an objection, if you look at the settlement

21   agreement, it is still in there.  You have to put down what

22   store you bought it at.

23        THE COURT:  But the issue that you raised was that

24   I should look to Judge Grady --

25        MR. WARNER:  Right.

1  THE COURT:  -- you know, in terms of the issue of

2  collusion.  And Judge Grady had said, you know, that under

3  penalty of perjury wasn't what he wanted.  You had given it a

4  particular spin and now counsel for RadioShack has given it a

5  different spin.

6  MR. WARNER:  Right.  But for counsel for RadioShack

7  to say that that was it, the penalty of perjury was all that

8  -- they didn't have to say what store they bought it at and

9  the date they bought it -- and it is inconsistent with what

10  the settlement agreement said and what the class members had

11  to do.  I mean this is very serious misstatements to the

12  Court of, you know -- of, you know, why some class members --

13  THE COURT:  I simply didn't take his statement --

14  MR. WARNER:  No.

15  THE COURT:  -- as it always was.

16  MR. WARNER:  Well --

17  THE COURT:  It was just this or that.  It went to

18  your issue.  And they tried to question you on, that it was

19  going to lead to a hopefully better return.

20  MR. WARNER:  Right.

21  THE COURT:  And you made a very strong argument

22  that there was some evidence of collusion in part because

23  that Judge Grady made this comment, and based on his comment

24  you believed in part it led to them making the decision to

25  consent to the Magistrate Judge and not have Judge Grady deal

1  with the issues.

2  MR. WARNER:  And all I am saying here, though, is,

3  Judge, when you listen to those statements that have been

4  made by RadioShack's counsel, that is not what happened.

5  That is not what was required by the class.

6  And more serious concern should even be noted is we

7  are -- what else haven't we talked about?  What else don't we

8  know?  I mean of course the objectors are not in the

9  positions, we are not flies on the wall and privy to these

10  conversations.  But it just goes that there are things that

11  -- here that don't make any sense.

12  And for willfulness, as pointed out to you,

13  RadioShack's counsel admitted that they knew about FACTA.  It

14  is -- it is in our -- it is in the objectors' briefs.  And

15  that is another, you know, 800-pound gorilla that is being

16  ignored here.  There is just certain things -- and that last

17  statement is almost the topper of why the Court should use

18  its fiduciary duties to the class members and just say no to

19  the settlement agreement and deny it.

20  Thank you, your Honor.

21  THE COURT:  Thank you very much.

22  All right.

23  MS. HOLYOAK:  Can I just make one --

24  THE COURT:  Miss Holyoak, one more.  And then they

25  get to say one more thing.

56

```
 1          MS. HOLYOAK:  Absolutely.  I just wanted to make
 2   one addition because you did ask about gift cards.  These are
 3   even more like coupons than gift cards in that if you go into
 4   the store and use your -- that $10.00 and you only buy
 5   something that is five, you don't get that remaining five.
 6   It is gone.  And so it is more like a coupon in that respect.
 7   And courts across the country in analyzing CAFA, they have
 8   applied it to things that are called in credits, vouchers,
 9   rebates, service membership -- or renewal -- service
10   memberships.  So semantics are not as important as what the
11   -- what is provided here and the in-kind compensation that is
12   being provided.
13          THE COURT:  Thank you very much.
14          All right.  On behalf of the plaintiff class.
15          MR. MARKOFF:  Thank you, Judge.  Paul Markoff for
16   the plaintiff Redman.  Judge, I want to really limit to
17   responding to a couple things that -- primarily that
18   Mr. Warner stated.  One thing, he handed up several exhibits
19   in support of his argument that this is -- anybody can get
20   $10.00 off at RadioShack.  And your Honor called him out on
21   it, and yet he continued to press the issue and -- twice.
22          THE COURT:  I call my children out on things.  I
23   don't call counsel out.
24          MR. MARKOFF:  Sorry.  The point is the
25   inconsistency in the argument that he said twice that he
```

1    could get on -- you could get on Facebook and get $10.00 off

2    for a purchase of $10.00 or more at RadioShack, and yet the

3    very first exhibit counsel handed up states that it is off

4    $20.00 or more, which would be a coupon.  And the others he

5    handed up were 30 -- $10.00 off 30 or more.  The next one was

6    40 or more.  The next one was 50 or more.  Those are in fact

7    coupons.  So inconsistent with what he exactly said to the

8    Court were the exhibits he used to support his argument.

9            On the claim form counsel also misrepresented what

10   the process was, that everybody was required to state this

11   with certainty and dig up this information about where they

12   made a purchase and when and things like that.  Actually the

13   claim form says month and year you believe you made -- you

14   made a purchase, credit card type you believed you used.  And

15   the penalty of perjury says, "Information contained is true

16   and collect -- true and correct to the best of my knowledge,

17   information and belief."  It actually doesn't say that it is

18   absolutely true.

19           And, frankly, as I explained this to a number of

20   people that would call me on this -- and thousands did -- not

21   on this particular issue but on the settlement in general --

22   I said, "Look, it is to the best of your knowledge.  We know

23   this is going back a couple years."  And this is in here.  We

24   fought against this.  And actually as Mr. Daly commented, for

25   Mr. Warner to stand up and say that this is not how it played

58

1   out in front of Judge Grady is blatantly incorrect.  Judge
2   Grady was quite adamant that the defendant was going to get
3   more in this claim form than what was ultimately in here.
4   The class members were going to have to submit proof,
5   receipts, things like that.  It was not that he ruled out a
6   penalty of perjury.  It was very clear that that was merely
7   the beginning of what people would have to do.  And in fact
8   not only for the settlement, but if there were not a
9   settlement, that if it were -- that if we got to the class
10  certification stage, that that would be required.  This was a
11  huge hurdle that Judge Grady was setting.  So Mr. Warner is
12  simply incorrect.
13          And to say that, well, dealing with this
14  manageability issue, we, the claimants -- to distinguish
15  between consumers and businesses just check a box and say I
16  am a consumer or I am a business, no way.  Judge Grady would
17  have no part of that.  That was clear.  Not just from what we
18  are representing but from the transcript in front of Judge
19  Grady.  That is the truth, was the transcript, not what
20  counsel represents.  Checking the box was going nowhere.
21          Reaching the due process stage, if we were to
22  continue litigating this and get a judgment, that due process
23  would allow for the reduction of the judgment.  Look, the
24  financials that are submitted here and what went into the
25  assessment of this case -- and this is, you know, back in

1    November when we reached -- we reached this agreement in
2    principle and continuing now -- we wouldn't have reached that
3    stage.  There aren't any analysts that say this company is
4    going to be around in anything short of a bankruptcy.  So we
5    don't -- so reaching the due process reduction of a judgment,
6    it is kind of fanciful because if the company is not around,
7    it is a pyrrhic victory.  So this way we get a settlement for
8    people.  We get something for these class members instead of
9    nothing because somebody wants to fight it for whatever their
10   personal reasons are.

11          The other -- going to the collusion argument,
12   Mr. Warner mentioned there were two hard-fighting parties and
13   all of a sudden there is a settlement.  Your Honor is aware
14   of at least part of this history.  There was no all of a
15   sudden to anything in this case.  Your Honor had this case
16   for months and months.  After your Honor sent the referral
17   back to Judge Grady, it continued for months and months.
18   Even after we got to the agreement in principle, it took
19   another six months to sign on the dotted line for the
20   settlement agreement.  There was no all of a sudden anything
21   in this case.  It was indeed two hard-fighting parties.  He
22   was correct on that part, although there was more because
23   there weres multiple plaintiffs and multiple counsel on the
24   plaintiffs' side.

25          On the gift card Mr. Daly correctly points out that

1   the federal law that I presume is what Mr. Warner cite -- or

2   was referring to, that federal law prohibits expiration

3   dates.  Obviously there is an exclusion, for instance, in

4   this case.  But also these class members could actually take

5   this voucher and go get a gift card at RadioShack, and it

6   would be good for however long those gift cards are good for.

7           THE COURT:  So they could purchase a gift card with

8   the --

9           MR. MARKOFF:  There is no exclusion.  It says, "Any

10  product or service," so they can go buy what they want.

11          The visitors of the website, Mr. Warner came up

12  with the apparently statistical analysis that 40,000 or so

13  people went to the website and didn't bother submitting a

14  claim or that was evidence that they just didn't want to

15  bother with it.  I will tell you I have been to that website

16  several hundred times.  So of those 136,000 visitors, many,

17  many of them were mine.  And the instance where those

18  occurred were people would call me and say, "I am having

19  trouble getting on the website."  So I would immediately go

20  to the website and verify that it works.  It does.  Typically

21  what happened is people would be -- they would put the

22  information in the search bar as opposed to the address bar

23  on their computer, so they would end up on some other

24  website.

25          Similarly if people called and said, "I am having

61

1    trouble getting through to this toll-free number at the

2    claims administrator," I would immediately, while they are on

3    the phone, call -- pick up my cell phone, call that number,

4    put it on a speaker so they could hear, yes, indeed it is

5    right.  It was probably a dialing error.  And then the issue

6    was taken care of.

7            The claim form required disclosure of personal

8    information.  I am not sure what information that is that

9    counsel refers to, except -- and they were not required --

10   enter the name and address, which most of these claimants

11   already -- RadiowShack already had because they got -- they

12   were sent the notice for five million of them.  E-mail

13   address, if you have one.  I guess that would be -- telephone

14   number, I guess that would be.  But you have to be able to

15   verify these things to get ahold of them.  And then the

16   information to verify the claims that we already went over

17   that Judge Grady was clearly compelling.

18           THE COURT:  There was an argument that he made with

19   respect to objectors and whether the notice provided enough

20   information that in order to object, you had to have filed a

21   claim.

22           MR. MARKOFF:  You know, that is an interesting one,

23   Judge, and here is why:  First of all, there is nothing in

24   there that says you have to do either-or for starters.  But

25   this arises from a very recent 7th Circuit ruling in this, so

1   recent in fact that Mr. Warner filed his objections at one

2   point, this 7th Circuit ruling came out and said these people

3   don't have standing because they didn't file a claim, and

4   then he filed an amended objection after he had his folks

5   file claims.  That is how recent it is.  I have never seen it

6   before in any case.

7          We raised this for one simple reason.  Standing is

8   something the Court has to view on its own.  We don't -- it

9   is nothing we can do to change standing.  We don't have any

10  problem addressing the objections themselves, but I think we

11  do have a duty to raise it with the Court because you

12  wouldn't otherwise know whether they have submitted claims or

13  not.  So it is an interesting argument because it is recent

14  development, at least in our view, in the law because we have

15  not seen it before, to be perfectly honest.  So -- but we

16  have no objection.  If we had the ability to say, oh, you

17  have standing, then go ahead and address the objections, but

18  it is not really our issue.  Standing is the Court's issue.

19         Medieval Times.  Mr. Warner tried to distinguish

20  the Medieval Times settlement.  The Medieval Times settlement

21  had a cash component and a voucher component.  And the cash

22  component of course was comprised of attorney's fees and

23  notice and administration almost exclusively.  It allowed

24  people, if they submitted a receipt, to get some cash

25  component.  And I am curious, maybe Mr. Warner knows how many

63

1    people actually did that, but I am guessing it is miniscule.

2           But the reason he suggested that the perjury

3    declaration was appropriate was that the stores were out of

4    compliance at different times.  They didn't have a way to

5    verify.  Well, we didn't have anything different here, as Mr.

6    Daly said.  And as what has been said multiple times in front

7    of Judge Grady and your Honor, these stores were rolled out

8    at different times, these POS systems.  So the different

9    stores were in fact compliant or not compliant at diffeent

10   times.  Yet we have an expansive class period date to cover

11   all of them, the outside dates.  So there wasn't really a

12   particularly good way to verify these claims for the

13   defendant and have this information.  And that is why we have

14   this information in the claim form that was required by Judge

15   Grady ultimately, really compelled.  So it is actually quite

16   analogous to the Medieval Times case in that sense.

17          Let's see.  I don't recall if somebody raised this

18   as an objection, but -- and I don't remember if it was

19   Mr. Warner raised the issue of filing the fee motion after

20   the objection deadline.  Actually I believe in every one of

21   his cases where he is class counsel he filed his fee petition

22   after the objection deadline.  And so again a positional

23   conflict there.

24          And he stated that the plaintiffs' counsels clearly

25   -- counsel hitched their wagon to the percentage, which is

1   untrue.  There was nothing tying us to the redemption rate.

2   It was stated as a flat number.  And contrary to the -- Miss

3   Holyoak's argument, the settlement does not say fees up to a

4   million dollars.  It says a million.  There is no --

5          THE COURT:  I think she said the notice said up to

6   a million.

7          MR. MARKOFF:  I would have to look at the notice.

8   The settlement agreement did not say that it was a million

9   dollars.  But in any case that was the outside number.  And

10  it doesn't impact the class because of the number of

11  claimants here.  So the amount available to the class will

12  not be reduced.

13         Miss Holyoak argued that Synfuel -- I think she

14  misrepresented.  Indeed Synfuel was inviting scrutiny,

15  said -- and said, all right, they are an in kind account --

16  they are  in-kind cases, and those might invite more scrutiny

17  or scrutiny similar to a coupon case, which is fine, but that

18  is different than saying they are coupons.

19         Your Honor can put whatever scrutiny is appropriate

20  on this case.  It -- obviously it is what it is.  We think it

21  is fair, reasonable and adequate because people get something

22  without any damages.  And I think that something is a lot

23  better than nothing.  These 80-something thousand people that

24  did submit claims honestly I believe are going to get nothing

25  if this isn't approved.  But it did not hold that an in-kind

1   award or in-kind relief is the same as a coupon.

2               I believe that is --

3               THE COURT:  Next.  State your name as you approach.

4               MR. ZIMMERMAN:  Thank you, Judge.  Tom Zimmerman,

5   Z-I-M-M-E-R-M-A-N.  Good afternoon.  I was -- Mr. Markoff and

6   I had agreed that he would handle the argument, but there are

7   just two issues that were raised for the first time by

8   counsel for the objectors, and if I may just respond to

9   those.  The first is Mr. Warner stood here and pointed to me

10  and referenced the fact that we have a pending case.  The

11  Court inquired as to how long that case has been pending in

12  response to his statement that these things can easily be

13  resolved in no time.  And the answer that I am providing to

14  the Court's question is it has been pending for over two and

15  a half years.  It is a FACTA case.  He is a difficult person

16  to deal with and I -- and needless to say we haven't hit it

17  off.

18              He did mention that -- in response to the Court's

19  inquiry with respect to the claim forms that he has used in

20  other cases that required the claimant to sign under penalty

21  of perjury -- and his response was, you know, "This isn't

22  about me."  And I would respectfully suggest to the Court

23  that we are not naive here.  It is entirely about him.  In

24  the other case that we have pending I was able to demonstrate

25  through discovery that his plaintiffs filed frivolous claims

1    and there were Rule 11 issues.  And it goes on and on.

2            And so I just want the Court to understand the

3    context and the background that this class action plaintiffs'

4    attorney is coming from when he stands up and objects to a

5    class action settlement that has very similar requirements to

6    ones that he has proffered and stood up and represented were

7    reasonable in his cases.

8            The other thing is counsel for the other objectors

9    had cited to the Dardarian versus Office Max case, Northern

10   District California case, decided in July of 2013, so just a

11   couple of months ago.  And your Honor may have noticed I have

12   been sitting tying on my phone back in my chair, and the

13   reason is because I was looking that case up.  That -- this

14   is the first time it has been cited.  And I want to see what

15   that was all about.  Apparently that was a denial of a motion

16   for preliminary approval of a class settlement on various

17   grounds, one of which was the notice was found to be

18   insufficient.  But the Court did analyze the settlement and

19   whether or not it constituted a coupon settlement.

20           Now, that Dardarian court sits in the 9th Circuit,

21   so that is subject to the HP Inkjet decision.  But they did

22   cite to some factors and some other California cases in that

23   -- in that ruling dealing with coupon settlements.  One of

24   them is Fleury, F-L-E-U-R-Y, versus Richemont,

25   R-I-C-H-E-M-O-N-T, North American, Inc.  And that case dealt

1    with one of the factors, which is whether or not the class

2    members have the ability to aggregate and transfer the

3    benefits.  And in that case they -- the court looked at that.

4         Here we have that ability.  The settlement provides

5    that class members can stack three coupons and essentially

6    have a $30.00 -- three of the settlement vouchers, have a

7    $30.00 voucher, and they are fully transferable.  So there

8    essentially is a secondary market that these can be, you

9    know, sold on.  And so that is a factor.

10        Another factor was noted from the Browning versus

11   Yahoo, Inc. case.  And that is also cited in this Dardarian

12   opinion.  And that overruled -- that court overruled an

13   objection that the proposed settlement was a coupon

14   settlement because the class members did not have to spend

15   money to realize the benefit.  And so that also is similar

16   here where it has been stated many times that you can walk in

17   and simply buy a product and not have to have any future

18   ongoing business and that type of thing.  You don't have to

19   spend any additional money.

20        There was another case that -- the Young versus

21   Polo retail case that identified transferability of the gift

22   card as a factor in approval of the voucher settlement.  And

23   again these cards are fully transferable.  And -- and so

24   there is a secondary market.

25        And finally with respect to the expiration date, I

1  believe it was -- it was mentioned that you can go in and if

2  you -- if you don't want to use the card within the six-month

3  time period, you can simply buy a gift card and then that

4  does not expire for five years.  So there is always that

5  option as well.

6           And that is all I would like to mention to the

7  Court.  I know that case was just mentioned for the first

8  time, so I wanted to highlight that.

9           THE COURT:  All right.  Thank you very much.

10          The Court will take the matter under submission,

11  unless there is something else that you need to address.

12          Thank you very much.

13          MR. MARKOFF:  Thank you, Judge.

14      (Which were all the proceedings heard.)

15                      CERTIFICATE

16      I certify that the foregoing is a correct transcript

17  from the record of proceedings in the above-entitled matter.

18

19  s/Rosemary Scarpelli/          Date:  September 19, 2013

20

21

22

23

24

25